1   COOLEY LLP
    JOHN C. DWYER (136533) (DWYERJC@COOLEY.COM)
2   JESSICA VALENZUELA SANTAMARIA (220934)
    (JSANTAMARIA@COOLEY.COM)
3   Five Palo Alto Square
    3000 El Camino Real
4   Palo Alto, CA  94306-2155
    Telephone:   (650) 843-5000
5   Facsimile:    (650) 849-7400

6   COOLEY LLP
    MEGHAN O'RYAN SPIEKER (197239)
7   (mspieker@cooley.com)
    4401 Eastgate Mall
8   San Diego, CA  92121
    Telephone:   (858) 550-6000
9   Facsimile:    (858) 550-6420

10  *Attorneys for Michael A. Narachi, Heather D. Turner, Joseph P. Hagan,*
    *and nominal defendant Orexigen Therapeutics, Inc.*

11  *[Additional counsel on signature page]*

12

13              UNITED STATES DISTRICT COURT

14             SOUTHERN DISTRICT OF CALIFORNIA

15

16  YACOV TURGEMAN, derivatively          Case No.  13CV2959 JAH MDD
    on behalf of OREXIGEN
17  THERAPEUTICS, INC.,
                                          **DEFENDANTS' MEMORANDUM OF**
18              Plaintiff,                **POINTS AND AUTHORITIES IN**
                                          **SUPPORT OF MOTION TO DISMISS**
19       v.                               **PLAINTIFF'S VERIFIED**
                                          **SHAREHOLDER DERIVATIVE**
20  MICHAEL A. NARACHI, JOSEPH            **COMPLAINT**
    P. HAGAN, HEATHER D.
21  TURNER, ECKARD WEBER,                 Date:      September 22, 2014
    LOUIS C. BOCK, BRIAN H.               Time:      2:30 P.M.
22  DOVEY, PATRICK MAHAFFY,               Dept.:     13B
    PETER K. HONIG, WENDY                 Judge:     John A. Houston
23  DIXON, JOSEPH S. LACOB,
    MICHAEL F. POWELL, and
24  DANIEL K. TURNER III,

25              Defendants.

26       and

27  OREXIGEN THERAPEUTICS, INC.

28              Nominal Defendant.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

# Table of Contents

**Page**

I.      INTRODUCTION ................................................................................... 1

II.     STATEMENT OF ALLEGATIONS AND FACTS SUBJECT
        TO JUDICIAL NOTICE ........................................................................ 3

   A.   Orexigen and its Equity Plan. .......................................................... 3

   B.   The option grants challenged by Plaintiff. ....................................... 4

   C.   The Board's consideration of Plaintiff's demand letter. ................... 6

   D.   Plaintiff files this lawsuit. ............................................................... 7

III.    ARGUMENT ........................................................................................ 8

   A.   Plaintiff lacks standing as he fails to adequately allege that the
        Board wrongfully refused his demand. ............................................. 8

        1.   Plaintiff fails to adequately plead that the Board did not
             act in an informed manner or with due care. ........................... 11

        2.   Plaintiff fails to adequately plead that the Board did not
             act in good faith. .................................................................... 12

        3.   Plaintiff's attempt to challenge the substantive decision of
             the Board in response to his demand is irrelevant. ................... 13

   B.   Plaintiff's claims are moot. ............................................................. 14

   C.   Plaintiff fails to state a claim. ......................................................... 17

        1.   Plaintiff fails to state a claim for breach of fiduciary duty ....... 17

        2.   Plaintiff fails to state a claim for unjust enrichment. ............... 19

        3.   Plaintiff fails to state a claim for waste. .................................. 21

IV.     CONCLUSION ................................................................................... 22

Cooley LLP
Attorneys At Law
Palo Alto

i.

Case No. 13CV2959 JAH NLS
Memo of Points & Authorities ISO
Motion to Dismiss

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re 3COM Corp. S'holders Litig*,
 1999 WL 1009210 (Del. Ch. Oct. 25, 1999) ...................................................... 21

*Aronson v. Lewis*,
 473 A.2d 805 (Del. 1984) ....................................................................................... 8

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .............................................................................................. 17

*Barnes v. Healy*,
 980 F.2d 572 (9th Cir. 1992) ............................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................... 17, 18, 20

*In re Bos. Scientific Corp. S'holders Litig.*,
 2007 WL 1696995 (S.D.N.Y. June 13, 2007) ..................................................... 13

*Brehm v. Eisner*,
 746 A.2d 244 (Del. 2000) ........................................................................... 9, 11, 21

*Buckley IRA v. Archer-Daniels-Midland Co.*,
 111 F.3d 524 (7th Cir. 1997) ......................................................................... 15, 16

*Cnty. of Los Angeles v. Davis*,
 440 U.S. 625 (1979) .............................................................................................. 15

*Copeland v. Lane*,
 2012 WL 4845636 (N.D. Cal. Oct. 10, 2012) .............................................. *passim*

*Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*,
 624 A.2d 1199 (Del. 1993) .................................................................................... 18

*Mount Moriah Cemetery ex rel. Dun & Bradstreet Corp. v. Moritz*,
 1991 WL 50149 (Del. Ch. Apr. 4, 1991) ............................................................. 12

*Grimes v. Donald*,
 673 A.2d 1207 (Del. 1996) .................................................................................... 12

Cooley LLP
Attorneys At Law
Palo Alto

ii.

# TABLE OF AUTHORITIES
## (continued)

Page

*Halpert Enters., Inc. v. Harrison*,
2008 WL 4585466 (2d Cir. Oct. 15, 2008) ................................................. 12, 13

*In re infoUSA, Inc. S'holders Litig.*,
953 A.2d 963 (Del. Ch. 2007) ................................................. 14

*Isaac Bros. Co. v. Hibernia Bank*,
481 F.2d 1168 (9th Cir. 1973) ................................................. 15

*Kalageorgi v. Victor Kamkin, Inc.*,
750 A.2d 531 (Del. Ch. 1999) ................................................. 16

*Kamen v. Kemper Financial Services, Inc.*,
500 U.S. 90 (1991) ................................................. 8, 14

*Knopf v. Semel*,
2010 WL 965308 (N.D. Cal. Mar. 17, 2010) ................................................. 9, 14

*In re Lear Corp. S'holder Litig.*,
967 A.2d 640 (Del. Ch. 2008) ................................................. 20

*Levine v. Smith*,
591 A.2d 194 (Del. 1991) ................................................. 9, 10, 12

*Lucas v. Lewis*,
428 F. App'x. 694 (9th Cir. 2011) ................................................. 9

*Lujan v.Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................. 15

*In re Lukens Inc. S'holders Litig.*,
757 A.2d 720 (Del. Ch. 1999) ................................................. 18

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ................................................. 18

*McMillan v. Intercargo Corp.*,
768 A.2d 492 (Del. Ch. 2000) ................................................. 17

*Michelson v. Duncan*,
407 A.2d 211 (Del. 1979) ................................................. 16

Cooley LLP
Attorneys At Law
Palo Alto

iii.

Case No. 13CV2959 JAH NLS
Memo of Points & Authorities ISO
Motion to Dismiss

# TABLE OF AUTHORITIES
### (continued)

Page

*North Carolina v. Rice*,
   404 U.S. 244 (1971) ......................................................................... 15

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ............................................................... 19

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*,
   534 F.3d 779 (D.C. Cir. 2008) ......................................................... 21

*RCM Secs. Fund, Inc. v. Stanton*,
   928 F.2d 1318 (2d Cir. 1991) ........................................................... 10

*In re Sagent Tech., Inc. Deriv. Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ........................................... 18

*Scattered Corp. v. Chicago Stock Ex., Inc.*,
   701 A.2d 70 (Del. 1997) .............................................................. 9, 12

*Spiegel v. Buntrock*,
   571 A.2d 767 (Del. 1990) ............................................................ 12, 13

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2006) ................................................................. 18

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Practices, & Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........................................... 19

*White v. Panic*,
   783 A.2d 543 (Del. 2001) ................................................................. 21

*Zucker v. Andreessen*,
   2012 WL 2366448 (Del. Ch. Jun. 21, 2012) .................................... 21

**Statutes**

8 Del. Gen. Corp. Law § 102(b)(7) ......................................................... 17

26 CFR 1.162-27(h)(3)(ii) ......................................................................... 3

26 U.S.C. § 162(m) ..........................................................................*passim*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (continued)

Page

**Other Authorities**

Federal Rule of Civil Procedure
   12(b)(1) ................................................................................................*passim*
   12(b)(6) ............................................................................ 2, 8, 10, 17
   23.1 ................................................................................ 2, 9, 10, 11

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

v.

**Case No. 13CV2959 JAH NLS**
**MEMO OF POINTS & AUTHORITIES ISO**
**MOTION TO DISMISS**

# I.   INTRODUCTION

In 2011, nominal defendant Orexigen Therapeutics, Inc. ("Orexigen" or the "Company") awarded stock options to certain of its executive officers pursuant to a shareholder-approved equity plan.  Plaintiff Yacov Turgeman ("Plaintiff") would have the Court believe that the issue before the Court is the validity of those equity awards.  He is wrong.  Before filing this lawsuit, Plaintiff, a purported shareholder of the Company, sent a demand letter to Orexigen's Board of Directors demanding it take action against the Company's officers and directors as a result of the allegedly invalid equity awards.  The issue before the Court in this Motion to Dismiss is whether Plaintiff has pled with required particularity that the Board failed to adequately consider his demand.  He has not.

To challenge the Company's grant of stock options to executive officers, Plaintiff, as a shareholder, had two options under Delaware law: make a demand on the Company's Board to seek relief on behalf of the Company for the alleged wrong; or file a derivative lawsuit against the purported wrongdoers on behalf of the Company, alleging that a pre-litigation demand on the Board would have been futile because a majority of the Board was either interested in the underlying transaction or lacked independence.  Plaintiff chose to make a demand on the Board.  In doing so, he conceded, as a matter of law, that the Board was neither interested nor lacked independence and was fully capable of impartially considering his demand.

The Orexigen Board did, in fact, impartially consider his demand.  Upon receipt of Plaintiff's letter, the Orexigen Board appointed a Demand Review Committee ("DRC") comprised of independent directors to investigate Plaintiff's allegations and to make recommendations to the Board regarding how best to respond to those concerns.  The DRC engaged independent advisors and conducted a thorough investigation and analysis of Plaintiff's claims.  Following the conclusion of that process and based on the recommendations of the DRC, the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

Board determined that pursuing litigation against its officers and directors was not in the best interests of the Company's shareholders. Apparently unhappy with the Board's response, Plaintiff filed this lawsuit claiming that the Board should have reached a different conclusion.

The threshold issue now before the Court is whether Plaintiff, a single shareholder, has standing to usurp the Board's powers under Delaware law and pursue this derivative litigation on behalf of the Company. To establish standing in such circumstances, a shareholder must adequately plead that the Board wrongfully refused his demand. This requires particularized factual allegations that the Board (1) did not act in an informed manner and with due care, or (2) did not act with a good faith belief that its actions were in the best interests of the Company. The Complaint lacks *any* allegations, much less particularized ones, to meet this burden. As a result, Plaintiff lacks standing, and the motion to dismiss should be granted with prejudice pursuant to Federal Rule of Civil Procedure 23.1.

The Complaint should be dismissed for two additional reasons. First, any alleged defects with the challenged stock option grants were cured by the amendment to the equity plan made following the Board's consideration of Plaintiff's demand. Thus, there is no ongoing case and controversy, and Plaintiff's claims are moot, warranting dismissal under Rule 12(b)(1). Second, dismissal is also proper under Rule 12(b)(6) as Plaintiff fails to adequately allege a cognizable claim under any legal theory.

Accordingly, defendants respectfully request that the Complaint be dismissed with prejudice.

Cooley LLP
Attorneys At Law
Palo Alto

2.

Case No. 13CV2959 JAH NLS
Memo of Points & Authorities ISO
Motion to Dismiss

## II. STATEMENT OF ALLEGATIONS AND FACTS SUBJECT TO JUDICIAL NOTICE

### A. Orexigen and its Equity Plan.

Orexigen is a biopharmaceutical company founded in 2002 and headquartered in La Jolla, California. (Compl. ¶ 10; Dec. Ex. E at 112.) [1] It focuses on the treatment of obesity, with its primary drug candidate, Contrave, currently under consideration by the U.S. Food & Drug Administration ("FDA") for final approval. (Compl. ¶ 10; Dec. Ex. E at 80.)

As with many life sciences and technology companies, Orexigen compensates its officers and employees in part through stock options that are intended to motivate and retain those employees and to align their interests with those of its shareholders. In 2007, the Company's shareholders approved the Orexigen Therapeutics, Inc. 2007 Equity Incentive Award Plan (the "Equity Plan"), which authorized the Company to grant stock options and other equity awards to the Company's employees, directors and consultants. (Compl. Ex. C at 1.) Section 3.3 of the Equity Plan provided that, in any fiscal year, no more than 1,500,000 shares could be granted to any individual (the "Equity Plan Limit") effective once certain conditions had first been satisfied or on "such other date required by Section 162(m) of the Code."[2] (Compl. Ex. C, Equity Plan at §3.3.)

---

[1] The prefix "Dec." refers to the Declaration of Jessica Valenzuela Santamaria, filed herewith, and is followed by the applicable Exhibit and page number.

[2] Under Section 162(m) of the Internal Revenue Code, a public company may only deduct compensation paid to certain executive officers in excess of $1 million per year if specific requirements are met. 26 U.S.C. § 162(m). One of the requirements for deductibility is that the compensation must be performance-based. Further, for equity awards to be deductible, they must be granted pursuant to a shareholder-approved plan that contains a limit on the number of shares entitled to such preferential treatment that may be awarded each year to any single recipient. Section 162(m) is not applicable to a company the minute it goes public. Rather, the federal regulations implementing Section 162(m) set out a transition period before the provision applies to a public company. *See* 26 CFR 1.162-27(h)(3)(ii). Section 3.3 of the Equity Plan tracks the language of this federal regulation so that the Equity Plan Limit became effective at the same time that the Company was required to comply with Section 162(m). (Compl. Ex. C, Equity Plan at §3.3.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

1    Those conditions were satisfied on June 2, 2011.  (Compl. Ex. B at 2.)

2        The shareholders vested Orexigen's Compensation Committee with the sole

3    authority to interpret and amend the Equity Plan.  (Compl. Ex. C, Equity Plan at

4    §13.3(i) (giving Compensation Committee "the exclusive power, authority and

5    discretion to: . . . (i) Interpret the terms of, and any matter arising pursuant to, the

6    Plan or any Award Agreement; and (j) Make all other decisions and determinations

7    that may be required pursuant to the Plan or as the Committee deems necessary or

8    advisable to administer the Plan").)   Further, the Equity Plan grants to the

9    Compensation Committee, with the approval of the Board as a whole, authority to

10   amend or modify the terms of the plan (subject to certain restrictions not at issue in

11   this case). (Compl. Ex. C, Equity Plan at § 15.1).

12       **B.      The option grants challenged by Plaintiff.**

13       In March 2010, following years and millions of dollars spent in clinical trials

14   and development, the Company submitted a New Drug Application ("NDA") for

15   Contrave (also known as "NB32") for the treatment of obesity.  (Dec. Exh. E at 80.)

16   As is often the case, in December 2010, Orexigen's application was reviewed by an

17   advisory committee to the FDA.  (*Id.*)  The FDA's Division of Endocrinologic and

18   Metabolic Drugs Advisory Committee concluded that "the available clinical data

19   adequately demonstrate that the potential benefits of NB32 outweigh the potential

20   risks when used long-term in a population of overweight and obese individuals and

21   supported approval." (*Id.*)  However, a month later, and to the surprise of many, the

22   FDA declined to approve Contrave.  (*Id.*)  The FDA directed Orexigen to conduct

23   an additional trial regarding the cardiovascular safety profile of the drug before re-

24   submitting the application.  (*Id.*)  In response to this news, the price of Orexigen's

25   stock predictably declined and continued to do so over the first six months of 2011.

26   (Dec. Ex. F at 113-15.)

27       Faced with this significant setback, growing uncertainty regarding the future

28   of the Company and concern regarding the potential departures of key employees

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

(the Chief Financial Officer of the Company resigned in February 2011), the Compensation Committee of Orexigen's Board granted stock options to employees in January and June 2011 in an attempt to retain and motivate them.  (Compl. ¶¶ 29-30; Dec. Exh. H at 137; Dec. Exh. B at 36.)  These option grants included the grants now challenged by Plaintiff to the Company's Chief Executive Officer, Michael Narachi; its Chief Business Officer and acting Chief Financial Officer, Joseph Hagan; and its Senior Vice President, General Counsel and Secretary Heather Turner.  (Compl. ¶¶ 11, 21-22, 29.)

However, as Orexigen's stock price continued to decline, these retention grants and other stock option awards made to employees over the years, became worthless as the strike price – the amount that had to be paid to the Company to exercise the stock option – far exceeded the price at which the Company's stock was trading publicly.  To address the Board's concern that "unexercised and underwater options have lost their value as either an incentive or retention tool," the Board approved an option exchange through which eligible employees could exchange their underwater options for options valued at market.  (Dec. Ex. B at 36.)  The option exchange was accomplished through a tender offer (the "Tender Offer"), which allowed employees to forfeit and replace options at a lower strike price, but did not increase the overall number of options owned by any employee.  (*Id.*)  Messrs. Narachi and Hagan and Ms. Turner, as well as many other Orexigen employees, participated in the Tender Offer, replacing their underwater options with options having an exercise price at the then-market price of Orexigen stock.  (*Id.*)  Plaintiff also challenges these grants.

The retention awards served their intended purpose as Messrs. Narachi and Hagan, Ms. Turner and many others remained at the Company through this uncertain period.  Under their leadership, the Company spent the next two years addressing the concerns raised by the FDA regarding Contrave and resubmitted its NDA in December 2013.  It is now awaiting the FDA's decision which is expected

Cooley LLP
Attorneys At Law
Palo Alto

5.

Case No. 13CV2959 JAH NLS
Memo of Points & Authorities ISO
Motion to Dismiss

1    by September 11, 2014.  (Dec. Ex. D at 74.)

2    **C.**    **The Board's consideration of Plaintiff's demand letter.**

3    In May 2013, two years after the challenged stock option grants were made,

4 Plaintiff sent a demand letter to Orexigen's Board.  Plaintiff alleged that the stock

5 option awards to Messrs. Narachi and Hagan and Ms. Turner in 2011, including

6 those exchanged pursuant to the Tender Offer, were invalid because they exceeded

7 the Equity Plan Limit.  (Compl. Ex. A at 2.)  The stated purpose of the demand was

8 to give Orexigen's Board "the opportunity to investigate and institute claims on

9 behalf of the Company … and to implement new and stronger controls which

10 would help prevent a recurrence of these failures in the future." (*Id.*)

11    The Orexigen Board responded appropriately to Plaintiff's demand.  It

12 established a committee composed of independent directors, the DRC, to

13 investigate the allegations in the demand letter.  (Compl. Ex. B at 2.)  The DRC

14 engaged independent counsel to assist with its investigation.  (*Id.*)  With the

15 assistance of its advisors, the DRC "evaluated the terms of the Plan, the initial

16 issuance procedures for the option grants to Mr. Narachi, Mr. Hagan and Ms.

17 Turner during 2011, the authority available to the  Compensation Committee under

18 its charter and the Plan, the expectations of the award recipients and the intent of

19 the Board and the Compensation Committee regarding the availability of an

20 exemption from the deductibility limitations of Internal Revenue Code Section

21 162(m) for such option grants." (*Id.*)

22    Following its investigation and analysis, the DRC determined:

23

24 that the 162(m) Award Limit first became effective as of June 2, 2011, and that, therefore, awards granted under the Plan prior to June 2, 2011, did not count toward the 162(m) Award Limit.  The [DRC] determined that the awards granted to Mr. Hagan between June 2, 2011 and December 31, 2011 did not exceed the 162(m) Award Limit.

25

26 The [DRC] further determined that the options to Mr. Narachi and Ms. Turner, including the portion of such awards in excess of the 162(m) Award Limit, were validly approved under the Plan, although

27 the portion of those awards in excess of the 162(m) Award Limit does not qualify as performance-based compensation under Section

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

162(m).

(Compl. Ex. B at 2.)

In light of the above conclusions, and following a thorough analysis with its advisors of the merits of Plaintiff's demands, the Board determined that initiating litigation as demanded by Plaintiff was not in the best interests of the shareholders. However, the Board undertook certain corrective action based on the findings of the DRC.   In particular, the Compensation Committee amended the Equity Plan to clarify that the Equity Plan Limit in Section 3.3 applied only to awards "intended to qualify as performance-based compensation" under Section 162(m).  (Compl. Ex. B at 2.)  Thus, the Compensation Committee confirmed that the Equity Plan Limit, rather than operating as an absolute cap, limited only the number of equity awards that could qualify for favorable tax treatment.   The Compensation Committee's amendment to the Equity Plan also specified that "[a]ny grants under the Plan in excess of the 162(m) Award Limit are not intended to qualify as performance-based compensation under Section 162(m)."   (*Id.*)   Consistent with the Compensation Committee's authority to administer the Equity Plan, the amendment was deemed effective as of June 10, 2011, the day the first of the challenged awards were made. (*Id.*)   Plaintiff does not challenge the propriety of this amendment, nor the Compensation Committee's prerogative to make the amendment effective retroactively.

On September 22, 2013, the Company filed a Form 8-K with the Securities and Exchange Commission publicly disclosing the investigation and the actions undertaken by the Board. (Compl. Ex. B and ¶ 38.)

Shortly thereafter, the Company's counsel informed Plaintiff's counsel  of the actions taken in response to the demand letter, providing a link to the Form 8-K. The correspondence encouraged Plaintiff to contact the Company's counsel if he had any questions regarding the Company's response to the demand letter.  (Compl.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

1    Ex. B and ¶ 38.)

2        **D.    Plaintiff files this lawsuit.**

3        Plaintiff never responded to the Board's communication and never asked for

4    any further clarification regarding the actions undertaken by the Board in response

5    to his demand letter.  Rather, two and a half months later, he filed this purported

6    derivative action.  The Complaint alleges that the defendants exceeded their

7    authority under the Equity Plan by issuing stock options in excess of the Equity

8    Plan Limit and thereby breached their fiduciary duties, unjustly enriched the grant

9    recipients and committed corporate waste.  Other than highly conclusory

10   statements, the Complaint contains no allegations suggesting that either the Board

11   or the DRC failed to act in an informed manner or performed their duties in

12   anything other than good faith.

13       The Complaint names the Company as a nominal defendant and seeks to

14   assert claims against Messrs. Narachi and Hagan and Ms. Turner as well as the

15   entire Board of Directors as constituted in 2011.  (Compl. ¶¶ 10-22.)

16   **III.   ARGUMENT**

17       The Court should dismiss the Complaint for three independent reasons.  First,

18   Plaintiff fails to adequately plead that the Board wrongfully refused his demand

19   and, thus, has no standing to maintain a derivative lawsuit on behalf of the

20   Company.   Second, the claims are moot, and the Court lacks subject-matter

21   jurisdiction under Rule 12(b)(1).  And, finally, Plaintiff fails to state a claim for

22   relief under Rule 12(b)(6).

23       **A.    Plaintiff lacks standing as he fails to adequately allege that
             the Board wrongfully refused his demand.**

24

25       It is a fundamental precept of Delaware law[3] that a corporation's board of

26   _____

27   [3]  Because Orexigen is incorporated in Delaware, Delaware law governs the
     shareholder demand requirements and any liability of the officers or directors to the
     Company.  *See Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96 (1991);
28   *Copeland v. Lane*, 2012 WL 4845636, at *4 (N.D. Cal. Oct. 10, 2012).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

directors, not its shareholders, manages a company's business affairs, including the decision to initiate litigation. *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 101 (1991) (citation omitted); *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). Because a shareholder derivative suit usurps this authority of the board, Federal Rule of Civil Procedure 23.1 and Delaware law require that a shareholder plaintiff make a pre-suit demand on the board before pursuing derivative claims on behalf of the corporation, or else plead with particularity the reasons why such demand would have been futile. Fed. R. Civ. P. 23.1; *see also Knopf v. Semel*, 2010 WL 965308, at *7 (N.D. Cal. Mar. 17, 2010).

Where, as here, Plaintiff made a pre-litigation demand, he may maintain derivative claims only if he pleads with particularity that the corporation wrongfully refused to act in response to the demand. *Lucas v. Lewis*, 428 F. App'x. 694, 695-96 (9th Cir. 2011). Under the business judgment rule, a board is presumed to have acted appropriately in response to a shareholder demand. *Scattered Corp. v. Chicago Stock Ex., Inc.*, 701 A.2d 70, 73 (Del. 1997); *see also Knopf*, 2010 WL 965308, at *7. To overcome this presumption and plead wrongful refusal, a plaintiff must allege particularized facts creating a reasonable doubt that the directors acted in an informed manner and with due care, and in a good faith belief that their action was in the best interest of the corporation. *Levine v. Smith*, 591 A.2d 194, 198 (Del. 1991). To raise a reasonable doubt about a board's due care, a plaintiff must plead particularized facts showing that the board reached its decision to refuse demand "by a grossly negligent process that includes the failure to consider all material facts reasonably available." *Copeland v. Lane*, 2012 WL 4845636, at *8 (N.D. Cal. Oct. 10, 2012) (citing *Brehm v. Eisner*, 746 A.2d 244, 264 n.66 (Del. 2000)). To adequately challenge good faith, a plaintiff must plead particularized facts sufficient to raise a reasonable doubt that directors acted with a good faith belief that their action was in the best interest of the corporation. *Levine*, 591 A.2d at 198. Thus, the focus of the wrongful-refusal analysis is on the process

Cooley LLP
Attorneys At Law
Palo Alto

9.

Case No. 13CV2959 JAH NLS
Memo of Points & Authorities ISO
Motion to Dismiss

1   undertaken by the board to investigate the alleged wrongdoing, not on the alleged

2   wrongdoing itself.  *See Scattered*, 701 A.2d at 73.

3       Mere conclusory allegations are insufficient, and a "[p]laintiff's pleading

4   burden under Rule 23.1 is also more onerous than that required to withstand a Rule

5   12(b)(6) motion to dismiss."  *Levine*, 591 A.2d at 207.  Indeed, the burden to plead

6   wrongful refusal is a "considerable" one that "few, if any, plaintiffs surmount."

7   *RCM Secs. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991) (applying

8   Delaware law).

9       The Northern District of California's recent decision in *Copeland v. Lane* is

10  instructive as to how these principles are to be applied.  2012 WL 4845636.  In that

11  case, the court granted a motion to dismiss a derivative complaint by a shareholder

12  of Hewlett-Packard alleging that his demand on the company's board had been

13  wrongfully refused.  The court explained the challenge such lawsuits face: "If a

14  demand is made and rejected, the board rejecting the demand is entitled to the

15  presumption of the business judgment rule unless the stockholder can allege facts

16  with particularity creating a reasonable doubt that the board is not entitled to the

17  benefit of the presumption."  *Id.* at *5 (citations omitted). The plaintiff attempted to

18  challenge the due care of the board by alleging, among other things, that the

19  committee formed to review the demand and the board as a whole spent insufficient

20  time on the investigation, conducted too few witness interviews, did not put

21  witnesses under oath, and did not provide to the plaintiff work product that it

22  considered to be privileged.  *Id.* at *8.  The court rejected the allegations as being

23  inadequate to overcome the protections of the business judgment rule.  Among

24  other things, the plaintiff failed to plead with any particularity facts regarding the

25  amount of time spent on the investigation or why that was insufficient, the identity

26  of witnesses who were not interviewed or "how those interviews if taken would

27  have altered the board's decision to refuse demand," or that the board failed to

28  review the committee's report.  *Id.*  Further, the court noted that "'[a]n investigating

Cooley LLP
Attorneys At Law
Palo Alto

10.

Case No. 13CV2959 JAH NLS
Memo of Points & Authorities ISO
Motion to Dismiss

board generally is under no obligation to make use of any particular investigative technique,'" and there is no rule that every witness – or even any witness – need be interviewed. *Id.* (citation omitted).

Because Plaintiff fails to meet this burden, he has no standing to maintain derivative claims, and dismissal is warranted under Rules 12(b)(1) and 23.1.

> **1.      Plaintiff fails to adequately plead that the Board did not act in an informed manner or with due care.**

Plaintiff pleads no facts at all – let alone the required, particularized facts – to cast doubt upon the process undertaken or the due care exercised by either the DRC or the Board as a whole.  In fact, the Complaint devotes only a single paragraph to the topic:

> As described in the 8-K, following receipt of the Demand, the Board formed a Demand Review Committee (the "Review Committee") consisting of purportedly independent directors to conduct an investigation of the allegations made in the Demand.   Following this investigation, the Review Committee determined that the excess awards identified by Plaintiff were "validly approved under the Plan."

(Compl. at ¶ 39.)    In the subsequent paragraph, Plaintiff simply states his conclusion: "the investigation and subsequent refusal of the demand was unreasonable and not done in good faith."  (*Id*. at ¶ 40.)  That's it.  Such conclusory allegations simply do not satisfy the requirement that a Plaintiff plead with particularity facts creating a reasonable doubt that the Board employed "a grossly negligent process that includes the failure to consider all material facts reasonably available."  *Brehm*, 746 A.2d at 264 n. 66; *accord Copeland*, 2012 WL 4845636, at *8.

The Complaint falls well short of even the deficient complaint rejected in *Copeland*.  Here, Plaintiff does not identify a single alleged flaw in the manner in which the DRC and Board considered the demand, in the scope of the investigation and review undertaken by the DRC, in the consideration of the DRC's

Cooley LLP
Attorneys At Law
Palo Alto

11.

Case No. 13CV2959 JAH NLS
Memo of Points & Authorities ISO
Motion to Dismiss

1   recommendations by the Board, or in any other aspect of the process.  He does not

2   allege that the Board failed to retain appropriate advisors, failed to review relevant

3   documents, or failed to interview any particular individual.   To the contrary,

4   Plaintiff concedes that the DRC retained independent counsel, a step widely

5   recognized as an indication of due care by a board.  *See, e.g., Copeland*, 2012 WL

6   4845636, at *9 (board retained independent counsel and conducted investigation);

7   *Mount Moriah Cemetery ex rel. Dun & Bradstreet Corp. v. Moritz*, 1991 WL

8   50149, at *3-4 (Del. Ch. Apr. 4, 1991) (same); *Spiegel v. Buntrock*, 571 A.2d 767,

9   778 (Del. 1990) (same).

10      In short, the Complaint is entirely devoid of any particularized facts that

11   suggest the Board's process in responding to the demand was in any respect

12   deficient.  In the absence of such particularized allegations, the Complaint must be

13   dismissed.  *See, e.g., Scattered*, 701 A.2d at 75 (affirming dismissal of derivative

14   complaint and rejecting plaintiff's "facts" as "conclusory and speculative

15   statements, suffering fatally from a paucity of particularization"); *Halpert Enters.,*

16   *Inc. v. Harrison*, 2008 WL 4585466, at *3 (2d Cir. Oct. 15, 2008) (rejecting claim

17   of wrongful refusal in the absence of such particularized facts).

18
19   ### 2.   Plaintiff fails to adequately plead that the Board did not act in good faith.

20      Plaintiff's attempt to allege that the Board failed to act in good faith is

21   equally deficient.  A single paragraph in the Complaint references good faith:

22   > As will be described below, the investigation and
23   > subsequent refusal of the Demand was unreasonable and
     > not done in good faith.  The 8-K does not articulate any
24   > legitimate basis for the Review Committee's contention
     > that the Board acted properly in granting the awards
25   > challenged herein.

26   (Compl. at ¶ 40.)  However, there are no additional allegations in the Complaint

27   that even suggest that the Board did not believe that its action in responding to the

28   demand was in the best interests of the Company.  *Levine*, 591 A.2d at 198.  A bare

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

allegation that a board's refusal was not done in good faith is insufficient. *Grimes v. Donald*, 673 A.2d 1207, 1220 (Del. 1996). Plaintiff makes no allegations regarding any specific director, no allegations regarding the members of the Demand Review Committee, and no allegations regarding the procedures that they followed.

It is also worth noting that Plaintiff cannot challenge, as a matter of law, the Board's ability to impartially consider his demand. Indeed, it is well established under Delaware law that a "shareholder who makes a demand concedes the disinterestedness and independence of a majority of the board to respond to the demand." *Copeland*, 2012 WL 4845636, at *5 (citations omitted).

In the absence of particularized facts that the Board did not act in the best interests of Orexigen shareholders, Plaintiff fails to adequately allege bad faith sufficient to survive this motion to dismiss.

### 3. Plaintiff's attempt to challenge the substantive decision of the Board in response to his demand is irrelevant.

Unable to allege any deficiencies in the Board's investigation process, Plaintiff instead focuses his entire complaint on challenging the conclusions reached by the Board. (*See*, *e.g.*, Compl. ¶¶ 41-46.) However, the merits of the Board's decisions are "*not* subject to judicial review." *Spiegel*, 571 A.2d at 778 (citation omitted); *see also Halpert*, 2008 WL 4585466, at *1 (applying Delaware law) ("The board's ultimate conclusion…is *not* subject to judicial review."). "To the extent Plaintiffs put the Board's good faith at issue, they do so only by attacking the substance of the Board's opinion, and they do that, essentially, by re-asserting the merits of the lawsuit they would like the Board to commence. … [T]he potential merits of the lawsuit itself are not at issue in the context of a motion to dismiss for failure to show wrongfulness of a demand refusal, and Plaintiff's arguments cannot vitiate the business judgment rule in this case." *In re Bos. Scientific Corp. S'holders Litig.*, 2007 WL 1696995, at *6 (S.D.N.Y. June 13,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

2007) (citations omitted).[4]  Indeed, if a plaintiff could overcome the protection of the business judgment rule simply by disagreeing with the conclusions reached by the directors of a company, the wrongful-refusal requirement would be rendered meaningless.

Further, even if underlying wrongdoing occurred, "it does not follow that the Board's *evaluation, investigation, and rejection of the Demand* must have been undertaken in bad faith."  *Knopf*, 2010 WL 965308, at *8.  For example, in *Knopf*, a shareholder demanded that the Yahoo! board pursue litigation against an executive based on testimony he provided at a congressional hearing that he later conceded was inaccurate.  Despite the admission, the board declined to pursue litigation.  The court found that the existence of wrongful conduct was insufficient to establish that the board's investigation of his demand was not performed in good faith.  *Id.* Indeed, it is entirely proper for a company to forego litigation or otherwise reject a shareholder demand if it does not serve the company's best interests.  *Kamen*, 500 U.S. at 96; *see also In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007) ("It is within the bounds of business judgment to conclude that a lawsuit, even if legitimate, would be excessively costly to the corporation or harm its long-term strategic interests.").

The Complaint does not come close to alleging facts adequate to allow Plaintiff to usurp the Board's prerogative to control the Company's litigation and to allow him to proceed with claims on behalf of the Company.  As a result, the Plaintiff lacks standing, and the Complaint should be dismissed with prejudice.

---

[4] Although irrelevant to this inquiry, the Board's actions were proper and justified in this case.  The Complaint fails to allege any facts to refute the Board's conclusion that the Equity Plan Limit applies only to options intended to be deductible under Section 162(m).  Indeed, the language of the Equity Plan Limit, itself, supports this conclusion.  The Equity Plan Limit became effective at the same time the Company was required to comply with Section 162(m) and specifically provided that it became effective upon certain conditions or "on such other date required by Section 162(m) of the Code."  (Compl. Ex. C, Equity Plan at § 3.3.)

Cooley LLP
Attorneys At Law
Palo Alto

14.

Case No. 13CV2959 JAH NLS
Memo of Points & Authorities ISO
Motion to Dismiss

### B.  Plaintiff's claims are moot.

The Court need not continue its analysis beyond the threshold standing issue discussed above.  However, it is worth noting that the Complaint suffers from additional, independent flaws justifying dismissal.  Most importantly, the Board's amendment to the Equity Plan in 2013 cured any purported violation of the Equity Plan Limit, and a subsequent violation is not likely to occur.  Accordingly, Plaintiff's claims are moot, and the Court lacks subject matter-jurisdiction over them.

Federal courts only have jurisdiction over actual cases and controversies, so the Court must resolve standing and mootness before assuming jurisdiction.  *See Lujan v.Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (discussing standing); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question . . . .").  Where a plaintiff lacks standing or the issue is moot, a complaint must be dismissed for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A case "is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted).  Voluntary cessation of conduct renders a claim moot where "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992); *see also Isaac Bros. Co. v. Hibernia Bank*, 481 F.2d 1168, 1170 (9th Cir. 1973); *Buckley IRA v. Archer-Daniels-Midland Co.*, 111 F.3d 524, 526-27 (7th Cir. 1997).

For example, in *Isaac Brothers*, the plaintiff claimed that a shareholder proposal should have been presented in a proxy statement to the corporation's shareholders for vote.  The court dismissed a shareholder's appeal as moot when the proposal at issue was included – and "soundly defeated" – in the following year's proxy statement.  481 F.2d at 1170.  Because the alleged wrong was based

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

on the omission of the shareholder's proposal, there was no reasonable expectation that the wrong would be repeated.  *Id.*  Similarly, in *Buckley*, the court dismissed as moot challenges to an allegedly invalid proxy statement and election because a later proxy statement and election superseded them, leaving the court with no remedy to impose.  111 F.3d at 526-27.

Here, Plaintiff's sole challenge is that certain stock option awards in 2011 allegedly exceeded the Equity Plan Limit.  The breach of fiduciary duty, waste and unjust enrichment claims are all premised on this alleged violation of the Equity Plan.  (Compl. ¶¶ 53, 59 and 64.)  However, the Board's fully authorized amendment in 2013 to the Equity Plan remedied any alleged flaws in the original grants.  The amendment provided language clarifying that it was the intention of the Equity Plan that the Equity Plan Limit applies only to performance-based compensation intended for favorable tax treatment under Section 162(m) and determined that the Compensation Committee could otherwise award non-performance-based stock options in excess of that limit.  (Dec. Ex. C at 69.)  Further, the Board made the amendment effective retroactively to a date preceding the challenged grants.[5]  (*Id.*)  The effect was to ensure that the challenged grants were fully authorized, though only the portion of those grants up to the limit amount would qualify for the favorable 162(m) tax treatment.

Because any potential problems with the grants have been corrected and Plaintiff has failed to allege that there is a reasonable expectation that future errors will occur, Plaintiff's claims are moot.  The Court has no subject-matter

---

[5] Plaintiff does not challenge the validity of the retroactive amendment, nor could he.  Under Delaware law, because the Board had the authority to amend the Equity Plan in the first instance, it had the power to make such amendment retroactive. *See e.g., Kalageorgi v. Victor Kamkin, Inc.*, 750 A.2d 531, 539 (Del. Ch. 1999) (holding that Delaware corporation had authority to retroactively cure a defect seven years after issuance of stock).  *See also Michelson v. Duncan*, 407 A.2d 211, 219 (Del. 1979) (holding that shareholders had authority to retroactively amend an option exchange plan where the shareholders could have originally authorized the amendment).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

jurisdiction, and the complaint should be dismissed.  *See* Fed. R. Civ. P. 12(b)(1).

## C.  Plaintiff fails to state a claim.

For the reasons set forth above, the Court need not consider the question of whether Plaintiff states a claim for breach of fiduciary duty, unjust enrichment or waste.  But even if the Court reaches such issues, the Complaint should be dismissed under Rule 12(b)(6) as it fails to adequately allege any such claims.

A complaint may be dismissed under Rule 12(b)(6) where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citations omitted).  The factual allegations "must be enough to raise a right to relief above the speculative level" so that plaintiff's claim "is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  If the well-pleaded facts do not permit the court to infer more than the "mere possibility of misconduct," then the plaintiff is not entitled to relief. *Iqbal,* 556 U.S. at 679.

### 1.  Plaintiff fails to state a claim for breach of fiduciary duty.

To state a claim for a breach of fiduciary duty, Plaintiff must allege that the directors intentionally engaged in bad faith or self-interested conduct that is not immunized by the exculpatory charter provision permitted by Delaware General Comparative Code Section 102(b)(7).[6]  *McMillan v. Intercargo Corp.*, 768 A.2d

---

[6]  Delaware General Corporation Law section 102(b)(7) permits a Delaware corporation to include a provision in its charter to exculpate directors from personal

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

492, 495 (Del. Ch. 2000); *see also Malpiede v. Townson*, 780 A.2d 1075, 1094-95 (Del. 2001).   A finding of bad faith requires a fiduciary to have acted (a) intentionally with a purpose other than that of advancing the best interests of the corporation, (b) with the intent to violate applicable positive law, or (c) with a conscious disregard for his duties.   *Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006) (citation omitted).  Bad faith is "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 n.16 (Del. 1993).

Here, Plaintiff has failed to allege that any individual defendant acted with an intent to violate the law, for a purpose other than to advance the interests of Orexigen, or with a conscious disregard for the individual defendants' duties. Indeed, the Complaint contains virtually no allegations regarding any individual defendants' state of mind.   The conclusory allegation that "the Individual Defendants knowingly exceeded their authority under the Incentive Plan and did not act in good faith toward the Company," is simply insufficient to plead a breach of fiduciary duty.  (Compl. ¶ 53); *Twombly*, 550 U.S. at 555.

Plaintiff similarly fails to allege that any of the defendants' conduct was disloyal, or made with any intention other than to benefit Orexigen.  Plaintiff does not allege that any director aside from Mr. Narachi received a challenged award,

---

liability for alleged breaches of the fiduciary duty of care. 8 Del. Gen. Corp. Law § 102(b)(7).   Orexigen's certificate of incorporation contains such a provision (*See* Dec. Exh. A at 17.)  Thus, causes of action for breach of fiduciary duty premised on negligence or recklessness are barred as a matter of law.  *In re Sagent Tech., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079, 1095 n. 9 (N.D. Cal. 2003).  Any viable claim for breach of fiduciary duty must be supported by particularized facts demonstrating bad faith or disloyalty.  *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

nor does the Complaint articulate a coherent theory regarding how each individual director received a benefit from the challenged awards that was not shared by the Company.  To the contrary, the stock option awards were made for the purpose of incentivizing key executives to remain with the Company during a particularly challenging time, maximizing the Company's prospects for long-term success.

Further, the notion that the Board intentionally violated an absolute cap on equity awards makes no sense:  if such a limit existed, the Board could simply have increased it.  Orexigen is listed on the NASDAQ stock exchange.  (Compl. ¶ 34.) NASDAQ listing rules permit a board, without seeking shareholder approval, to amend a per year grantee limit in a stock plan.  (*See* Dec. Exh. G at 135 (when asked about a proposed amendment to increase a yearly limitation on per person grants, NASDAQ staff responded "we have determined that the Amendment is not a material amendment under the Rule. . . . Accordingly, the Rule does not require shareholder approval for the Amendment").)

### 2.    Plaintiff fails to state a claim for unjust enrichment.

Because the shares awarded to Messrs. Narachi and Hagan and Ms. Turner were not unjust or unconscionable, Plaintiff fails to state a claim for unjust enrichment.

To state a claim for unjust enrichment under Delaware law,[7] Plaintiff must allege facts demonstrating that (i) each defendant was enriched, (ii) the company was impoverished, (iii) a relation between the enrichment and the loss, (iv) the absence of a justification, and (v) the absence of a remedy provided by law.  *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Thus, Delaware law requires "an absence of justification for the transfer that enriches one party and impoverishes the

---

[7] Plaintiff's unjust enrichment claim must also be dismissed under California law. In California, unjust enrichment is not an independent cause of action.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010) ("Simply put, 'there is no cause of action in California for unjust enrichment.'" (citation omitted)).

Cooley LLP
Attorneys At Law
Palo Alto

19.

Case No. 13CV2959 JAH NLS
Memo of Points & Authorities ISO
Motion to Dismiss

other." *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 657 n.73 (Del. Ch. 2008) (citations omitted).

Here, Plaintiff supports his unjust enrichment claim with only generic allegations that Messrs. Narachi and Hagan and Ms. Turner "have been unjustly enriched at the expense and to the detriment of the Company" and that it would be "unconscionable and against fundamental principles of justice, equity, and good conscience" for them "to retain the benefits of the awards that were granted in express violation of the Incentive Plan." (Compl. ¶¶ 64-65.) Plaintiff pleads neither facts explaining how the receipt of such awards by Messrs. Narachi and Hagan or Ms. Turner was "unjust," nor any facts showing that the awards were at the expense of Orexigen. *See Twombly*, 550 U.S. at 555 ("labels and conclusions" do not suffice to state a claim). To the contrary, Plaintiff does not allege that the challenged stock awards were for any purpose other than to retain valued executives when the Company's stock was trading at historically low prices. (Dec. Exh. B at 36.)

Further, the Complaint never alleges that Messrs. Narachi and Hagen and Ms. Turner were responsible for any of the allegedly problematic grants or played any role in the Compensation Committee's decisions to grant them in 2011. Indeed, none of them served on the Compensation Committee. Nevertheless, now that the Company and its shareholders have benefitted from the continued contributions of these executives, contributions secured at least in part by the incentives created by the 2011 option grants to them, Plaintiff would have the Company attempt to deprive the executives of the very compensation they were promised. The only unjust enrichment that would occur if such a path were followed would be the unjust enrichment – at the expense of these executives – of the Company. It is not in the interests of the Company or its shareholders to engage in such duplicity.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

### 3.     Plaintiff fails to state a claim for waste.

To prevail on a claim of corporate waste, a plaintiff "must overcome the general presumption of good faith by showing that the board's decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests." *White v. Panic*, 783 A.2d 543, 554 n.36 (Del. 2001). Under Delaware law, corporate waste claims must withstand "an extreme test" that is "very rarely satisfied by a shareholder plaintiff." *Zucker v. Andreessen*, 2012 WL 2366448, at *8 (Del. Ch. Jun. 21, 2012) (citation omitted). The claim will survive only if the value provided by the company was "so disproportionately large as to be unconscionable" in comparison to the consideration received. *Id.* (citation omitted).  Plaintiff's pleading hurdle is further heightened where, as here, the waste claim concerns executive compensation, an area in which courts have shown significant deference to board decisions. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*, 534 F.3d 779, 791 (D.C. Cir. 2008) ("[C]ourts rarely second-guess directors' compensation and severance decisions because the 'size and structure of executive compensation are inherently matters of judgment.'") (quoting *Brehm*, 756 A.2d at 263).

For example, in *In re 3COM Corp. S'holders Litig*, plaintiff alleged that a stock option grant similar to the one at issue here constituted waste as the size of the grant was "grossly excessive."  1999 WL 1009210. at *4 (Del. Ch. Oct. 25, 1999).   However, because plaintiff failed to allege a "complete *failure* of consideration" or why the company did not benefit from such grants, the court dismissed plaintiff's claim. *Id.* at *5. The same defect exists here.  Plaintiff does not plead that the Company did not benefit from the challenged awards. The Complaint is devoid of allegations that the stock options (or executive compensation generally) were excessive or out of line with compensation paid to executives of comparable companies.  Nor does Plaintiff allege that the challenged

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

21.

**Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS**

awards served no legitimate corporate purpose, much less that the decisions were "egregious or irrational" or an "unconscionable" waste of corporate assets.

It should not be lost in all the rhetoric that Orexigen and its shareholders more than received the benefit of the bargain reflected by the grants. Messrs. Narachi and Hagan and Ms. Turner remained at the helm of the Company following the FDA's rejection of the Company's application for Contrave in January 2011. Under their leadership, the Company was able to re-submit its NDA for Contrave two years later. The Company's shareholders, including Plaintiff, have benefitted greatly as a result. Indeed, from June 10, 2011 (the date of the retention awards) to July 18, 2014, the value of Orexigen stock has more than tripled, climbing from $1.70 per share to $5.32 per share. (Dec. Exh. F.) Plaintiff's lack of allegations regarding the supposed waste of these grants is perhaps understandable in light of those results.

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS

Dated:  July 23, 2014

COOLEY LLP
JOHN C. DWYER (136533)
JESSICA VALENZUELA
SANTAMARIA (220934)


By:   *s/Jessica Valenzuela Santamaria*
      Jessica Valenzuela Santamaria

Attorneys for Defendants  Michael A.
Narachi, Heather D. Turner, Joseph P.
Hagan and nominal defendant Orexigen
Therapeutics, Inc.

DAVIS POLK & WARDWELL LLP
NEAL A. POTISCHMAN (254862)
ALYSE L. KATZ (274856)


By:   *s/Neal A. Potischman*
      Neal A. Potischman (254862)

Attorneys for Defendants Eckard Weber,
Louis C. Bock, Brian H. Dovey, Patrick
Mahaffy, Peter K. Honig, Wendy Dixon,
Joseph S. Lacob, Michael F. Powell, and
Daniel K. Turner III

107670226 v14

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

23.

Case No. 13CV2959 JAH NLS
MEMO OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS