COOLEY LLP
JOHN C. DWYER (136533)
(DWYERJC@COOLEY.COM)
JESSICA VALENZUELA SANTAMARIA (220934)
(JSANTAMARIA@COOLEY.COM)
JEFFREY D. LOMBARD (285371)
(JLOMBARD@COOLEY.COM)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

*Attorneys for Michael A. Narachi, Heather D. Turner, Joseph P. Hagan, and nominal defendant Orexigen Therapeutics, Inc.*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YACOV TURGEMAN, derivatively on behalf of OREXIGEN THERAPEUTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL A. NARACHI, JOSEPH P. HAGAN, HEATHER D. TURNER, ECKARD WEBER, LOUIS C. BOCK, BRIAN H. DOVEY, PATRICK MAHAFFY, PETER K. HONIG, WENDY DIXON, JOSEPH S. LACOB, MICHAEL F. POWELL, and DANIEL K. TURNER III, <br><br> Defendants. <br><br> and <br><br> OREXIGEN THERAPEUTICS, INC. <br><br> Nominal Defendant. | Case No. 13CV2959 JAH MDD <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> Date: November 3, 2014 <br> Time: 2:30 P.M. <br> Dept.: 13B <br> Judge: John A. Houston |

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH THAT THE BOARD WRONGFULLY REFUSED HIS DEMAND | 2 |
| | A. | The Board's Response To Plaintiff's Demand Is Protected By The Business Judgment Rule | 3 |
| | B. | The Board Had Discretion To Reject Plaintiff's Demand | 5 |
| | C. | Plaintiff's Disagreement With The Board's Conclusion That The Stock Option Awards Were Valid Does Not Establish Wrongful Refusal Of His Demand | 8 |
| III. | | PLAINTIFF'S CLAIMS ARE MOOT | 12 |
| IV. | | PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT OR WASTE | 12 |
| V. | | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. El Paso Pipeline GP Co.*,
  90 A.3d 1097 (Del. Ch. 2014) ..................................................................................5

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
  2013 WL 1777766 (S.D.N.Y. Apr. 25, 2013) ..........................................................4

*In re Bos. Scientific Corp. S'holders Litig.*,
  2007 WL 1696995 (S.D.N.Y. June 13, 2007) ......................................................4, 8

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ..................................................................................2, 3, 7

*Cal. Pub. Emps' Ret. Sys. v. Coulter*,
  2002 Del. Ch. LEXIS 144 (Del. Ch. Dec. 18, 2002) ............................................5, 6

*Copeland v. Lane*,
  2012 WL 4845636 (N.D. Cal. Oct. 10, 2012) ...................................................2, 3, 7

*Grimes v. Donald*,
  673 A.2d 1207 (Del. 1996) ......................................................................................2

*Halpert v. Zhang*,
  966 F. Supp. 2d 406 (D. Del. 2013) .....................................................................4, 6

*Halpert Enters., Inc. v. Harrison*,
  2008 WL 4585466 (2d Cir. Oct. 15, 2008) ..............................................................8

*In re infoUSA, Inc. S'holders Litig.*,
  953 A.2d 963 (Del. Ch. 2007) .................................................................................8

*Kalageorgi v. Victor Kamkin, Inc.*,
  750 A.2d 531 (Del. Ch. 1999) ...............................................................................10

*Knopf v. Semel*,
  2010 WL 965308 (N.D. Cal. Mar. 17, 2010) ...........................................................8

*La. Mun. Police Emps. Ret. Sys., et al. v. Bergstein, et al.*,
  C.A. No. 7764-VCL (Del. Ch. Oct. 14, 2013) .........................................................6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

CASE NO. 13CV2959 JAH NLS
REPLY ISO MOTION TO DISMISS

*Levine v. Smith*,
 1989 WL 150784 (Del. Ch. May 21, 1990) ..........................................................5

*Mgmt. Inv. Funding Ltd. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
 2000 WL 145461 (S.D.N.Y. Feb. 9, 2000), rev'd on other grounds by
 *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch,
 Pierce, Fenner & Smith Inc.*, 232 F.3d 153 (2d Cir. 2000) .................................6

*Pfeiffer v. Leedle*,
 2013 Del. Ch. LEXIS 272 (Del. Ch. Aug. 1, 2013) ..............................................9

*RCM Sec. Fund, Inc. v. Stanton*,
 928 F.2d 1318 (2d Cir. 1991) ..............................................................................3

*Rich v. Chong*,
 66 A.3d 963, 976 (Del. Ch. 2013) .......................................................................6

*Ryan v. Gifford*,
 918 A.2d 341 (Del. Ch. 2007) .............................................................................6

*Sanders v. Wang*,
 1999 WL 1044880 (Del. Ch. Nov. 8, 1999).................................................5, 6, 7

*Scattered Corp. v. Chicago Stock Ex., Inc.*,
 701 A.2d 70 (Del. 1997) ......................................................................................3

*Spiegel v. Buntrock*,
 571 A.2d 767 (Del. 1990) ............................................................................3, 7, 8

*Steinhardt v. Howard-Anderson*,
 2012 Del. Ch. LEXIS 1 (Del. Ch. Jan. 6, 2012) ................................................11

*Zen Investments, LLC v. Unbreakable Lock Co.*,
 276 F. App'x 200 (3rd. Cir. 2008) .....................................................................11

**Statutes**

26 U.S.C. § 162(m)................................................................................................10, 12

26 C.F.R. §1.162-27(e)(2)(vi)(A)..................................................................................9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

CASE NO. 13CV2959 JAH NLS
REPLY ISO MOTION TO DISMISS

26 C.F.R. §1.162-27(e)(4)(i) .................................................................................................... 9

**Other Authorities**

Fed. R. Civ. P.,
    12(b)(6) ........................................................................................................................ 12, 13
    23.1 ......................................................................................................................... 2, 12, 13

NASDAQ Listing Rule
    5635(c) ................................................................................................................................ 10
    IM-5635-1 .......................................................................................................................... 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

**CASE NO. 13CV2959 JAH NLS**
**REPLY ISO MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff chose to make a demand on Orexigen's Board that it take action to correct what he believes are invalid stock option awards to certain of the Company's executive officers. In doing so, he conceded as a matter of law that the Board was independent, disinterested, and fully capable of exercising its reasonable business judgment in responding to his demand. Now, because the Board decided that litigation is not in the shareholders' best interests, Plaintiff *must* allege with particularity either that the Board lacked independence or that it followed a deficient process in considering his demand. The Complaint is devoid of such allegations. In fact, Plaintiff does not even argue that such facts exist in his Opposition. Thus, under well-established Delaware law, the motion to dismiss should be granted.

Nevertheless, apparently unhappy with the Board's response to his demand, Plaintiff ignores the applicable standard for wrongful refusal and argues that the Board's rejection of his demand is not protected by the business judgment rule because the underlying stock option awards were purportedly invalid. Plaintiff goes so far as to contend that the Board entirely lacked discretion to refuse his demand. In other words, Plaintiff claims that once he made a demand asserting that the stock options were invalid, the Board was legally *required* to adopt his characterizations of the facts and law and pursue all the relief requested in the demand. This theory finds absolutely no support in the law. Not surprisingly, Plaintiff does not cite a single case supporting this stark departure from established law.

Because Plaintiff has not pleaded particularized facts that the Board did not act independently or did not exercise due care, Plaintiff cannot pursue these derivative claims. The Court should afford the Board the deference to which it is entitled under Delaware law and grant Defendants' motion to dismiss with prejudice under Federal Rule of Civil Procedure 23.1.

## II. PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH THAT THE BOARD WRONGFULLY REFUSED HIS DEMAND.

In his Opposition, Plaintiff concedes that "the relevant question on a motion to dismiss is whether the board's *decision to refuse the demand* is protected by the business judgment rule." (Opp. at 6 (emphasis added).) *See e.g., Grimes v. Donald*, 673 A.2d 1207, 1219 (Del. 1996) *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Plaintiff further acknowledges that to overcome the presumption of the business judgment rule, he is required to plead with particularity facts sufficient to question "that the board acted independently or with due care *in responding to the demand*." (Opp. at 7 (emphasis added).) *See Copeland v. Lane*, 2012 WL 4845636, at *8 (N.D. Cal. Oct. 10, 2012) (plaintiff must plead particularized facts showing board reached its decision to refuse demand "by a grossly negligent process").

Plaintiff fails to meet his burden. By making a demand, Plaintiff conceded that the Board is independent. *Id.* at *5. To his credit, he does not argue that the Board failed to act independently. Nor does he identify a single fact that suggests the Board engaged in a negligent process. In fact, he does not dispute that the Board engaged in a thorough investigation, that it retained independent advisors, that it reviewed relevant documents or that it followed anything other than a proper process designed to assist the Board in determining the best interests of the Company and its shareholders. The Complaint is devoid of any facts – particularized or otherwise – sufficient to meet his burden of showing that the Board wrongfully refused his demand.

Apparently recognizing his inability to challenge the Board's independence and process, Plaintiff focuses on the merits of the challenged stock option grants. He argues that, because the underlying equity awards were improper, the Board's refusal of his demand is not protected by the business judgment rule. But Delaware law is clear that the underlying transaction is irrelevant: "[o]nce a demand is made

… the challenge under Delaware law must be not to the underlying transaction, but to the board's decision not to bring the lawsuit." *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1328 (2d Cir. 1991). Plaintiff goes even further and claims that the Board had no power under Delaware law to refuse his demand because the underlying stock option awards were purportedly *ultra vires*. That argument lacks any legal support. Finally, Plaintiff also contends that the Board was wrong in concluding that the stock option awards in question were valid under the 2007 Equity Plan. However, Plaintiff's focus on the substance of the Board's response to his demand is misplaced. Delaware law is clear that only the Board's independence and process are relevant – the wisdom of its underlying decision is not. *See Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990) ("[W]hen a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation. Absent an abuse of discretion … the … directors' decision not to pursue the derivative claim will be respected by the courts.") (citation omitted).

### A. The Board's Response To Plaintiff's Demand Is Protected By The Business Judgment Rule.

Under well-settled Delaware law, a board is presumed to have acted appropriately in response to a shareholder's demand—*i.e.*, the decision to reject a shareholder's demand is protected by the business judgment rule. *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 73 (Del. 1997) *overruled on other grounds by Brehm v. Eisner*, 746 A. 2d 244 (Del. 2000). As Plaintiff concedes, to overcome the presumption, he is required to plead with particularity facts sufficient to question that the Board acted independently or with due care in responding to the demand. *Copeland*, 2012 WL 4845636, at *8. To show that the Board failed to act with due care, Plaintiff must plead particularized facts establishing that the board reached its decision "by a grossly negligent process that includes the failure to consider all material facts reasonably available." *Id.* at *8.

Plaintiff cannot meet this standard and does not even seriously argue that the

Complaint does so. Rather, he focuses on the underlying conduct, contending that the "board is not entitled to the protections of the business judgment rule" because the stock option awards violated the terms of the 2007 Equity Plan. (Opp. at 7-9.) But courts that have addressed the issue are unanimous that the merits of the underlying transaction are irrelevant to the question of whether the Board wrongfully refused a demand. For example, in *In re Boston Scientific Corporation Shareholders Litigation*, the plaintiff demanded that the board bring suit against its directors for causing the company to breach an agreement. 2007 WL 1696995, at *2 (S.D.N.Y. June 13, 2007). The board engaged independent counsel, conducted an investigation and then refused the demand. *Id*. at *3. Plaintiff argued that the board had wrongfully refused his demand "by attacking the substance of the Board's opinion" and "by re-asserting the merits of the lawsuit." *Id*. at *6. The court rejected this attempt to delve into the merits, reasoning that "the potential merits of the lawsuit itself are not at issue in the context of a motion to dismiss for failure to show wrongfulness of a demand refusal, and Plaintiffs' arguments cannot vitiate the business judgment rule in this case." *Id. See also In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 2013 WL 1777766, at *8 (S.D.N.Y. Apr. 25, 2013) (holding that complaint did not allege board's refusal of demand was wrongful where allegations "reflect plaintiff's subjective disagreement with the ultimate merits of the board's refusal of his demand" and "Delaware law does not permit a court [to] second-guess the substantive merits of a demand's refusal").

The cases cited by Plaintiff to purportedly endorse a peek at the merits stand for no such proposition. (*See* Opp. at 8.) Remarkably, not a single case cited in Plaintiff's 21-page brief actually addresses whether a board wrongfully refused a shareholder demand. Rather, in all of the cases cited by Plaintiff, the purported derivative claims were filed *without* a pre-litigation demand on the board (such cases are typically referred to as "demand futility" cases). *See Halpert v. Zhang*, 966 F. Supp. 2d 406, 412–13 (D. Del. 2013) (analyzing whether "demand on the

Board would have been futile and was therefore excused"); *Cal. Pub. Emps' Ret. Sys. v. Coulter*, 2002 Del. Ch. LEXIS 144, at *18 (Del. Ch. Dec. 18, 2002) (issue before court was whether plaintiff "allege[d] with particularity facts demonstrating that demand would be futile"); *Sanders v. Wang*, 1999 WL 1044880, at *4 (Del. Ch. Nov. 8, 1999) ("Here, plaintiffs did not make a demand on the [ ] board and have argued that making demand would be futile."). Where, as here, a demand was made on the Board, the focus of the inquiry is different:

> In a 'demand futility' case, the inquiry focuses upon whether the business judgment rule protects the directors' initial decision to approve the challenged transaction. In a 'demand refused' case such as this, the focus is upon whether the business judgment rule protects the board's later decision to reject a shareholder demand.

*Levine v. Smith*, 1989 WL 150784, at *6 (Del. Ch. May 21, 1990). Thus, the merits of the underlying stock option awards are simply irrelevant.

**B.     The Board Had Discretion To Reject Plaintiff's Demand.**

Plaintiff also argues that the Board had "no discretion to reject the demand" in the first place because the Company lacked the authority to grant the stock options. (Opp. at 13.) Plaintiff claims that the Board purportedly has no discretion to explore and determine what response would be in the best interests of the shareholders any time a demand alleges that the board committed an *ultra vires* act, essentially eradicating the demand requirement. This argument fails for a number of reasons.

First, and not surprisingly, Plaintiff cites no authority to support such a stark departure from well-established Delaware law. None of the cases relied upon by Plaintiff support his argument that the Board had no discretion to reject his demand. *Allen v. El Paso Pipeline GP Co.*, 90 A.3d 1097 (Del. Ch. 2014), had nothing to do with whether a shareholder demand on a board was wrongfully refused. Rather, the *Allen* court analyzed whether plaintiff's claims for breach of contract were direct or derivative in deciding a motion for class certification. *Id*. at 1111. Thus, *Allen*

offers no guidance here. Similarly, *Sanders, Halpert* and *Coulter* all involved shareholder derivative lawsuits filed *without* a pre-litigation demand on the board. These cases say nothing about the standard applied in a demand-refused case. Rather, they hold that a shareholder may rebut the presumption of business judgment by attacking the merit of the underlying equity awards, *for purposes of determining whether a pre-litigation demand is required*. That standard is simply not relevant here.[1]

It is unsurprising that no authority supports Plaintiff's position. A rule eliminating a board's ability to exercise its business judgment in responding to a demand would eviscerate the demand requirement and significantly shift the balance of corporate power from the board to shareholders. Upon receipt of a shareholder demand, a "board has an affirmative duty to evaluate the demand and to determine if the litigation demanded is in the best interest of the stockholders." *Rich v. Chong*, 66 A.3d 963, 976 (Del. Ch. 2013); *see also Ryan v. Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007) (a board must consider a demand and "determine whether pursuing the action is in the *best interest of the corporation*") (emphasis added). A board is not relieved of this obligation simply because a demand asserts that wrongdoing occurred. If that were enough to divest a board of its ability to

---

[1] Plaintiff's reliance on the hypothetical questioning during oral argument in *La. Mun. Police Emps. Ret. Sys., et al. v. Bergstein, et al.*, C.A. No. 7764-VCL (Del. Ch. Oct. 14, 2013), is also misplaced. (*See* Opp. at 13–14.) Like every other case cited by Plaintiff, *Bergstein* is not a demand-refused case and says nothing about the proper standard to apply here. Further, a court's spontaneous comments during oral argument are neither binding nor persuasive authority. *See Mgmt. Inv. Funding Ltd. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2000 WL 145461, at *5 n.6 (S.D.N.Y. Feb. 9, 2000), rev'd on other grounds by *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153 (2d Cir. 2000) (exchange during oral argument is neither "authoritative or controlling" because "[m]any judges use oral argument as an opportunity to play devil's advocate to focus the argument, or to test the extreme implications of a litigant's position"). Additionally, the *Bergstein* court never issued an opinion.

consider and respond to a demand, a single stockholder could "cause the corporation to expend money and resources in discovery and trial in the stockholder's quixotic pursuit of a purported corporate claim based solely on conclusions, opinions or speculation." *See Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000); *accord Sanders*, 1999 WL 1044880, at *4 ("If this Court had to entertain these lawsuits without a threshold barrier like the demand requirement, then the role of the board of directors as the shareholders' chosen arbiter of the corporation's interests, legal and otherwise, could be constantly frustrated."). This Court should resist Plaintiff's invitation to so fundamentally upset a central tenet of Delaware corporate law.

Second, having made a demand on the Board to request that it take action, Plaintiff concedes that the Board has the ability to impartially exercise its business judgment in response to the demand. "The effect of a demand is to place control of the derivative litigation in the hands of the board of directors." *Spiegel*, 571 A.2d at 775 (citation omitted). After giving the Board this control, Plaintiff cannot now argue that it had no ability to exercise its discretion. This is equivalent to making a demand while also arguing that demand was not required — a tactic that courts have soundly rejected. *See Copeland*, 2012 WL 4845636, at *5–6 (holding plaintiff waived his right to "challenge the directors' interest and independence with respect to the conduct underlying the Demands"); *see also Spiegel*, 571 A.2d at 775 ("A shareholder who makes a demand can no longer argue that demand is excused.").

The Board's decision to reject Plaintiff's demand is protected by the business judgment rule and Plaintiff has alleged nothing in the Complaint to overcome that presumption.

### C. Plaintiff's Disagreement With The Board's Conclusion That The Stock Option Awards Were Valid Does Not Establish Wrongful Refusal Of His Demand.

Plaintiff also argues that the Board wrongfully refused his demand based on an incorrect interpretation of the 2007 Equity Plan and flawed conclusion that the

stock option awards were valid. (Opp. at 9-11.) Delaware law is clear that the merits of the Board's decision are "*not* subject to judicial review." *Spiegel*, 571 A.2d at 778 (citation omitted); *Halpert Enters., Inc. v. Harrison*, 2008 WL 4585466, at *1 (2d Cir. Oct. 15, 2008) (citation omitted). Plaintiff entirely ignores the cases cited by Defendants holding that courts may not consider the substance of the board's decision in response to a demand. (*See* Mot. at 13-14 (*citing e.g., In re Bos. Scientific Corp. S'holders Litig.,* 2007 WL 1696995, at *6 (S.D.N.Y. June 13, 2007), *Knopf v. Semel*, 2010 WL 965308, at *8 (N.D. Cal. Mar. 17, 2010), *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007).)

Instead, Plaintiff insists that, because the stock option awards were purportedly invalid, the Board could not refuse his demand in good faith. (*See* Opp. at 9.) But this is not the law. A board may refuse a demand *even if* there was corporate wrongdoing:

> A board may in good faith refuse a shareholder demand to begin litigation even if there is substantial basis to conclude that the lawsuit would eventually be successful on the merits. It is within the bounds of business judgment to conclude that a lawsuit, even if legitimate, would be excessively costly to the corporation or harm its long-term strategic interests.

*In re infoUSA*, 953 A.2d at 986. Even if a board rejects a demand that correctly identifies wrongful conduct, it does not "follow that the Board's *evaluation*, *investigation*, and *rejection of the Demand* must have been undertaken in bad faith." *Knopf*, 2010 WL 965308, at *8 (holding that board's decision not to pursue claims against executive who admitted to wrongdoing was protected by business judgment rule). Plaintiff has not alleged that the Board acted in a procedurally deficient manner in considering his demand.

The Court need not consider Plaintiff's arguments regarding the validity of the stock option grants or the wisdom of the Board's determination, based on the advice it received, regarding the interpretation of the 2007 Plan. But even if it did,

and were to reach a different determination than did the Board, Plaintiff still fails to establish that the Board's response to his demand is not protected by the business judgment rule. Boards are not required to be infallible and the business judgment rule exists to insulate Board decisions made in good faith based on a reasonable process from second-guessing by the courts:

> Conspicuously absent from the business judgment rule's requirements is the need for corporate directors actually to make the 'correct' decision. So long as corporate fiduciaries act in the *procedurally* responsible manner outlined by the business judgment rule, the *substance* of their decisions is relevant only in exceptionally rare circumstances.

*Pfeiffer v. Leedle*, 2013 Del. Ch. LEXIS 272, at *15-16 (Del. Ch. Aug. 1, 2013).

In any event, although the merits of the determination are irrelevant, Plaintiff is in fact wrong about the Board's determination. Plaintiff claims that the Equity Plan Limit was "clear and unambiguous," and that the Board incorrectly concluded that stock options in excess of 1.5 million were valid. In particular, Plaintiff argues that "[n]othing in the Plan states or even implies that Section 3.3 [is] limited to those awards the Board intended to qualify as performance-based compensation under Section 162(m)." (Opp. at 9.) However, Plaintiff overlooks language in Section 3.3 that made the Equity Plan Limit effective on the same date that Section 162(m) became applicable to the Company. (Compl. Ex. C, Equity Plan at § 3.3) ("the foregoing limitation shall not apply until the earliest of … such other date required by Section 162(m) of the Code and the rules and regulations promulgated thereunder"). For equity awards to be deductible under Section 162(m), they must be granted pursuant to a shareholder-approved plan that contains an annual limit on the shares entitled to such preferential treatment. *See* 26 C.F.R. §1.162-27(e)(2)(vi)(A), (e)(4)(i). Thus, the Board's interpretation that the Equity Plan Limit did not act as an absolute cap on awards makes perfect sense because the only purpose of the limitation was to enable the Company to take advantage of the

preferential tax treatment for performance-based compensation under Section 162(m).

Furthermore, after investigating Plaintiff's allegations, the Board amended the Equity Plan Limit in Section 3.3 to make it clear that there is no absolute cap on stock options. Thus, it is now unambiguous that the Compensation Committee may award stock options in excess of that limit as long as the Company does not seek to deduct them as compensation under Section 162(m). Plaintiff challenges the authority of the Board to amend the 2007 Plan in this manner without first seeking shareholder approval. (*See* Opp. at 15.) However, he completely ignores that the shareholders, in approving the Equity Plan, expressly authorized the Board (or Compensation Committee as its designee) to interpret and amend the plan. (Compl. Ex. C, Equity Plan at § 15.1.) Indeed, stockholder approval is necessary *only* in certain enumerated circumstances (that do not apply here) or "where required by law, regulation or stock exchange rule." *Id.* Plaintiff identifies no such law, regulation or rule requiring shareholder approval of the 2013 Amendment. And no such law, regulation or stock exchange rule exists. Indeed, NASDAQ listing rules expressly allow a board to amend equity plan sub-limits, such as the Equity Plan Limit, without shareholder approval. (*See* Dec. of Jessica Valenzuela Santamaria, Ex. G at 135. (NASDAQ Listing Rule 5635(c); NASDAQ Listing Rule IM-5635-1).) Accordingly, the Board was authorized to make the 2013 Amendment without shareholder approval.

The 2013 Amendment, which applied retroactively to June 2011, effectively cleansed any purported defect in the stock option grants. *See e.g., Kalageorgi v. Victor Kamkin, Inc.*, 750 A.2d 531, 539 (Del. Ch. 1999) (Delaware corporation had authority to retroactively cure a defect seven years after issuance of stock). Plaintiff challenges the retroactivity of the 2013 Amendment on the grounds that the board did not have *de jure* authority to *issue* the stock option awards. But he does not challenge the Board's authority to *make the amendment retroactive*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

CASE NO. 13CV2959 JAH NLS
REPLY ISO MOTION TO DISMISS

1 Because the 2013 Amendment clarified that the Equity Plan Limit was not an absolute cap, and because it was made effective as of June 2011, the stock option awards issued in June 2011 did not exceed the Board's authority under the plan.[2]

In summary, Plaintiff has failed to allege particularized facts establishing that the Board engaged in an inadequate process or otherwise acted improperly when responding to his demand. This failure is fatal to Plaintiff's claims. Plaintiff's arguments, which improperly focus on the merits of his underlying claims, are irrelevant and rely on inapposite case law. And, even if the Court considers Plaintiffs' arguments regarding the validity of the stock options, Plaintiff still cannot meet his burden. Accordingly, Plaintiff has failed to establish that the Board wrongfully refused his demand and the Complaint should be dismissed.

### III. PLAINTIFF'S CLAIMS ARE MOOT

Plaintiff's entire argument as to why his claims are not moot assumes that the Board lacked the authority to retroactively amend the 2007 Equity Plan without shareholder approval. However, as discussed above, Plaintiff fails to articulate any legal or factual support for such a proposition. Thus, his claims are moot.

### IV. PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT OR WASTE

Plaintiff contends that the Complaint states a claim for breach of fiduciary

---

[2] Plaintiff cites *Steinhardt v. Howard-Anderson*, 2012 Del. Ch. LEXIS 1, at *30 (Del. Ch. Jan. 6, 2012), and *Zen Investments, LLC v. Unbreakable Lock Co.*, 276 F. App'x 200, 202 (3rd. Cir. 2008), for the proposition that "fiduciaries do not have a license to expunge a breach of fiduciary as if it never happened simply by attempting to 'undo' the breach." (Opp. at 15-16). However, neither case addresses the question that is at issue here – whether Orexigen's Board was authorized to amend Section 3.3 without first seeking shareholder approval. *See Steinhardt,* 2012 Del. Ch. Lexis at *8 (addressing whether class representative who traded on information obtained during discovery could step down and moot his violations); *Zen Invs.*, 276 F. App'x at 201 (addressing whether reinstating shares mooted breach of duty caused by cancellation of shares when plaintiffs sought compensatory damages based on delay in having their shares recognized, as well as punitive damages). As such, these cases offer no guidance here.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

CASE NO. 13CV2959 JAH NLS
REPLY ISO MOTION TO DISMISS

duty simply because he purportedly demonstrates wrongful refusal under Rule 23.1: "Where, as here, a plaintiff pleads particularized facts sufficient to satisfy the requirements of Rule 23.1 'that plaintiff *a fortiori* rebuts the business judgment rule for the purposes of surviving a motion to dismiss pursuant to Rule 12(b)(6).'" (Opp. at 18.) He then relies on the breach of fiduciary claim to support the viability of the waste and unjust enrichment claims. (*Id.* at 20 ("The existence of an unjust enrichment claim follows logically from a properly pled breach of fiduciary duty claim."); *id*. at 21 ("Having sufficiently pleaded that the Board exceeded its authority under the Plan . . . Plaintiff has also pleaded that these grants . . . constituted waste.").) The flaw in this argument, however, is that Plaintiff *does not* plead sufficient facts to establish that the Board wrongfully refused his demand, as set forth above.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion and dismiss Plaintiff's claims with prejudice.

| | | |
|---|---|---|
| Dated: September 12, 2014 | | COOLEY LLP<br>JOHN C. DWYER (136533)<br>JESSICA VALENZUELA SANTAMARIA (220934)<br><br>By: */s/Jessica Valenzuela Santamaria*<br>　　　Jessica Valenzuela Santamaria (220934)<br><br>Attorneys for Defendants Michael A. Narachi, Heather D. Turner, Joseph P. Hagan and nominal defendant Orexigen Therapeutics, Inc.<br><br>DAVIS POLK & WARDWELL LLP<br>NEAL A. POTISCHMAN (254862)<br>ALYSE L. KATZ (274856)<br><br>By: */s/Neal A. Potischman*<br>　　　Neal A. Potischman (254862)<br><br>Attorneys for Defendants Eckard Weber, Louis C. Bock, Brian H. Dovey, Patrick Mahaffy, Peter K. Honig, Wendy Dixon, Joseph S. Lacob, Michael F. Powell, and Daniel K. Turner III |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

CASE NO. 13CV2959 JAH NLS
REPLY ISO MOTION TO DISMISS