DOYLE LOWTHER LLP
WILLIAM J. DOYLE II (SBN 188069)
bill@doylelowther.com
JAMES R. HAIL (SBN 202439)
jim@doylelowther.com
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
Telephone: (858) 935-9960

Eduard Korsinsky
Steven J. Purcell (admitted *pro hac vice*)
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-6510

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YACOV TURGEMAN, derivatively on behalf of OREXIGEN THERAPEUTICS, INC., and Individually on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL A. NARACHI, JOSEPH P. HAGAN, HEATHER D. TURNER, ECKARD WEBER, LOUIS C. BOCK, BRIAN H. DOVEY, PATRICK MAHAFFY, PETER K. HONIG, WENDY DIXON, JOSEPH S. LACOB, MICHAEL F. POWELL, and DANIEL K. TURNER III,<br><br>Defendants,<br><br>-and-<br><br>OREXIGEN THERAPEUTICS, INC,<br><br>Nominal Defendant. | Case No. 13CV2959 JAH MDD<br><br>CLASS ACTION<br><br>**VERIFIED SHAREHOLDER FIRST AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Yacov Turgeman ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this action for breach of fiduciary duties, waste of corporate assets, and unjust enrichment derivatively on behalf of Orexigen Therapeutics, Inc. ("Orexigen" or the "Company") against certain current and former members of the Company's Board of Directors (the "Board") for exceeding its authority under the Company's shareholder-approved Orexigen Therapeutics, Inc. 2007 Equity Incentive Award Plan (the "Incentive Plan").

2. The Incentive Plan provides for the granting of various equity awards, including stock options, to the Company's employees, directors and consultants. It limits the number of shares that a participating individual may be awarded during a fiscal year to 1,500,000.

3. As described in more detail below, the Board, through its Compensation Committee, made the following awards under the Incentive Plan during the 2011 fiscal year: (a) 4,318,950 stock options to Michael A. Narachi ("Narachi"), the Company's President and Chief Executive Officer; (b) 1,509,000 stock options to Joseph P. Hagan ("Hagan"), the Company's Chief Business Officer; and (c) 1,650,396 stock options to Heather D. Turner ("Turner"), the Company's Senior Vice President, General Counsel Secretary. Each of these awards exceeds the Incentive Plan's 1,500,000 share cap. In granting and/or permitting the awards to Narachi, Hagan, and Turner (collectively, the "Recipients"), the Board breached its fiduciary duty of loyalty.

4. As a result of the above misconduct, the Company and its shareholders have been harmed.

5. The excess awards granted to Narachi, Hagan and Turner are *ultra vires* and should be rescinded.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff is a resident of Israel and no Defendants are residents of Israel.

7. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8. Venue is proper in this district because nominal defendant Orexigen is headquartered in this district.

## THE PARTIES

9. Plaintiff Yacov Turgeman is and has been a shareholder of Orexigen since February 2011. Plaintiff Turgeman is a citizen of Israel.

10. Nominal party Orexigen Therapeutics, Inc. is a Delaware corporation with its principal place of business at 3344 N. Torrey Pines Ct., Suite 200, La Jolla, California. Orexigen is a biopharmaceutical company focused on the development of pharmaceutical products for the treatment of obesity. The Company is listed on the NASDAQ Exchange.

11. Defendant Narachi has been the Chief Executive Officer, President and a director of the Company since March 2009. Narachi is a resident of California.

12. Defendant Eckard Weber, M.D. ("Weber") has been a director of the Company since September 2002 and has served as the Chairman of the Board since

March 2004. From November 2008 to March 2009, Weber served as the Company's interim President and Chief Executive Officer. Weber is a resident of California.

13. Defendant Louis C. Bock ("Bock") has been a director of the Company since April 2005. Bock is a resident of California.

14. Defendant Wendy Dixon, Ph.D. ("Dixon") has been a director of the Company since April 2010. Dixon served as a member of the Board's Compensation Committee during the 2011 fiscal year. Dixon is a resident of Massachusetts.

15. Defendant Brian H. Dovey ("Dovey") has been a director of the Company since January 2004. Dovey served as Chairman of the Board's Compensation Committee during the 2011 fiscal year. Dovey is a resident of New Jersey.

16. Defendant Patrick J. Mahaffy ("Mahaffy") has been a director of the Company since February 2009. Mahaffy served as a member of the Board's Compensation Committee during the 2011 fiscal year. Mahaffy is a resident of Colorado.

17. Defendant Peter K. Honig, M.D., M.P.H., ("Honig") has been a director of the Company since February 2010. Honig is a resident of Pennsylvania.

18. Defendant Joseph S. Lacob ("Lacob") served as a director of the Company from January 2004 until April 2012. Lacob is a resident of California.

19. Defendant Michael F. Powell ("Powell") served as a director of the Company from January 2004 until April 2012. Powell is a resident of California.

20. Defendant Daniel K. Turner III ("Turner III") served as a director of the Company from April 2005 until April 2012. Turner III served on the Board's Compensation Committee during the 2011 fiscal year. Turner III is a resident of California.

21. Defendant Hagan has been Chief Business Officer of the Company since June 2011 and the Company's acting-Chief Financial Officer since March 2011. From May 2009 to June 2011 Hagan served as the Company's Senior Vice President of Corporate Development, Strategy and Communications. Hagan is a resident of California.

22. Defendant Turner has been Senior Vice President, General Counsel and Secretary of the Company since May 2010. From June 2007 to May 2010, Turner served as the Company's Vice President, General Counsel and Secretary. Turner is a resident of California. (The defendants in ¶¶ 11-22 are collectively referred to herein as the "Individual Defendants")

23. Defendants Narachi, Weber, Bock, Dixon, Dovey, Mahaffy, Honig, Lacob, Powell, and Turner III are hereinafter collectively referred to as the "Director Defendants." The Director Defendants comprised the Company's Board of Directors at the time the awards challenged herein were granted.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *The Incentive Plan*

24. In 2007, the Incentive Plan was adopted by Orexigen's Board and approved by the Company's shareholders. The Incentive Plan is a contract between the Board and Orexigen's shareholders pursuant to which the Board, through its Compensation Committee, is authorized to grant various stock options, restricted stock, stock appreciation rights, restricted stock units and other stock-based awards to the Company's employees, directors and consultants.

25. The Board amended the Incentive Plan on April 13, 2011. By an unanimous vote, the Board approved certain changes—none of which impacted the Company's 1,500,000 shares per award limit. For example, the Board raised the cap on the number of shares of common stock it was authorized to award in the aggregate

in a fiscal year to 10,000,000. The Company's shareholders approved the amendments at the 2011 annual meeting in June of that year.

26. The Incentive Plan provides in clear and unambiguous language that the maximum number of shares that the Board may grant to an individual in any given fiscal year is 1,500,000.

27. Specifically, Section 3.3 of the Incentive Plan states:

> Notwithstanding any provision in the Plan to the contrary, and subject to Article 11, the maximum number of shares of Stock with respect to one or more Awards that may be granted to any one Participant during any fiscal year of the Company (measured from the date of any grant) shall be 1,500,000*;* provided, however*,* that the foregoing limitation shall not apply to Inducement Awards or prior to the Public Trading Date and, following the Public Trading Date, the foregoing limitation shall not apply until the earliest of: (a) the first material modification of the Plan (including any increase in the number of shares of Stock reserved for issuance under the Plan in accordance with Section 3.1); (b) the issuance of all of the shares of Stock reserved for issuance under the Plan; (c) the expiration of the Plan; (d) the first meeting of stockholders at which members of the Board are to be elected that occurs after the close of the third calendar year following the calendar year in which occurred the first registration of an equity security of the Company under Section 12 of the Exchange Act; or (e) such other date required by Section 162(m) of the Code and the rules and regulations promulgated thereunder.

28. In Orexigen's definitive proxy statement filed with the U.S. Securities and Exchange Commission ("SEC") in advance of the Company's June 2011 annual meeting (the "2011 Proxy"), the Board expressly described the 1,500,000 share limit as a "reasonable limit" and an "important aspect" of the Incentive Plan. Specifically, the Board stated:

> **Important Aspects of the [Incentive] Plan Designed to Protect our Stockholders' Interests**
>
> * * *

> *Reasonable limit on equity awards.* The [Incentive] Plan limits the number of shares of common stock available for equity awards such that no employee may be granted an equity award covering more than to 1,500,000 shares in a fiscal year.

29. The Board, through its Compensation Committee, made three separate grants pursuant to the Incentive Plan to Narachi in 2011. First, it granted Narachi 258,150 shares on January 18, 2011. Second, it granted Narachi another 1,800,000 stock options on June 10, 2011. Third, it granted Narachi 2,260,800 options through an exchange offer, pursuant to which Company employees could exchange underwater stock options, *i.e.*, stock options that have an exercise price that is greater than the market price of the underlying stock, for a new grant of stock options ("Exchange Offer"). In total, the Board granted Narachi 4,318,950 shares for the 2011 fiscal year, 2,818,950 shares in excess of the 1,500,000 fiscal year limit.

30. Similarly, the Board, through its Compensation Committee, made three grants pursuant to the Incentive Plan to both Hagan and Turner. First, it granted Hagan and Turner 107,000 stock options each on January 18, 2011. Second, the Board granted Hagan and Turner 450,000 stock options each on June 10, 2011. Third, pursuant to the Exchange Offer, Hagan exchanged 952,000 stock options and Turner exchanged 1,093,396 stock options. In total, the Board granted Hagan 1,509,000 shares for the 2011 fiscal year and Turner 1,650,396 shares. Hagan's award exceed the Incentive Plan's limit by 9,000 shares and Turner's award by 150,396 shares.

31. By granting and/or permitting the grants of stock awards to Narachi, Hagan and Turner in excess of the Incentive Plan's fiscal-year limit, the Board plainly exceeded its authority under the Incentive Plan and breached its fiduciary duties. The Board had no authority or business judgment discretion to exceed the limitations set forth in the Incentive Plan as approved by shareholders.

32. Consequently, the excess stock options granted to Narachi, Hagan, and Turner are *ultra vires* and should be rescinded.

***The Company Has Been and Will Be Harmed As a Result of the Unauthorized Awards***

33. The Director Defendants improperly transferred stock options to the Recipients in excess of the shareholder-approved limit. This intentional violation of the Incentive Plan is a breach of contract and a breach of the Director Defendants' fiduciary duties. And it has wrongfully enriched the Recipients at Orexigen's expense.

34. In addition, as a Delaware corporation and a NASDAQ-listed company, Orexigen is subject to corporate governance rules and regulations concerning the internal controls it has over its issuance of stock-based compensation. Orexigen's failure to comply with such rules and regulations subjects Orexigen to a risk of various economic and non-economic harms, including regulatory penalties and NASDAQ de-listing.

35. The violation of the Incentive Plan described above demonstrates material weaknesses in the Company's internal controls. Those weaknesses must be remedied in order to ensure that Orexigen complies with applicable laws, rules and regulations, and that the Company and its shareholders are not further harmed by the wrongdoing described herein.

## DEMAND WAS WRONGFULLY REFUSED

36. Plaintiff brings this action derivatively on behalf of Orexigen to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.

37. On May 22, 2013, Plaintiff made a written demand on the Board (the "Demand"). Plaintiff demanded the Board: (a) "[r]escind the excess awards granted

to [the Recipients] in 2011 and seek any other appropriate relief on behalf of the Company for damages sustained as a result of the Board's misconduct;" (b) "[i]nvestigate whether there are additional violations of the Incentive Plan's 1,500,000 share annual limit with respect to any other officers and/or any other years other than as described in [the Complaint], and if so, take appropriate action;" and (c) "[a]dopt and implement adequate internal controls and systems at the Company designed to prohibit and prevent a recurrence of the wrongdoing described herein." The Demand fully described all of the issues that form the basis of this derivative action. *See* Exhibit. A.

38. On September 26, 2013, John C. Dwyer, Esq. of Cooley LLP replied on behalf of the Board via electronic mail and directed Plaintiff to a Form 8-K that had been filed by the Company on September 23, 2013 (the "8-K"), which described the actions taken by the Board in refusing the Demand. *See* Exhibit B.

39. As described in the 8-K, following receipt of the Demand, the Board formed a Demand Review Committee (the "Review Committee") consisting of purportedly independent directors to conduct an investigation of the allegations made in the Demand. Following this investigation, the Review Committee determined that the excess awards identified by Plaintiff were "validly approved under the Plan."

40. As will be described below, the investigation and subsequent refusal of the Demand was unreasonable and not done in good faith. The 8-K does not articulate any legitimate basis for the Review Committee's contention that the Board acted properly in granting the awards challenged herein

41. In the 8-K, the Review Committee took the position that the awards were proper because the 1,500,000 share limit "only applie[d] to awards or the portion thereof intended to qualify as performance-based compensation under Section 162(m) of the Internal Revenue Code."

42. This interpretation finds no basis in the Incentive Plan's express language. As provided above, Section 3.3 of the Incentive Plan states, simply and categorically, that "the maximum number of shares of Stock with respect to one or more Awards that may be granted to any one Participant during any fiscal year of the Company (measured from the date of any grant) shall be 1,500,000." *See* Exhibit C. Nowhere in the Incentive Plan does it limit Section 3.3 to those awards that the Board "intended to qualify as performance-based compensation under Section 162(m)." Accordingly, the Review Committee's interpretation ignores the Incentive Plan's clear and unambiguous language and is therefore improper.

43. The Review Committee's interpretation cannot be reconciled with the fact that the Board itself has interpreted the 1.5 million share limit in Section 3.3 to apply to *all* awards, not just those awards intended to qualify as performance-based compensation under Section 162(m). When it sought shareholder approval for the amendments to the Incentive Plan in June 2011, the Board described the 1.5 million limit in the 2011 Proxy as follows:

> **Important Aspects of the [Incentive] Plan Designed to Protect our Stockholders' Interests**
>
> * * *
>
> *Reasonable limit on equity awards.* The [Incentive] Plan limits the number of shares of common stock available for equity awards such that no employee may be granted an equity award covering more than to 1,500,000 shares in a fiscal year.

44. In investigating Plaintiff's Demand, the Review Committee failed to ascertain or consider, or arbitrarily ignored, the Board's prior disclosures to shareholders concerning the Section 3.3 share limit. An investigation that ignores the plain language of the Incentive Plan and disregards the Board's representations to shareholders is not a reasonable, good faith investigation.

45. Moreover, as stated in the 8-K, on September 22, 2013, in response to the Demand, the Compensation Committee, with the Board's approval, amended the Incentive Plan. The amended version of Section 3.3 now states that "the maximum number of shares of Stock with respect to one or more Awards that may be granted to any one Participant ***as Qualified Performance-Based Compensation*** during any fiscal year of the Company (measured from the date of any grant) shall be 1,500,000." (emphasis added). At the end of Section 3.3, the Board added: "For the avoidance of doubt, (i) the Compensation Committee may grant Awards in excess of the foregoing limitation, but the portion of any Award granted in excess of such limitation shall not be treated as Qualified Performance-Based Compensation, and (ii) unless otherwise specified by the Compensation Committee, the portion of any Award that could otherwise qualify as Qualified Performance-Based Compensation (without regard to such limit) will be treated as being subject to such limit (up to the limit) in the order granted, and the portion of any Award granted in excess of such limit shall be treated as not being Qualified Performance-Based Compensation." In the 8-K, the Company explained that the new language was added to Section 3.3 "to clarify that the 1,500,000 share limit set forth in Section 3.3 of the Plan . . . only applies to awards or the portion thereof intended to qualify as performance-based compensation under Section 162(m) of the Internal Revenue Code."

46. That the Board determined that it needed to amend the express terms of Section 3.3 in order to be consistent with the Review Committee's interpretation necessarily demonstrates that the Review Committee's interpretation was not based on the Incentive Plan's terms as they actually existed at the time the Recipients were granted their awards.

47. Moreover, even going by the Review Committee's interpretation—that the 1.5 million share limit "only applies to awards or the portion thereof intended to

qualify as performance-based compensation under Section 162(m) of the Internal Revenue Code"—the Board violated the Incentive Plan. On April 27, 2012, the Company filed a Schedule 14A Proxy Statement in connection with its 2012 annual meeting of shareholders (the "2012 Proxy"). As required by the SEC, the 2012 Proxy discussed the compensation received by the Company's executive officers during the 2011 fiscal year, which included the stock option awards to the Recipients challenged herein. The 2012 Proxy provided that all stock options granted under the Plan with an exercise price equal to the fair market value of the option shares on the grant date, which included the stock option grants to the Recipients, "qualify as performance-based compensation" under Section 162(m). Specifically, the 2012 Proxy stated:

> Section 162(m) of the Code, generally disallows a tax deduction to public companies for compensation in excess of $1 million paid to certain of our executive officers. Qualifying performance-based compensation will not be subject to the deduction limitation if certain requirements are met.
>
> With the exception of compensation paid to Mr. Narachi, the non-performance based compensation paid in cash to our executive officers in 2010 did not exceed the $1 million limit per officer. In addition, our 2007 equity incentive award plan has been structured so that any compensation paid in connection with the exercise of option grants under that plan with an exercise price equal to the fair market value of the option shares on the grant date will qualify as performance-based compensation. Therefore, it will not be subject to the $1 million deduction limitation.

Accordingly, even under the Review Committee's strained (and incorrect) interpretation, the stock option awards challenged herein count toward the 1.5 million share limit.

48. In the 8-K, the Review Committee also stated the position that the awards granted between January 1, 2011 to June 1, 2011 did not count toward the 1.5

million share limit because the 1.5 million share limit first became effective on June 2, 2011. This assertion is also contrary to the express language in the Incentive Plan. As Section 3.3 states, the 1.5 million share limit is a "fiscal year" limit and in determining whether the limit was exceeded, the Compensation Committee is required to count the number of shares that have been granted to a participant during that fiscal year "measured from the date of any grant." Accordingly, in determining whether the 1.5 million share was being exceeded when the Compensation Committee made grants on June 2, 2011 and thereafter, the Compensation Committee was required to count how many shares were granted during the *entire* 2011 fiscal year.

49. Because the demand has been wrongfully refused, Plaintiff has properly initiated this derivative action.

50. Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting the Company's rights.

51. Plaintiff is an owner of Orexigen stock and owned Orexigen stock during all times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

**CLASS ACTION ALLEGATIONS**

52. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of owners of Orexigen common stock as of April 9, 2013, the record date for the determination of shareholders entitled to vote at the 2013 Annual Meeting (the "Class"). Excluded from the class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

53. This action is properly maintainable as a class action.

54. The class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of April 9, 2013, 92,641,567 shares of common stock were represented by the Company as outstanding. All members of the Class may be identified from records maintained by Orexigen or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice customarily used in securities class actions.

55. Questions of law and fact are common to the Class, including *inter alia*, the following:

(a) Whether Defendants breached the Incentive Plan by approving and/or by abdication of duty not cancelling awards made in violation of the Incentive Plan;

(b) Whether Plaintiff and the other members of the Class were harmed by Defendants' violation of the Incentive Plan; and

(c) Whether the Class is entitled to damages or other relief as a result of Defendants' wrongful conduct.

56. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

57. Plaintiff is committed to prosecuting this action, will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

58. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members

of the Class. It might also establish incompatible standards of conduct for the Defendants.

59. Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

60. A class action is a superior method for adjudication because the cost of prosecuting individual actions is prohibitive and the expense of adjudicating repetitious individual claims in different courts would be an inefficient use of judicial resources.

61. Concentrating the litigation of claims in this forum is desirable because the Company's principal place of business is in California.

62. Defendants have acted on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

63. There are no issues requiring individualized resolution or the creation of sub-classes, thus class-wide adjudication will not present manageability concerns.

**COUNT I**
**Breach of Fiduciary Duty**
**(Against the Individual Defendants)**

64. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65. As officers and/or directors of the Company, each of the Individual Defendants owed the Company and its shareholders the fiduciary obligations of loyalty, candor, and due care.

66. In authorizing, approving and/or by abdication of duty permitting the grants of awards in violation of the terms of the Incentive Plan, the Individual Defendants knowingly exceeded their authority under the Incentive Plan and did not

act in good faith toward the Company, and thus breached their fiduciary duty of loyalty under Delaware law.

67. These actions were not a good faith exercise of business judgment to protect and promote the Company's corporate interests, but rather lined the pockets of the Recipients at the expense and to the detriment of the Company.

68. The Recipients breached their fiduciary duties to the Company by accepting grants in violation of the Incentive Plan for their own personal benefit at the expense and to the detriment of the Company. Accordingly, the Recipients breached their fiduciary duty of loyalty.

69. As a result of Defendants' actions, the Company has been and will be damaged.

70. Plaintiff and the Company have no adequate remedy at law.

**COUNT II**
**Waste of Corporate Assets**
**(Against the Director Defendants)**

71. Plaintiff repeats each and every allegation set forth above as if fully set forth herein.

72. By granting the Recipients awards in excess of what was authorized under the Incentive Plan, the Director Defendants have caused and will cause the Company to waste valuable corporate assets.

73. By granting the Recipients awards in excess of the amount allowed under the Incentive Plan, the Director Defendants granted the Recipients awards that no director of ordinary sound business judgment would award, so as to constitute waste.

74. As a result of this waste of corporate assets, the Director Defendants are liable to the Company.

75. Plaintiff has no adequate remedy at law.

**COUNT III**
**Unjust Enrichment**
**(Against the Recipients)**

76. Plaintiff repeats each and every allegation set forth above as if fully set forth herein.

77. The Recipients received unauthorized personal financial benefits as a result of the awards challenged herein.

78. It would be unconscionable and against fundamental principles of justice, equity, and good conscience for the Recipients to retain the benefits of the awards that were granted in express violation of the Incentive Plan.

79. The Recipients have been unjustly enriched at the expense and to the detriment of the Company.

80. Accordingly, this Court should order the Recipients to disgorge the stock options awarded in excess of the applicable annual limit in the Incentive Plan.

81. Plaintiff has no adequate remedy at law.

**COUNT IV**
**Breach of Contract**
**(Direct Claim Against the Director Defendants)**

82. Plaintiff repeats each and every allegation set forth above as if fully set forth herein.

83. The Incentive Plan, a shareholder-approved compensation plan, is a contract between the Company's shareholders and the Director Defendants.

84. In granting shares to Narachi, Hagan, and Turner that were in excess of the 1,500,000 fiscal year limit in 2011, the Director Defendants definitively violated an express condition of the Plan and breached their promise to abide by the terms of this contract.

85. The Director Defendants thus breached their obligations to Plaintiff under the Incentive Plan. As a result of this breach of contract, the Company and its shareholders have been and will be harmed.

86. As a result of the Director Defendants' breach of contract, Plaintiff and the Class have been harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. A declaration that the stock options granted to the Recipients in 2011 in excess of the applicable annual limit was *ultra vires* and not authorized by the Incentive Plan;

B. Rescission of the excess stock options granted to Narachi, Hagan, and Turner;

C. As to Count IV, declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

D. Against the Director Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violation of the Incentive Plan, plus pre-judgment and post-judgment interest;

E. Equitable and/or injunctive relief as necessary or permitted by law and equity, including disgorgement, attachment, impoundment, and/or imposition of a constructive trust on or otherwise restricting the disposition/exercise of the challenged grants discussed herein;

F. Prohibiting Orexigen and the Board from making any further awards under the Incentive Plan until the Company's internal controls and procedures have been improved and reformed to ensure that future awards comply with the Incentive Plan, applicable law and Orexigen policies;

G. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts and accountants; and

H. Granting Plaintiff such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: April 8, 2015

Respectfully submitted,

/s/ *James R. Hail*
James R. Hail

DOYLE LOWTHER LLP
William J. Doyle II
10200 Willow Creek Road, Suite 150
San Diego, CA 92131
Tel: (858) 935-9960
Fax: (858) 939-1939
email: bill@doylelowther.com
jim@doylelowther.com

LEVI & KORSINSKY, LLP
Eduard Korsinsky
Steven J. Purcell (admitted *pro hac vice*)
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff*

**VERIFICATION**

I, Yacov Turgeman, under penalties of perjury, hereby do declare that I am a plaintiff in the foregoing complaint, that I have read the complaint, and that the facts therein are true to my own knowledge, except to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information, and belief.

Dated: April 5, 2015

Yacov Turgeman