1   COOLEY LLP
    JOHN C. DWYER (136533)
2   (dwyerjc@cooley.com)
    JESSICA VALENZUELA SANTAMARIA (220934)
3   (jsantamaria@cooley.com)
    JEFFREY D. LOMBARD (285371)
4   (jlombard@cooley.com)
    3175 Hanover Street
5   Palo Alto, CA 94304
    Telephone:   (650) 843-5000
6   Facsimile:    (650) 849-7400

7   *Attorneys for Defendants Michael A. Narachi,*
    *Heather D. Turner, Joseph P. Hagan, and Nominal*
8   *Defendant Orexigen Therapeutics, Inc.*

9   *[Additional counsel on signature page]*

10

11                  UNITED STATES DISTRICT COURT

12              SOUTHERN DISTRICT OF CALIFORNIA

13   YACOV TURGEMAN, derivatively          Case No.  13CV2959 JAH MDD
     on behalf of OREXIGEN
14   THERAPEUTICS, INC.,
                                           **DEFENDANTS' MEMORANDUM OF**
15                  Plaintiff,             **POINTS AND AUTHORITIES IN**
                                           **SUPPORT OF MOTION TO DISMISS**
16          v.                             **PLAINTIFF'S VERIFIED SHAREHOLDER**
                                           **FIRST AMENDED DERIVATIVE AND**
17   MICHAEL A. NARACHI, JOSEPH            **CLASS ACTION COMPLAINT**
     P. HAGAN, HEATHER D.
18   TURNER, ECKARD WEBER,                 Date:       July 27, 2105
     LOUIS C. BOCK, BRIAN H.               Time:       2:30 PM
19   DOVEY, PATRICK MAHAFFY,               Dept.:      13B
     PETER K. HONIG, WENDY                 Judge:      John A. Houston
20   DIXON, JOSEPH S. LACOB,
     MICHAEL F. POWELL, and
21   DANIEL K. TURNER III,

22                  Defendants.

23          and

24   OREXIGEN THERAPEUTICS, INC.

25                  Nominal Defendant.

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

# Table of Contents

**Page**

I.     INTRODUCTION ...............................................................................1

II.    STATEMENT OF FACTS ...................................................................3

    A.   Orexigen and Its Equity Plan. ...................................................3

    B.   The Option Grants Challenged By Plaintiff. .............................4

    C.   The Board's Consideration of Plaintiff's Demand Letter..........6

    D.   The Court Dismisses Plaintiff's Original Complaint..................8

    E.   Plaintiff Files The Amended Complaint. ...................................9

III.   ARGUMENT ....................................................................................10

    A.   The Amended Complaint Should Be Dismissed As Plaintiff Fails To Allege That The Board Wrongfully Refused His Demand .....................................................................................10

        1.   Counts I through III should be dismissed because Plaintiff has not cured the deficiencies in his Original Complaint........12

        2.   Plaintiff's purported direct claim for breach of contract (Count IV) should be dismissed for the same reasons as Counts I, II and III. .................................................................14

            a.   Tooley applies to determine whether a claim is direct or derivative.................................................14

            b.   Under Tooley, the breach of contract claim is derivative because the company suffered the alleged harm and would get the benefit of any recovery. ......................................................15

    B.   Counts I-IV Fail For Additional, Independent Reasons .........19

        1.   Plaintiff fails to allege a viable breach of contract claim in Count IV. ...........................................................................19

            a.   The Equity Plan is not a contract. ...................19

            b.   Plaintiff's breach of contract claim is barred by the statute of limitations. ......................................22

        2.   Plaintiff also fails to state a claim for breach of fiduciary duty (Count I), waste (Count II) and unjust enrichment (Count III)..........................................................................23

        3.   Plaintiff's claims are moot...................................................24

IV.    CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984)...................................................................................10

*Bader v. Anderson*,
179 Cal. App. 4th 775 (2009)......................................................................16, 17

*Barnes v. Healy*,
980 F.2d 572 (9th Cir. 1992)......................................................................24, 25

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000).................................................................................11

*Bromwich v. Hanby*,
2010 WL 8250796 (Del. Super. Ct. July 1, 2010) ............................................20

*Cnty. of Los Angeles v. Davis*,
440 U.S. 625 (1979) ........................................................................................24

*Copeland v. Lane*,
2012 WL 4845636 (N.D. Cal. Oct. 10, 2012).......................................10, 11, 12

*Feldman v. Cutaia*,
951 A.2d 727 (Del. 2008)........................................................................16, 17, 18

*Fooks v. Delaware Health and Social Services*,
1999 WL 743916 (Del. Super. Ct. Sept. 14, 1999)...........................................22

*Gressman v. Brown*,
No. 9896-VCG (Del. Ch. Jul. 17, 2014).............................................................18

*Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*,
583 A.2d 1378 (Del. Super. Ct. 1990)...............................................................20

*Halpert Enters., Inc. v. Harrison*,
2008 WL 4585466 (2d Cir. Oct. 15, 2008) .......................................................13

*Hampshire Grp., Ltd. v. Kuttner*,
2010 WL 2739995 (Del. Ch. July 12, 2010)......................................................24

ii.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**Case No. 13CV2959 JAH NLS**
**MP&A MOTION TO DISMISS AM. COMPL.**

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3
4

*Ins. Co. of N. Am. v. NVF Co.*,
   2000 WL 305338 (Del. Super. Ct. Jan. 20, 2000)................................22

5
6

*Kalageorgi v. Victor Kamkin, Inc.*,
   750 A.2d 531 (Del. Ch. 1999) .............................................................25

7
8

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ...............................................................................10

9
10

*Kaufman v. Alexander*,
   2014 WL 1623824 (D. Del. Apr. 23, 2014) .........................................21

11

*Knopf v. Semel*,
   2010 WL 965308 (N.D. Cal. Mar. 17, 2010)........................................10

12
13

*Kramer v. Western Pacific Industries, Inc.*,
   546 A.2d 348 (Del. 1988).....................................................................17

14
15

*Lapidus v. Hecht*,
   232 F.3d 679 (9th Cir. 2000) ...............................................................14

16
17

*Levine v. Smith*,
   591 A.2d 194 (Del. 1991).................................................................11, 12

18
19

*Lucas v. Lewis*,
   428 F. App'x. 694 (9th Cir. 2011).........................................................11

20
21

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .............................................................................24

22

*In re Lukens Inc. S'holders Litig.*,
   757 A.2d 720 (Del. Ch. 1999) .............................................................23

23
24

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001)...................................................................23

25
26

*Marino v. Cross Country Bank*,
   2003 WL 503257 (D. Del. Feb. 14, 2003) .......................................20, 21

27
28

*McMillan v. Intercargo Corp.*,
   768 A.2d 492 (Del. Ch. 2000)..............................................................23

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

**TABLE OF AUTHORITIES**
(continued)

Page

*Meaunrit v. Pinnacle Foods Grp., LLC,*
   2010 WL 1838715 (N.D. Cal. May 5, 2010) ........................................ 23

*Michelson v. Duncan,*
   407 A.2d 211 (Del. 1979) ....................................................................... 25

*Phoenix Cash & Carry, LLC v. U.S. Smokeless Tobacco Brands, Inc.,*
   2008 WL 4850203 (D. Ariz. Nov. 7, 2008) .......................................... 21

*In re Primedia, Inc. S'holders Litig.,*
   2013 WL 6797114 (Del. Ch. Dec. 20, 2013) ........................................ 22

*Protas v. Cavanagh,*
   2012 WL 1580969 (Del. Ch. May 4, 2012) ................................. 14, 15

*RCM Secs. Fund, Inc. v. Stanton,*
   928 F.2d 1318 (2d Cir. 1991) ................................................................ 12

*In re Sagent Tech., Inc. Deriv. Litig.,*
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ................................................ 23

*Sanders v. Wang,*
   1999 WL 1044880 (Del. Ch. Nov. 8, 1999) .......................................... 19

*Scattered Corp. v. Chicago Stock Ex., Inc.,*
   701 A.2d 70 (Del. 1997) ......................................................................... 11

*Spiegel v. Buntrock,*
   571 A.2d 767 (Del. 1990) ....................................................................... 13

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
   845 A.2d 1031 (Del. 2004) ..............................................................*passim*

*In re Tyson Foods, Inc. Consol. S'holders Litig.,*
   919 A.2d 563 (Del. Ch. 2007) ............................................................... 22

*Wallace. v. Wood,*
   752 A.2d 1175 (Del. Ch. 1999) ....................................................... 20, 21

*WaveDivision Holdings, LLC v. Millennium Digital Media Sys.,*
   L.L.C., 2010 WL 3706624 (Del. Ch. Sept. 17, 2010) ......................... 21

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.     **Case No. 13CV2959 JAH NLS**
        **MP&A MOTION TO DISMISS AM. COMPL.**

# TABLE OF AUTHORITIES
## (continued)

**Page**

**Statutes**

26 C.F.R.
§ 1.162-27(h)(3)(ii)................................................................4

26 U.S.C. § 162(m)...........................................................*passim*

Del. Code Ann. Tit. 10,
§ 8106(a)......................................................................22

Del. Gen. Corp. Law
§ 102(b)(7)....................................................................23

**Other Authorities**

Del. Ch. Ct. R. 23.1 .............................................................10

Federal Rule of Civil Procedure
Rule 12(b)(1) ...............................................................24, 25
Rule 12(b)(6) ...................................................................12
Rule 23.1.......................................................10, 11, 12, 14, 19

## I.   INTRODUCTION

Plaintiff Yacov Turgeman's ("Plaintiff") Amended Complaint should be dismissed for the same reason that this Court dismissed his Original Complaint: it fails to allege that he has standing to assert derivative claims on behalf of nominal defendant Orexigen Therapeutics, Inc. ("Orexigen" or the "Company").

Before filing this lawsuit, Plaintiff, a purported shareholder of the Company, had two options under Deleware law: make a demand on the Company's Board to seek relief on behalf of the Company for the alleged wrong; or file a derivative lawsuit against the purported wrongdoers on behalf of the Company, alleging that a pre-litigation demand on the Board would have been futile because a majority of the Board was either interested in the underlying transaction or lacked independence.  Plaintiff chose to make a demand on the Board.  In doing so, he conceded, as a matter of law, that the Board was neither interested nor lacked independence and was fully capable of impartially considering his demand. Because Plaintiff chose to make a demand on the Board, to have standing to bring derivative claims on behalf of Orexigen, Plaintiff must plead particularized facts that the Board wrongfully refused his demand.  Plaintiff cannot simply challenge the wisdom of the Board's underlying decision in response to the demand.  Rather, the focus of the wrongful refusal analysis is on the process undertaken by the Board to investigate the alleged wrongdoing, not on the alleged wrongdoing itself or the merits of the Board's decision.  Thus, Plaintuff must plead particularized facts that raise a reasonable doubt about the good faith and due care of the Board's investigation into the demand.  He fails to do so.

Indeed, on March 9, 2015, this Court dismissed Plaintiff's Original Complaint because it "lack[ed] sufficient particularized facts that raise a reasonable doubt about the good faith and due care of the investigation into [his] demand." (March 9, 2015 Order (Dkt. #47) ("Order") at 5.)   In particular, the Court determined that the Original Complaint "contain[ed] no particularized facts to

support plaintiff's conclusions concerning the actions of the Board toward plaintiff's demand." (*Id.*)  "Thus, the complaint fail[ed] to allege facts that rebut the business judgment rule and fail[ed] to sufficiently plead facts supporting plaintiff's claim that his demand was wrongfully refused." (*Id.*)

The Amended Complaint should be dismissed for the same reasons.  The redline Plaintiff attached to his Amended Complaint demonstrates that he made no effort at all to cure the substantive deficiencies identified by the Court and failed to add a single factual allegation calling into question the Board's due care or good faith in responding to the demand.  Regarding the Board's purported wrongful refusal of the demand, Plaintiff adds only ***two sentences*** containing materially identical conclusory allegations that this Court has already rejected as inadequate.  Plaintiff's failure to cure the deficiencies noted by the Court plainly supports dismissal of the derivative claims in the Amended Complaint.

Unable to fix the deficiencies in his wrongful refusal allegations, Plaintiff conjures up a new theory: that the Board's grant of stock options in 2011 to certain executives under the 2007 Equity Incentive Award Plan ("Equity Plan") constitutes a breach of contract.  However, unlike his derivative claims for breach of fiduciary duty, waste and unjust enrichment, Plaintiff does not bring the contract claim on behalf of the Company.  Rather, he asserts this claim directly on behalf of a purported class of Orexigen stockholders against the Company's directors.  This attempt to circumvent the pleading requirements for derivative claims fails for a litany of reasons.  As an initial matter, the Equity Plan is simply not a contract, much less an enforceable one between the Company's directors and shareholders. The Company's directors are not parties or signatories to the Equity Plan.  Nor is any Orexigen shareholder a party, signatory or third-party beneficiary under the Equity Plan.  Thus, as a matter of black-letter law, the contract claim must fail. Moreover, under well-established Delaware law, Plaintiff's contract claim is a derivative claim as he (1) alleges harm only to the Company, *not* to any Orexigen

shareholder and (2) seeks damages on behalf of the Company, *not* on behalf of any Orexigen shareholder.  Hence, the Court should dismiss the breach of contract claim for the same reasons as Plaintiff's other derivative claims.  In addition to these foundational defects, the contract claim should be dismissed as Plaintiff fails to plead consideration (an essential element of contract formation) and because it is barred by the statute of limitations.

The Amended Complaint fails for additional, independent reasons: (1) Plaintiff fails to state a claim for breach of fiduciary duty, waste or unjust enrichment; and (2) Plaintiff's claims are moot as the Board retroactively amended the Equity Plan to cure any potential issues with the challenged stock option grants.

Because Plaintiff cannot cure the deficiencies identified by the Court, the Amended Complaint should be dismissed with prejudice.

## II.   STATEMENT OF FACTS

### A.   Orexigen and Its Equity Plan.

Orexigen is a biopharmaceutical company founded in 2002 and headquartered in La Jolla, California. (Am. Compl. ¶ 10; Dec. Ex. E at 37.)[1]

In 2007, the Company's shareholders approved the Equity Plan, which authorized Orexigen to grant stock options and other equity awards to the Company's employees, directors and consultants. (Am. Compl. Ex. C at 1.) Section 3.3 of the Equity Plan provided that, in any fiscal year, no more than 1,500,000 shares could be granted to any individual (the "Equity Plan Limit"), effective once certain conditions had first been satisfied or on "such other date required by Section 162(m) of the Code."[2] (Am. Compl. Ex. C at §3.3.)  Those

---

[1] The prefix "Am. Compl." refers to Plaintiff's Verified Shareholder First Amended Derivative and Class Action Complaint filed on April 8, 2015. The prefix "Dec." refers to the Declaration of Jessica Valenzuela Santamaria, filed herewith, and is followed by the applicable exhibit and page number.

[2] Under Section 162(m) of the Internal Revenue Code, a public company may only deduct compensation paid to certain executive officers in excess of $1 million per

1  conditions were satisfied on June 2, 2011. (Am. Compl. Ex. B at 2.)

2       The shareholders vested Orexigen's Compensation Committee with the sole

3  authority to interpret and amend the Equity Plan. (Am. Compl. Ex. C at §13.3(i)

4  (giving Compensation Committee "the exclusive power, authority and discretion to:

5  . . . (i) Interpret the terms of, and any matter arising pursuant to, the Plan or any

6  Award Agreement; and (j) Make all other decisions and determinations that may be

7  required pursuant to the Plan or as the Committee deems necessary or advisable to

8  administer the Plan").)   Further, the Equity Plan grants to the Compensation

9  Committee, with the approval of the Board as a whole, authority to amend or

10  modify the terms of the plan (subject to certain restrictions not at issue in this case).

11  (Am. Compl. Ex. C at § 15.1).

12      **B.    The Option Grants Challenged By Plaintiff.**

13       In March 2010, the Company submitted a New Drug Application ("NDA") to

14  the FDA for Contrave (also known as "NB32") for the treatment of obesity. (Dec.

15  Ex. E at 5.)   In December 2010, the FDA's Division of Endocrinologic and

16  Metabolic Drugs Advisory Committee reviewed Orexigen's application. (*Id.*)   The

17  committee concluded that "the available clinical data adequately demonstrate that

18  the potential benefits of NB32 outweigh the potential risks when used long-term in

19  a population of overweight and obese individuals and supported approval." (*Id.*)

20  However, a month later, the FDA unexpectedly declined to approve Contrave. (*Id.*)

21  The FDA directed Orexigen to conduct an additional trial regarding the

22

23  year if specific requirements are met: among other things, the compensation must
be performance-based and equity awards must be granted pursuant to a shareholder-

24  approved plan that contains a limit on the number of shares entitled to such
preferential treatment that may be awarded each year to any single recipient.

25  Section 162(m) does not apply to a company the minute it goes public.  Rather, the
federal regulations implementing Section 162(m) set out a transition period before

26  the provision applies to a public company. *See* 26 C.F.R. § 1.162-27(h)(3)(ii).
Section 3.3 of the Equity Plan tracks the language of this federal regulation so that

27  the Equity Plan Limit became effective at the same time that the Company was
required to comply with Section 162(m). (Am. Compl. Ex. C at §3.3.)

28

cardiovascular safety profile of the drug before re-submitting the application. (*Id.*) Following this news, the price of Orexigen's stock declined and continued to do so over the first six months of 2011. (Dec. Ex. F at 1-4.)

Faced with this significant setback, growing uncertainty regarding the future of the Company and concern regarding the potential departures of key employees (the Chief Financial Officer of the Company resigned in February 2011), the Compensation Committee of Orexigen's Board granted stock options to employees in January and June 2011 in an attempt to retain and motivate them. (Am. Compl. ¶¶ 29-30; Dec. Ex. G; Dec. Ex. B at 16; Dec. Ex. I.)  These option grants included those now challenged by Plaintiff to: (1) Orexigen's Chief Executive Officer, Michael Narachi; (2) Chief Business Officer and acting Chief Financial Officer, Joseph Hagan; and (3) Senior Vice President, General Counsel and Secretary Heather Turner. (Am. Compl. ¶¶ 11, 21-22, 29-30.)

As Orexigen's stock price continued to decline, these retention grants and other stock option awards made to employees over the years became worthless as the strike price – the amount that had to be paid to the Company to exercise the stock option – far exceeded the price at which the Company's stock was trading publicly.  To address the Board's concern that "unexercised and underwater options have lost their value as either an incentive or retention tool," the Board approved an option exchange through which eligible employees could exchange their underwater options for ones valued at the market price. (Dec. Ex. B at 16.)  The option exchange was accomplished through a tender offer (the "Tender Offer"), which allowed employees to forfeit and replace options at a lower strike price, but did not increase the overall number of options owned by any employee. (*Id.*) Messrs. Narachi and Hagan and Ms. Turner, as well as many other Orexigen employees, participated in the Tender Offer. (*Id.*; Dec. Ex. J.)

The retention awards served their intended purpose as Messrs. Narachi and Hagan, Ms. Turner and many others remained at the Company through this

1   uncertain period.  Under their stewardship, the Company spent the next two years
2   addressing the concerns raised by the FDA, resubmitting its NDA and ultimately
3   receiving FDA approval for Contrave on September 10, 2014. (Dec. Ex. D; Dec.
4   Ex. K.)

5   ### C.    The Board's Consideration of Plaintiff's Demand Letter.

6       In May 2013, two years after the challenged stock option grants were made,
7   Plaintiff sent a demand letter to the Board.  Plaintiff alleged that the stock option
8   awards to Messrs. Narachi and Hagan and Ms. Turner in 2011, including those
9   exchanged pursuant to the Tender Offer, were invalid because they exceeded the
10  Equity Plan Limit. (Am. Compl. Ex. A at 2.)  The stated purpose of the demand
11  was to give Orexigen's Board "the opportunity to investigate and institute claims on
12  behalf of the Company … and to implement new and stronger controls which
13  would help prevent a recurrence of these failures in the future." (*Id.*)

14      The Board responded appropriately to Plaintiff's demand.  It established a
15  committee comprised of independent directors, the Demand Review Committee
16  ("DRC"), to investigate the allegations in the demand letter. (Am. Compl. Ex. B at
17  2.)  The DRC engaged independent counsel to assist with its investigation. (*Id.*)
18  With the assistance of its advisors, the DRC "evaluated the terms of the Plan, the
19  initial issuance procedures for the option grants to Mr. Narachi, Mr. Hagan and Ms.
20  Turner during 2011, the authority available to the Compensation Committee under
21  its charter and the Plan, the expectations of the award recipients and the intent of
22  the Board and the Compensation Committee regarding the availability of an
23  exemption from the deductibility limitations of Internal Revenue Code Section
24  162(m) for such option grants." (*Id.*)

25      Following its investigation and analysis, the DRC determined:

26      that the 162(m) Award Limit first became effective as of June 2, 2011,
        and that, therefore, awards granted under the Plan prior to June 2,
27      2011, did not count toward the 162(m) Award Limit.  The [DRC]
        determined that the awards granted to Mr. Hagan between June 2,
28      2011 and December 31, 2011 did not exceed the 162(m) Award Limit.

The [DRC] further determined that the options to Mr. Narachi and Ms. Turner, including the portion of such awards in excess of the 162(m) Award Limit, were validly approved under the Plan, although the portion of those awards in excess of the 162(m) Award Limit does not qualify as performance-based compensation under Section 162(m).

(Am. Compl. Ex. B at 2.)

In light of the above conclusions, and following a thorough analysis with its advisors of the merits of Plaintiff's demands, the Board determined that initiating litigation was not in the best interests of the shareholders. However, it undertook certain corrective action based on the findings of the DRC. In particular, the Compensation Committee amended the Equity Plan to clarify that the Equity Plan Limit in Section 3.3 applied only to awards "intended to qualify as performance-based compensation" under Section 162(m). (Am. Compl. ¶ 45 & Ex. B at 2.) Thus, the Compensation Committee confirmed that the Equity Plan Limit, rather than operating as an absolute cap, limited only the equity awards that could qualify for favorable tax treatment. The amendment also specified that "[a]ny grants under the Plan in excess of the 162(m) Award Limit are not intended to qualify as performance-based compensation under Section 162(m)." (*Id.*) Consistent with the Compensation Committee's authority to administer the Equity Plan, the amendment was deemed effective as of June 10, 2011, the day the first of the challenged awards were made. (*Id.*) Plaintiff does not challenge this amendment or the Compensation Committee's prerogative to make it effective retroactively.

On September 22, 2013, the Company filed a Form 8-K with the Securities and Exchange Commission publicly disclosing the investigation and the Board's actions. (Am. Compl. Ex. B and ¶ 38.) Shortly thereafter, the Company's counsel informed Plaintiff's counsel of the actions taken in response to the demand letter, providing a link to the Form 8-K and encouraging Plaintiff to contact the Company's counsel with any questions. (Am. Compl. Ex. B and ¶ 38; Dec. Ex. H.)

## D.     The Court Dismisses Plaintiff's Original Complaint.

Plaintiff never responded to the Board's communication and never asked for any clarification regarding the actions undertaken by the Board in response to his demand.   Rather, two-and-one half months later, he filed a derivative action, purportedly on behalf of the Company. (Plaintiff's Verified Shareholder Derivative Complaint filed on December 9, 2013 (Dkt. #1) (the "Original Complaint").)   The Original Complaint alleged that Defendants exceeded their authority under the Equity Plan by issuing stock options in excess of the Equity Plan Limit and asserted three claims:  breach of fiduciary duty, waste and unjust enrichment. (*Id.* at 11-13.) Other than conclusory statements, the Original Complaint contained no allegations suggesting that either the Board or the DRC failed to act in an informed manner or responded to the demand in bad faith.  On July 23, 2014, Defendants moved to dismiss the Original Complaint on the grounds that, among other things, Plaintiff failed to adequately allege that the Board wrongfully refused his demand. (Defendant's Motion to Dismiss (Dkt. #27) at 8-21.)

On March 9, 2015, the Court granted Defendants' motion. (Order at 5.)  The Court noted that, because Plaintiff asserted derivative claims on behalf of the Company, the board's decision in response to Plaintiff's demand would be upheld "unless it cannot be attributed to any rational business purpose." (*Id.* at 3.)  The Court recognized that, to survive a motion to dismiss, Plaintiff was required to "present, with particularity, the reasons why the corporation wrongly refused to act" in response to his demand. (*Id.*)  In other words, the Board's response to Plaintiff's demand would be protected under the business judgment rule unless Plaintiff could "allege particularized facts that create a reasonable doubt the directors acted appropriately with regard to [his] demand." (*Id.*)  Thus, the Court identified the relevant question as "whether the directors acted in an informed manner and with due care, and in a good faith belief that their action was in the best interests of the corporation." (*Id.* at 4.)  The Court then found that "plaintiff's complaint lack[ed]

sufficient particularized facts that raise a reasonable doubt about the good faith and due care of the investigation into plaintiff's demand." (*Id.* at 5.) In particular, the Court concluded the Original Complaint "contain[ed] no particularized facts to support plaintiff's conclusions concerning the actions of the Board toward plaintiff's demand." (*Id.*) "Thus, the complaint fail[ed] to allege facts that rebut the business judgment rule and fail[ed] to sufficiently plead facts supporting plaintiff's claim that his demand was wrongfully refused." (*Id.*)[3]

### E.    Plaintiff Files The Amended Complaint.

On April 8, 2015 Plaintiff filed the Verified Shareholder First Amended Derivative and Class Action Complaint asserting identical claims for breach of fiduciary duty (Count I), waste (Count II) and unjust enrichment (Count III) ("Amended Complaint"). As illustrated by the redline attached as Exhibit D to the Amended Complaint, Plaintiff did nothing to address the substantive deficiencies noted by the Court. Indeed, Plaintiff adds only two sentences regarding the Board's actions in response to the demand that are nearly identical to the conclusory allegations that this Court rejected in the Original Complaint:

> In investigating Plaintiff's Demand, the Review Committee failed to ascertain or consider, or arbitrarily ignored, the Board's prior disclosures to shareholders concerning the Section 3.3 share limit. An investigation that ignores the plain language of the Incentive Plan and disregards the Board's representations to shareholders is not a reasonable, good faith investigation.

(*See* Am. Compl. ¶ 44; Am. Compl. Ex. D at ¶¶ 42-43.)

Plaintiff also adds a claim for breach of contract against the Director Defendants (Count IV). (Am. Compl. ¶¶ 24, 52-63, 82-86.) Unlike Counts I through III, Plaintiff does not assert Count IV on behalf of Orexigen derivatively.

---

[3] Defendants also moved to dismiss Plaintiff's Original Complaint for mootness and failure to state a claim. Because the Court found Plaintiff lacked standing to bring derivative claims on behalf of Orexigen, the Court did not rule on Defendant's additional grounds for dismissal. (Order at 3, n.1.)

Instead, he brings his new claim in a completely different capacity, asserting a putative class claim on behalf of *himself* and *all Orexigen shareholders*.

Although Count IV is framed as a direct claim on behalf of the Company's shareholders, the prayer for relief only seeks remedies on behalf of Orexigen. (*Id.* at 17-18.)   The Amended Complaint does not allege any damages suffered by the Company's shareholders and does not seek any recovery on behalf of the Company's shareholders. (*Id.*; *see id* at ¶¶ 82-86.)

## III.   ARGUMENT

### A.   The Amended Complaint Should Be Dismissed As Plaintiff Fails To Allege That The Board Wrongfully Refused His Demand

It is a fundamental precept of Delaware law that a corporation's board of directors, not its shareholders, manages a company's business affairs, including the decision to initiate litigation.[4] *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991); *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).   Because a shareholder derivative suit usurps this authority of the board, Federal Rule of Civil Procedure 23.1 and Delaware law require that a shareholder plaintiff make a pre-suit demand on the board before filing derivative claims on behalf of the corporation, or else plead with particularity the reasons why such demand would have been futile. Fed. R. Civ. P. 23.1 ("The complaint must . . . state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors . . . [and] the reasons for not obtaining the action or not making the effort."); Del. Ch. Ct. R. 23.1; *see also Knopf v. Semel*, No. C 08-3658JF (PVT), 2010 WL 965308, at *7 (N.D. Cal. Mar. 17, 2010).

Because Plaintiff made a pre-litigation demand on Orexigen's Board, he has,

---

[4]   Because Orexigen is a Delaware corporation, Delaware law governs the shareholder demand requirements and any liability of the officers or directors to the Company. *See Copeland v. Lane*, No. 5:11-cv-01058EJD, 2012 WL 4845636, *4 (N.D. Cal. Oct. 10, 2012).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

as a matter of law, conceded that the Board can properly and timely consider that demand. *Copeland*, 2012 WL 4845636, at *5.  Thus, he can establish standing to usurp the Board's normal powers and assert claims derivatively on behalf of the Company only if he can plead with particularity that the Board wrongfully refused to act in response to that demand. *See Lucas v. Lewis*, 428 F. App'x. 694, 695-96 (9th Cir. 2011) (noting that where a plaintiff makes a pre-litigation demand, "Rule 23.1 and applicable Delaware law require [the] shareholder bringing [the] derivative lawsuit to plead with particularity . . . that the corporation wrongfully refused to act.").  Plaintiff fails to do so.

Under the business judgment rule, a board is presumed to have acted appropriately in response to a shareholder demand. *Scattered Corp. v. Chicago Stock Ex., Inc.*, 701 A.2d 70, 73 (Del. 1997).  "In order to overcome the presumption, plaintiff must allege particularized facts that create a reasonable doubt the directors acted appropriately with regard to plaintiff's demand." (Order at 3.)  The only relevant question "is whether the directors acted in an informed manner and with due care, and in a good faith belief that their action was in the best interests of the corporation." (*Id.* at 4.)  To raise a reasonable doubt about a board's due care, a plaintiff must plead particularized facts showing that the board reached its decision in response to the demand "by a grossly negligent process that includes the failure to consider all material facts reasonably available." *Copeland*, 2012 WL 4845636, at *8 (citing *Brehm v. Eisner*, 746 A.2d 244, 264 n.66 (Del. 2000)).  To adequately challenge good faith, a plaintiff must plead particularized facts sufficient to raise a reasonable doubt that the directors acted with a good faith belief that their action was in the best interest of the corporation. *Levine v. Smith*, 591 A.2d 194, 198 (Del. 1991).  Thus, the focus of the wrongful-refusal analysis is on the process undertaken by the board to investigate the alleged wrongdoing, not on the alleged wrongdoing itself. *See Scattered*, 701 A.2d at 73.

Conclusory allegations are insufficient.  Indeed, a "[p]laintiff's pleading

Cooley LLP
Attorneys At Law
Palo Alto

11.

Case No. 13CV2959 JAH NLS
MP&A Motion to Dismiss Am. Compl.

1    burden under Rule 23.1 is [] more onerous than that required to withstand a Rule

2    12(b)(6) motion to dismiss," *Levine*, 591 A.2d at 207, and is one that "few, if any,

3    plaintiffs [can] surmount." *RCM Secs. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330

4    (2d Cir. 1991) (applying Delaware law).

5          *Copeland v. Lane* is instructive as to how these principles are to be applied.

6    2012 WL 4845636.  In that case, the court granted a motion to dismiss a derivative

7    complaint by a shareholder of Hewlett-Packard alleging that the company's board

8    wrongfully refused his demand.  The plaintiff attempted to challenge the due care

9    of the board by alleging, among other things, that the committee formed to review

10   the demand and the board as a whole spent insufficient time on the investigation,

11   conducted too few witness interviews, did not put witnesses under oath, and did not

12   provide to the plaintiff work product that it considered to be privileged. *Id.* at *8.

13   The court found the allegations inadequate to overcome the protections of the

14   business judgment rule.  Among other things, the plaintiff failed to plead any

15   particularized facts regarding the amount of time spent on the investigation or why

16   that was insufficient, the identity of witnesses who were not interviewed or "how

17   those interviews if taken would have altered the board's decision to refuse

18   demand," or that the board failed to review the committee's report. *Id.*  Further, the

19   court noted that "'[a]n investigating board generally is under no obligation to make

20   use of any particular investigative technique,'" and there is no rule that every

21   witness – or even any witness – need be interviewed. *Id.* (citation omitted).

22         Because Plaintiff fails to meet this burden, he has no standing to maintain

23   derivative claims on behalf of Orexigen.

24                 **1.    Counts I through III should be dismissed because Plaintiff
                           has not cured the deficiencies in his Original Complaint.**

25

26         The Court dismissed the Original Complaint because it "lack[ed] sufficient

27   particularized facts that raise a reasonable doubt about the good faith and due care

28   of the investigation into plaintiff's demand." (Order at 5.)  Plaintiff has failed to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

cure those deficiencies. (*See* Am. Compl. Ex. D.)  Indeed, Plaintiff adds only ***two sentences*** regarding the Board's purported wrongful refusal:

> In investigating Plaintiff's Demand, the Review Committee failed to ascertain or consider, or arbitrarily ignored, the Board's prior disclosures to shareholders concerning the Section 3.3 share limit. An investigation that ignores the plain language of the Incentive Plan and disregards the Board's representations to shareholders is not a reasonable, good faith investigation.

(Am. Compl. ¶ 44; Am. Compl. Ex. D.)  These sentences merely repeat the same conclusory allegations from the Original Complaint challenging the conclusions reached by the Board, which the Court has already rejected as inadequate. (*See, e.g.* Am. Compl. Ex. D at ¶¶ 39-43; 45-47.); *Spiegel v. Buntrock*, 571 A.2d 767, 778 (Del. 1990) (the merits of the Board's decision in response to the demand is "*not* subject to judicial review" ) (citation omitted); *see also Halpert Enters., Inc. v. Harrison*, 2008 WL 4585466, at *1 (2d Cir. Oct. 15, 2008) (applying Delaware law) ("The board's ultimate conclusion…is *not* subject to judicial review.").

Even if these wholly conclusory allegations were new, they are not supported by any particularized facts.  This, as the Court has already found, is fatal to Plaintiff's derivative claims:

> This Court's review of the record reflects plaintiff's complaint lacks sufficient particularized facts that raise a reasonable doubt about the good faith and due care of the investigation into plaintiff's demand . . . . [T]he [complaint] contain[s] no particularized facts to support plaintiff's conclusions concerning the actions of the Board toward plaintiff's demand. Thus, the complaint fails to allege facts that rebut the business judgment rule and fails to sufficiently plead facts supporting plaintiff's claim that his demand was wrongfully refused.

(Order at 5.)  The Amended Complaint should be dismissed for the same reasons.

Cooley LLP
Attorneys At Law
Palo Alto

13.

Case No. 13CV2959 JAH NLS
MP&A Motion to Dismiss Am. Compl.

1
2

### 2. Plaintiff's purported direct claim for breach of contract (Count IV) should be dismissed for the same reasons as Counts I, II and III.

3
4
5
6
7
8
9
10
11
12

In an apparent attempt to avoid the exacting pleading standards under Rule 23.1 and Delaware law, Plaintiff now asserts a putative class claim for breach of contract in his individual capacity against the Director Defendants based on the allegedly improper 2011 stock option grants. (Am. Compl. ¶¶ 24, 33, 52-63, 82-86.)[5]  But, as Plaintiff's own allegations make clear, the breach of contract claim is, in fact, a derivative claim asserted for the benefit of Orexigen to remedy the same harm to the Company alleged in the demand letter.  Thus, Plaintiff lacks standing unless he pleads particularized facts that demonstrate the Board wrongfully refused his demand.   As set forth above, he does not, and the breach of contract claim should be dismissed.

13
14

### a. *Tooley* applies to determine whether a claim is direct or derivative.

15
16
17
18
19
20
21
22

Whether a claim is direct or derivative turns on two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).[6]  A claim is direct only if the stockholders suffered the alleged harm *and* would receive the benefit of the remedy. *Id.* at 1039; *see also Protas v. Cavanagh*, No. 6555-VCG, 2012 WL 1580969, at *5 (Del. Ch. May 4, 2012).  To be a direct claim, the harm to the stockholder must be

23
24
25

[5] Plaintiff does not assert breach of contract against Mr. Hagan or Ms. Turner. (*Cf.* Am. Compl. ¶¶ 23 & 85-86.)  Therefore, even assuming Plaintiff could establish that he was entitled to relief against the Director Defendants (which he cannot do), the Amended Complaint should be dismissed as to Mr. Hagan and Ms. Turner.

26
27
28

[6] Whether an action is direct or derivative is determined by the law of the state of incorporation. *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000).   Thus, Delaware law applies here.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

1  "independent of any alleged injury to the corporation." *Tooley*, 845 A.2d at 1039.

2  As the Delaware Chancery Court has explained, the plaintiff must 'demonstrate[ ]

3  that he or she can prevail without showing an injury to the corporation.'" *Protas*,

4  2012 WL 1580969, at *5 (quoting *Tooley*, 845 A.2d at 1039).

5  When considering whether a claim is direct or derivative, "[t]he court gives

6  little weight to the labels the plaintiff assigns to the claim." *Protas*, 2012 WL

7  1580969, at *5. Instead, the court must "[l]ook[] at the body of the complaint and

8  consider[] the nature of the wrong alleged and the relief requested" to see whether

9  "plaintiff [has] demonstrated that he or she can prevail without showing an injury to

10 the corporation." *Tooley*, 845 A.2d at 1036 (citation omitted). That is, the court

11 must "independently examine the nature of the wrong alleged and any potential

12 relief to make its own determination" about the nature of the claim. *Id.* at 1035.

13
14

        **b.**    **Under *Tooley*, the breach of contract claim is derivative because the company suffered the alleged harm and would get the benefit of any recovery.**

15 Plaintiff alleges "Director Defendants . . . breached their obligations to

16 Plaintiff under the Incentive Plan" by "granting shares to Narachi, Hagan, and

17 Turner that were in excess of the 1,500,000 fiscal year limit." (Am. Compl. ¶¶ 84-

18 85.) The gravamen of this claim is that Orexigen allegedly paid improper and

19 excessive compensation to the Individual Defendants. (*See id.* ¶¶ 3, 29-30, 33, 72-

20 73.) Based on Plaintiff's own allegations, Orexigen suffered the harm and will

21 benefit from any recovery. Thus, under *Tooley*, Count IV for breach of contract is a

22 derivative one.

23 Indeed, Plaintiff screams that the harm was suffered by Orexigen: "***The***

24 ***Company Has Been and Will Be Harmed As a Result of the Unauthorized***

25 ***Awards***." (Am. Compl. at 7 (emphasis in original); *see also id.* ¶¶ 4 ("the Company

26 and its shareholders have been harmed"); 35 ("the Company and its shareholders

27 are not further harmed by the wrongdoing"); 85 ("the Company and its shareholders

28 have been and will be harmed".)) Although Plaintiff alleges that the shareholders

Cooley LLP
Attorneys At Law
Palo Alto

15.

Case No. 13CV2959 JAH NLS
MP&A Motion to Dismiss Am. Compl.

were also harmed as a result of this purported breach, Plaintiff fails to plead (as he must) that the alleged harm to the shareholders was "independent of any alleged injury to the corporation." *Tooley*, 845 A.2d at 1039.

Further, as Plaintiff's own pleading establishes, it is the Company – and not the shareholders – that would receive the benefit of any recovery. As to Count IV, Plaintiff's prayer for relief seeks only a declaration that "this action [is] a class action and certifying Plaintiff as the Class representative." (*See* Am. Compl. at 17.) Moreover, Plaintiff does not seek any damages for himself or any other Orexigen shareholder. (*See id.* at 17-18.) Rather, Plaintiff seeks only to recover damages "*in favor of the Company* . . . as a result of Individual Defendants' . . . violation of the Incentive Plan." (*Id.*) (emphasis added). As such, "'the damages allegedly flowing from the purportedly direct claim . . . are exactly the same as those suffered by the corporation in the underlying derivative claim.'" *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008). Because – based on Plaintiff's own allegations – Orexigen has been harmed by the purported breach of contract and will enjoy the benefit of any recovery, Count IV is derivative and cannot be maintained as a direct claim. *Tooley*, 845 A.2d at 1033.

Courts addressing the same issue – whether a shareholder can maintain a direct claim for breach of an equity incentive plan – have reached this same conclusion. *Bader v. Anderson*, 179 Cal. App. 4th 775, 801 (2009), is instructive. In *Bader*, the plaintiff brought derivative claims against Apple, Inc. and its officers and directors for, among other things, breach of fiduciary duty, violation of an equity plan's express terms, and waste. *Id.* at 784. The plaintiff also asserted a direct (class) action against the directors based on allegedly improper bonus payments and equity compensation made to executives and senior officials that were not tax deductible. *Id.* at 786, 800. Plaintiff alleged that the claims were direct because the purported damage "consisted of a reduction in stock value caused by the depletion of corporate funds from the unauthorized payments and the absence of

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

tax deductions." *Id.* at 801.  The court, applying Delaware law generally and *Tooley* specifically, disagreed and found that the claim was derivative as any alleged harm "consisted of harm to the corporation itself." *Id.*

The Delaware Supreme Court reached the same conclusion in *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348 (Del. 1988), noting that "[t]he distinction between derivative and individual actions rests upon the party being *directly* injured by the alleged wrongdoing." *Id.* at 351 (emphasis in original). There, the plaintiff filed a class action alleging that he and other shareholders sustained a direct injury as a result of purportedly excessive stock options, termination bonuses, and fees paid to and spent by management. *Id.* at 352-53.  The court rejected plaintiff's claim that the compensation and expenditures constituted "a special or direct injury" to the shareholders, finding that "[t]he complaint states simply a series of claims of waste of assets (through the payment of unnecessary options, bonuses, fees and expenses)" which "do not affect contractual rights of shareholders associated with the ownership of common stock." *Id.* at 353.  "A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders." *Id.*  Thus, the court held "the wrong alleged is entirely derivative in nature" and dismissed plaintiff's complaint, stating the company "alone has the right to determine whether to pursue such claims against the defendants." *Id.*

The Delaware Supreme Court reached the same conclusion again in affirming the dismissal of the plaintiff's amended complaint in *Feldman v. Cutaia*. 951 A.2d at 734.  There, the plaintiff challenged the grant of certain stock options made under the company's equity plan, asserting derivative claims against the company and its officers and directors for breach of fiduciary, breach of contract, unjust enrichment and corporate waste and a direct claim for breach of fiduciary duty. *Id.* at 730, n.6.  The Court found that the plaintiff lacked standing to maintain the derivative claims.  On appeal, the plaintiff challenged only the dismissal of his

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

17.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

direct claim, arguing that it was not derivative in nature under *Tooley*. *Id.* at 729-30. In rejecting that argument, the Court held that the issuance of allegedly invalid stock options constituted a direct harm to the company, not the stockholders, and therefore claims challenging that conduct were derivative. *Id.* at 735.  The Court explained that "'the damages allegedly flowing from the purportedly direct claim . . . are exactly the same as those suffered by the corporation in the underlying derivative claim . . . and thus the injury alleged in the complaint is properly regarded as injury to the corporation and not to the class.'" *Id.* at 733.

Even Plaintiff's own counsel, in a strikingly similar matter challenging equity awards by Symantec, conceded that such wrongdoing did not result in harm to Symantec's shareholders.  In *Gressman v. Brown*, No. 9896-VCG (Del. Ch. Jul. 17, 2014), the plaintiff filed derivative claims for breach of fiduciary duty and a direct claim for breach of contract based on allegations that equity awards to Symantec's CEO violated the express terms of Symantec's equity plan.  That is the identical claim Plaintiff makes here.  Symantec moved to dismiss the breach of contract claim on the ground that it was derivative and plaintiff had not established standing to pursue claims on behalf of the company.  During oral argument on December 10, 2014, Vice Chancellor Glasscock recognized that "[a]ny recovery, if there were a damages recovery, would run solely to the corporation," and probed the plaintiff to articulate a remedy that would benefit shareholders. (Dec. Ex. L at 44-48 and 58-62.)  Plaintiff's counsel, who also represented the plaintiff in *Gressman*, admitted that he "might have to dance around [the question]" because "there really isn't any. It does run to the company." (*Id.* at 45.)  Following the "plaintiff's counsel['s] conce[ssion] that the contract claim [] seeks a remedy running to the corporation," Vice Chancellor Glasscock (ruling from the bench) dismissed both the derivative claims and the purported direct claim for breach of contract, finding that both "rise and fall" on the same analysis and holding that the plaintiff had not established standing to assert the derivative claims. (*Id.* at 59-62.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

The claims in these cases are materially identical to those asserted in the Amended Complaint and the same resolution is warranted here. *Tooley*, 845 A.2d at 1033.  Plaintiff's attempt to end run the heightened pleading requirements of Rule 23.1 and Delaware law fails.  Count IV is derivative in nature and Plaintiff cannot maintain direct claims for breach of contract.  Because Plaintiff has no standing to maintain derivative claims on behalf of Orexigen under Counts I, II and III, his breach of contract claim fails for the same reasons.

### B.    Counts I-IV Fail For Additional, Independent Reasons

Because Plaintiff lacks standing to bring any claims on behalf of Orexigen, the Court's analysis need go no further.  However, Plaintiff's claims also fail for additional reasons, each of which independently warrants dismissal.

#### 1.    Plaintiff fails to allege a viable breach of contract claim in Count IV.

##### a.    The Equity Plan is not a contract.

Count IV should also be dismissed because Plaintiff cannot establish that the Equity Plan is a binding and enforceable contract between the Director Defendants and the Company's shareholders.[7]  As an initial matter, Defendants are not aware of a single Delaware case holding that a shareholder-approved equity plan is a binding and enforceable *contract* between a company's board of directors and its shareholders, much less one that has allowed a plaintiff to proceed with a direct claim against the directors on such a theory.[8]  Nor would such a theory make sense,

---

[7] Orexigen's Equity Plan and the awards made pursuant to it are governed by Delaware law. (Am. Compl. Ex. C at §16.14.)

[8] Plaintiff will no doubt argue that *Sanders v. Wang*, No. 16640, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999) stands for such a proposition.  But Plaintiff would be wrong.  *Sanders* involved only derivative claims for breach of fiduciary duty and waste.  It did not involve breach of contract claims – direct or derivative. *Id.* at *4. Thus, the *Sanders* court had no occasion to reach the issue before this Court: whether a plaintiff may assert a *direct* claim for *breach of contract* against individual directors based on the alleged violation of a shareholder-approved equity plan.  Any reliance on *Sanders* to support a direct breach of contract claim here

as this case makes evident.  Here, neither the Director Defendants nor any Orexigen shareholder is a party to the Equity Plan. (*See* Am. Compl. Ex. C.)  Neither the Director Defendants nor any Orexigen shareholder signed the Equity Plan or agreed to be personally bound by it. (*Id.*)  Indeed, "[i]t is a general principle of contract law that only a party to a contract may be sued for breach of that contract." *Wallace. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).  Because neither the Director Defendants nor any Orexigen shareholder is a party to the Equity Plan, Plaintiff cannot establish that a contract exists between Plaintiff and Defendants – a fundamental requirement of a breach of contract claim.  *Id.*

Nor does Plaintiff contend that any Orexigen shareholder is a third-party beneficiary of the Equity Plan.  Generally, a person not in privity of contract can only recover where the contract was made for his or her benefit. *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. Ct. 1990).  To seek recovery as a third-party beneficiary, the contracting parties must have intended to confer a benefit on the third-party, and the "beneficial effect ... should be a material part of the contract's purpose." *Id.* at 1386.  In determining whether a third-party is an intended beneficiary of a contract, the Court must consider the language of the contract itself. *Bromwich v. Hanby*, No. S08C-07-008, 2010 WL 8250796, at *2 (Del. Super. Ct. July 1, 2010).  The terms of the Equity Plan plainly disavow that Plaintiff or any Orexigen shareholder is an intended beneficiary. (*See* Am. Compl. Ex. C, § 16.1.)  Thus, Plaintiff is not an intended beneficiary under the Equity Plan and may not recover for any purported breach thereof.

Further, even if the Equity Plan were construed as a contract, the directors cannot be sued for its breach.  Under Delaware law, directors are not personally liable for the breach of a corporate contract unless it is clear that the directors intended to be personally bound by it. *See Marino v. Cross Country Bank*, No. 02-

---

would be misplaced.

Cooley LLP
Attorneys At Law
Palo Alto

20.

Case No. 13CV2959 JAH NLS
MP&A Motion to Dismiss Am. Compl.

65-GMS, 2003 WL 503257, at *7 (D. Del. Feb. 14, 2003) (dismissing claim for breach of contract against corporate chairman who signed contract in his capacity as company chairman rather than in his personal capacity).  Where the plaintiff fails to allege that a director intended to bind himself individually, Delaware law "clearly holds" that the director cannot be liable for the breach of that agreement. *See id.*; *Kaufman v. Alexander*, No. 11-217-RGA, 2014 WL 1623824, at *9 (D. Del. Apr. 23, 2014) (dismissing claim for breach of contract against directors under long-term incentive plan); *Wallace*, 752 A.2d at 1180 (dismissing claim for breach of corporate contract against officers, affiliates and parents).  Here, the Director Defendants are not even parties to the Equity Plan.  Indeed, Exhibit A to the Equity Plan explicitly disavows the personal liability of any director:  "[n]o member of the Committee or the Board shall be personally liable for any action, determination or interpretation made in good faith with respect to the Plan." (Am. Compl. Ex. C, Equity Plan Ex. A at ¶ 5.1.)

Beyond Plaintiff's inability to establish that the Equity Plan is a contract, Plaintiff also fails to establish other foundational requirements necessary to plead a breach of contract against the Director Defendants.  To state a claim for breach of contract, a complaint must set forth facts establishing a contractual obligation (i.e., promise), a breach of that obligation by the defendant, and resulting damage to the plaintiff. *See WaveDivision Holdings, LLC v. Millennium Digital Media Sys., L.L.C.*, No. C.A. 2993-VCS, 2010 WL 3706624, at *13 (Del. Ch. Sept. 17, 2010). Plaintiff fails to plead that the Equity Plan contains any promises from Director Defendants to any Orexigen shareholder.  The absence of consideration is fatal to the breach of contract claim. *Phoenix Cash & Carry, LLC v. U.S. Smokeless Tobacco Brands, Inc.*, No. CV-08-01261-PHX-NVW, 2008 WL 4850203, at *2 (D. Ariz. Nov. 7, 2008) (dismissing breach of contract claim because the plaintiff "failed to allege one of the elements of contract formation: consideration.").

Cooley LLP
Attorneys At Law
Palo Alto

21.

Case No. 13CV2959 JAH NLS
MP&A Motion to Dismiss Am. Compl.

**b.   Plaintiff's breach of contract claim is barred by the statute of limitations.**

Further, Plaintiff's claim is barred by Delaware's three-year statute of limitations on contract actions. *See* Del. Code Ann. Tit. 10, § 8106(a).

"A cause of action for breach of contract accrues at the moment of the breach." *Ins. Co. of N. Am. v. NVF Co.*, No. C.A. 99C-01-036, 2000 WL 305338, at *3 (Del. Super. Ct. Jan. 20, 2000) (citing *Fooks v. Delaware Health and Social Services*, No. 98C-10-027, 1999 WL 743916, at *3 (Del. Super. Ct. Sept. 14, 1999)). Here, Plaintiff alleges that, as of June 2011, Defendants made stock awards to Messrs. Narachi and Hagan and Ms. Turner that violated the Equity Plan because they purportedly exceeded the Equity Plan Limit. (Am. Compl. ¶¶ 29-31.)

Stockholders are required to exercise "'reasonable diligence' when monitoring corporate filings" and Delaware courts have held that SEC filings, such as a Statement of Changes In Beneficial Ownership filed on Form 4, are sufficient to put a reasonable stockholder on notice of a claim for corporate wrongdoing. *See In re Primedia, Inc. S'holders Litig.*, No. 6511-VCL, 2013 WL 6797114, at *12-13 (Del. Ch. Dec. 20, 2013) (Form 4 sufficient to put reasonable stockholder on notice of claim); *see also In re Tyson Foods, Inc. Consol. S'holders Litig.*, 919 A.2d 563, 586-87 (Del. Ch. 2007) (statute of limitations began to run when contracts at issue were disclosed in SEC filings).

Therefore, any alleged breach of the Equity Plan would have accrued no later than the date that the allegedly improper stock grants were disclosed by the Company in its Form 4s: Mr. Narachi (June 10, 2011); Mr. Hagan (July 26, 2011); and Ms. Turner (July 26, 2011). (Dec. Exs. I and J.) Thus, the statute of limitations would have expired three years after the disclosure of the allegedly improper stock grants in the Company's Form 4s: on June 10, 2014 for equity awards to Mr. Narachi and on July 26, 2014 for equity awards to Mr. Hagan and Ms. Turner. Yet, Plaintiff filed his claim for breach of contract on April 8, 2015, long after the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

1  expiration of the three-year statute of limitations.   Thus, the breach of contract

2  claim is barred.

3          **2.**     **Plaintiff also fails to state a claim for breach of fiduciary duty (Count I), waste (Count II) and unjust enrichment (Count III).**

5      Plaintiff fails to state a claim for breach of fiduciary duty because he does not

6  plead any facts that support that the Director Defendants intentionally engaged in

7  bad faith or self-interested conduct that is not immunized by the exculpatory charter

8  provision permitted by Delaware General Corporation Law. *McMillan v. Intercargo*

9  *Corp.*, 768 A.2d 492, 495 (Del. Ch. 2000); *see also Malpiede v. Townson*, 780 A.2d

10  1075, 1094-95 (Del. 2001).   Delaware General Corporation Law section 102(b)(7)

11  permits a Delaware corporation to include a provision in its charter to exculpate

12  directors from personal liability for alleged breaches of the fiduciary duty of care.

13  Orexigen's certificate of incorporation contains such a provision. (*See* Dec. Ex. A at

14  18.)   Thus, causes of action for breach of fiduciary duty premised on negligence or

15  recklessness are barred as a matter of law. *In re Sagent Tech., Inc. Deriv. Litig.*, 278

16  F. Supp. 2d 1079, 1095 n.9 (N.D. Cal. 2003).   And any viable claim for breach of

17  fiduciary duty must be supported by particularized facts demonstrating bad faith or

18  disloyalty. *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999).

19  Here, the Amended Complaint contains virtually no allegations regarding any

20  individual defendants' state of mind, let alone any well-pled facts establishing that

21  any individual defendant acted with an intent to violate the law, for a purpose other

22  than to advance the best interests of Orexigen, or with a conscious disregard for

23  their duties.   Thus, Plaintiff fails to state a claim for breach of fiduciary duty.

24      Because Plaintiff's unjust enrichment and waste claims are premised on a

25  finding of a breach of fiduciary duty in the first instance, Plaintiff likewise fails to

26  state a claim for unjust enrichment or waste. *See Meaunrit v. Pinnacle Foods Grp.,*

27  *LLC*, No. C 09-04555 CW, 2010 WL 1838715, at *13 (N.D. Cal. May 5, 2010)

28  ("Plaintiffs' unjust enrichment and restitution claim fails because they have not

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

23.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

stated a predicate claim warranting such relief."); *Hampshire Grp., Ltd. v. Kuttner*, No. 3607-VCS, 2010 WL 2739995, at \*35 (Del. Ch. July 12, 2010) ("The waste test is just another way to examine whether a fiduciary breach has been committed.").

### 3.    Plaintiff's claims are moot.

Plaintiff's claims are also moot and should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because the Board's amendment to the Equity Plan in September 2013 cured any purported violation of the Equity Plan Limit, and a subsequent violation is not likely to occur.

Federal courts only have jurisdiction over actual cases and controversies, so the Court must resolve standing and mootness before assuming jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Where a plaintiff lacks standing or the issue is moot, a complaint must be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).  A case "is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted).  Voluntary cessation of conduct renders a claim moot where "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).

Here, Plaintiff's sole challenge is that certain stock option awards in 2011 allegedly exceeded the Equity Plan Limit.  Counts I through IV are premised on this alleged violation of the Equity Plan. (Am. Compl. ¶¶ 66, 72, 78, 84.)  However, the Board's fully-authorized amendment to the Equity Plan in September 2013 remedied any alleged flaws in the challenged option awards.  The amendment clarified that the Equity Plan Limit applies only to performance-based compensation intended for favorable tax treatment under Section 162(m) and that non-performance-based stock options in excess of that limit could otherwise be

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

24.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

awarded. (Dec. Ex. C.)   Further, the Board made the amendment effective retroactively to a date preceding the challenged grants.  Plaintiff does not challenge the validity of the retroactive amendment, nor could he.   Under Delaware law, because the Board had the authority to amend the Equity Plan in the first instance, it had the power to make such amendment retroactive. *See e.g., Kalageorgi v. Victor Kamkin, Inc.*, 750 A.2d 531, 539 (Del. Ch. 1999) (holding that corporation had authority to retroactively cure a defect seven years after issuance of stock); *see also Michelson v. Duncan*, 407 A.2d 211, 219 (Del. 1979) (holding that shareholders had authority to retroactively amend an option plan where they could have originally authorized the amendment).  The amendment ensured that the challenged grants were fully authorized, though only the portion of those grants up to the Equity Plan Limit could receive favorable tax treatment.   The retroactive amendment also cured any technical violations of the Equity Plan Limit (if any existed) at the time the awards were made.  This "completely and irrevocably eradicated the effects of the alleged violation," rendering the breach of contract claim moot. *Barnes*, 980 F.2d at 580.

Because any potential problems with the grants have been corrected and Plaintiff has failed to allege that there is a reasonable expectation that future violations will occur, Plaintiff's claims are moot and the Amended Complaint should be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

25.

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.

1  | Dated:  May 8, 2015

COOLEY LLP
JOHN C. DWYER (136533)
JESSICA VALENZUELA
SANTAMARIA (220934)


By:   /s/Jessica Valenzuela Santamaria
      Jessica Valenzuela Santamaria (220934)

*Attorneys for Defendants Michael A.
Narachi, Heather D. Turner, Joseph P.
Hagan, and Nominal Defendant Orexigen
Therapeutics, Inc.*

Dated:  May 8, 2015

DAVIS POLK & WARDWELL LLP
NEAL A. POTISCHMAN (254862)
ALYSE L. KATZ (274856)

THE CABRERA FIRM, APC
GUILLERMO CABRERA (190303)


By:   /s/Neal A. Potischman
      Neal A. Potischman (254862)

*Attorneys for Defendants Eckard Weber,
Louis C. Bock, Brian H. Dovey, Patrick
Mahaffy, Peter K. Honig, Wendy Dixon,
Joseph S. Lacob, Michael F. Powell, and
Daniel K. Turner III*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 13CV2959 JAH NLS
MP&A MOTION TO DISMISS AM. COMPL.