COOLEY LLP
JOHN C. DWYER (136533)
(DWYERJC@COOLEY.COM)
JESSICA VALENZUELA SANTAMARIA (220934)
(JSANTAMARIA@COOLEY.COM)
JEFFREY D. LOMBARD (285371)
(JLOMBARD@COOLEY.COM)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

*Attorneys for Michael A. Narachi, Heather D. Turner, Joseph P. Hagan, and nominal defendant Orexigen Therapeutics, Inc.*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YACOV TURGEMAN, derivatively on behalf of OREXIGEN THERAPEUTICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL A. NARACHI, JOSEPH P. HAGAN, HEATHER D. TURNER, ECKARD WEBER, LOUIS C. BOCK, BRIAN H. DOVEY, PATRICK MAHAFFY, PETER K. HONIG, WENDY DIXON, JOSEPH S. LACOB, MICHAEL F. POWELL, and DANIEL K. TURNER III,<br><br>Defendants.<br><br>and<br><br>OREXIGEN THERAPEUTICS, INC.<br><br>Nominal Defendant. | Case No. 13CV2959 JAH MDD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>Date: July 27, 2015<br>Time: 2:30 P.M.<br>Dept.: 13B<br>Judge: John A. Houston |

# Table of Contents

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFF FAILS TO PLEAD THAT THE BOARD WRONGFULLY REFUSED HIS DEMAND | 2 |
| | A. The Board's response to the demand is protected by the business judgment rule | 2 |
| | B. The Board had discretion to refuse the demand | 4 |
| III. | COUNT IV IS NOT A VALID BREACH OF CONTRACT CLAIM | 5 |
| | A. Count IV is a derivative claim and should be dismissed for the same reasons as Counts I, II and III | 5 |
| | B. Plaintiff fails to plead a viable breach of contract claim | 7 |
| | 1. The Equity Plan is not a contract | 7 |
| | 2. The contract claim is barred by the statute of limitations | 8 |
| IV. | PLAINTIFF'S CLAIMS ARE MOOT | 9 |
| V. | PLAINTIFF FAILS TO STATE A CLAIM | 10 |
| VI. | CONCLUSION | 10 |

## Table of Authorities

Page(s)

**Cases**

*Allen v. El Paso Pipeline GP Co.*
90 A.3d 1097 (Del. Ch. 2014) ........ 4, 8

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
2013 WL 1777766 (S.D.N.Y. Apr. 25, 2013) ........ 4

*In re Boston Scientific Corporation Shareholders Litigation*
2007 WL 1696995, (S.D.N.Y. June 13, 2007) ........ 2, 3

*In re Brocade Communs. Sys. Deriv. Litig.*,
615 F. Supp. 2d 1018 (N.D. Cal. 2009) ........ 8, 9

*Cal. Pub. Emps' Ret. Sys. v. Coulter*,
2002 WL 31888343 (Del. Ch. Dec. 18, 2002) ........ 3, 4

*Copeland v. Lane*,
2012 WL 4845636 (N.D. Cal. Oct. 10, 2012) ........ 2, 5

*Elf Atochem N. Am., Inc. v. Jaffari*,
727 A.2d 286 (Del. 1999) ........ 9

*Feldman v. Cutaia*,
951 A.2d 727 (Del. 2008) ........ 7

*Gressman v. Brown*,
No. 9896-VCG (Del. Ch. Jul. 17, 2014) ........ 7

*Halpert v. Zhang*,
966 F. Supp. 2d 406 (D. Del. 2013) ........ 3, 4

*In re Honeywell Int'l Inc. Derivative Litigation*,
C.A. 8469-CS (Del. Ch. Dec. 16, 2013) ........ 7, 8

*In re infoUSA, Inc. S'holders Litig.*,
953 A.2d 963 (Del. Ch. 2007) ........ 5

*Kalageorgi v. Victor Kamkin, Inc.*,
750 A.2d 531, 539 (Del. Ch. 1999) ........ 10

**Table of Authorities**
**(continued)**

**Page(s)**

*Knopf v. Semel*,
2010 WL 965308 (N.D. Cal. Mar. 17, 2010) ........ 5

*Levine v. Smith*,
1989 WL 150784 (Del. Ch. May 21, 1990) ........ 3

*Moore v. Horel*,
2009 WL 2513920 (E.D. Cal. Aug. 17, 2009) ........ 9

*Protas v. Cavanagh*,
2012 WL 1580969 (Del. Ch. May 4, 2012) ........ 6

*Pyott v. La. Mun. Police Emps.' Ret. Sys.*
74 A.3d 612 (Del. 2013) ........ 9

*RCM Sec. Fund, Inc. v. Stanton*,
928 F.2d 1318 (2d Cir. 1991) ........ 2

*Rich v. Chong*,
66 A.3d 963 (Del. Ch. 2013) ........ 4

*Sanders v. Wang*,
1999 WL 1044880 (Del. Ch. Nov. 8, 1999) ........ 3, 4, 8

*Scattered Corp. v. Chicago Stock Exch., Inc.*,
701 A.2d 70 (Del. 1997) ........ 2, 5

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ........ 5, 6

*Wallace v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) ........ 7

*Weiss v. Swanson*,
948 A.2d 433 (Del. Ch. 2008) ........ 3, 4

**Other Authorities**

Fed. R. Civ. P.
23.1 ........ 10

## I. INTRODUCTION

Plaintiff has made no effort to cure the deficiencies in the Original Complaint and has failed to add a single factual allegation calling into question the Board's due care or good faith in responding to his demand. Regarding the Board's purported wrongful refusal of the demand, Plaintiff adds ***two sentences*** containing materially identical conclusory allegations that this Court has already rejected as inadequate. That's it. Plaintiff's Opposition completely ignores these deficiencies. Instead, it repeats the same flawed arguments this Court previously rejected when it dismissed the Original Complaint. For example, Plaintiff continues to focus on the alleged merits of Plaintiff's demand despite clear and unambiguous law that such arguments are irrelevant to the Court's inquiry. Bizarrely, Plaintiff again argues that the Board lacked discretion to refuse his demand; that is, the Board *had to* accede to Plaintiff's wishes. But that theory makes no sense as it would completely eviscerate the demand requirement. Not surprisingly, Plaintiff cites no authority to support that contention. Counts I through III, therefore, should be dismissed for the same reasons the Court dismissed the Original Complaint: Plaintiff fails to allege that he has standing to assert derivative claims on behalf of Orexigen.

Indeed, the only addition to the Amended Complaint is Count IV which asserts a purported direct class action claim for breach of contract. Count IV fails for three reasons. First, the breach of contract claim is derivative in nature and, thus, should be dismissed for the same reasons as Counts I through III. Second, if Plaintiff could maintain Count IV as a direct claim, it would be barred by Delaware's three-year statute of limitations. Third, whether direct or derivative, the breach of contract claim fails as no contract exists upon which Plaintiff may sue. Count IV is simply a last-ditch effort to save an ill conceived lawsuit. That fact is magnified by Plaintiff's failure to include such allegations in his demand.

Thus, the Court should grant Defendants' motion to dismiss with prejudice.

## II. PLAINTIFF FAILS TO PLEAD THAT THE BOARD WRONGFULLY REFUSED HIS DEMAND.

As Plaintiff concedes, "the relevant question on a motion to dismiss is whether the board's *decision to refuse the demand* is protected by the business judgment rule." (Opp. (Dkt. 55) at 4.) The Board is presumed to have acted appropriately in response to Plaintiff's demand. *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 73 (Del. 1997). Because Plaintiff conceded that the Board was independent when he made his demand, the only relevant question "is whether the directors acted in an informed manner and with due care, and in a good faith belief that their action was in the best interest of the corporation" in responding to the demand. (March 9, 2015 Order (Dkt. 47) at 4.) *See Copeland v. Lane*, 2012 WL 4845636, at *8 (N.D. Cal. Oct. 10, 2012). Plaintiff fails to meet this burden.

### A. The Board's response to the demand is protected by the business judgment rule.

As an initial matter, Plaintiff fails to identify a single fact—particularized or otherwise—that suggests the Board wrongfully refused his demand. Neither the Amended Complaint nor the Opposition identifies facts that call into question the Board's independence or due care. *Copeland*, 2012 WL 4845636, at *8.

Instead, Plaintiff devotes nearly the entirety of his Opposition to the merits of the underlying stock option grants. (*See* Opp. at 4-11.) But, as this Court has already found, this focus is misplaced: "only the Board's independence and process are relevant." (*See* Order at 4-5.) The merits of the underlying transaction are not considered: "[o]nce a demand is made . . . the challenge under Delaware law must be not to the underlying transaction, but to the board's decision not to bring the lawsuit." *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1328 (2d Cir. 1991).

Courts routinely reject attempts, like Plaintiff's, to delve into the merits of the underlying demand and second-guess board decisions in response. For example, in *In re Boston Scientific Corporation Shareholders Litigation*, the

plaintiff demanded that the board bring suit against its directors for causing the company to breach an agreement. 2007 WL 1696995, at *2 (S.D.N.Y. June 13, 2007). The board engaged independent counsel, conducted an investigation, and then refused the demand. *Id*. at *3. Plaintiff argued that the board had wrongfully refused his demand "by attacking the substance of the Board's opinion" and "by re-asserting the merits of the lawsuit." *Id*. at *6. The court found that "the potential merits of the lawsuit itself are not at issue in the context of a motion to dismiss for failure to show wrongfulness of a demand refusal, and Plaintiff's arguments cannot vitiate the business judgment rule in this case." *Id*.

The cases cited by Plaintiff do not hold otherwise. (*See* Opp. at 6-7.) Not a single one addresses whether a board wrongfully refused a shareholder demand. Rather, they each involve derivative claims that were filed *without* a pre-litigation demand on the board. *See Halpert v. Zhang*, 966 F. Supp. 2d 406, 412-13 (D. Del. 2013) (analyzing whether "demand on the Board would have been futile and was therefore excused"); *Weiss v. Swanson*, 948 A.2d 433, 437 (Del. Ch. 2008) (analyzing whether plaintiff had "adequately plead[ed] demand excusal"); *Cal. Pub. Emps' Ret. Sys. v. Coulter*, 2002 WL 31888343, at *6 (Del. Ch. Dec. 18, 2002) (analyzing whether plaintiff "allege[d] with particularity facts demonstrating that demand [ ] would be futile"); *Sanders v. Wang*, 1999 WL 1044880, at *4 (Del. Ch. Nov. 8, 1999) ("Here, plaintiffs did not make demand on the [ ] board and have argued that making demand would be futile.").

This distinction is critical because where, as here, a demand was made on the Board, the focus of the court's inquiry is completely different:

> In a 'demand futility' case, the inquiry focuses upon whether the business judgment rule protects the directors' initial decision to approve the challenged transaction. In a 'demand refused' case such as this, the focus is upon whether the business judgment rule protects the board's later decision to reject a shareholder demand.

*Levine v. Smith*, 1989 WL 150784, at *6 (Del. Ch. May 21, 1990). "Delaware does

not permit a court [to] second-guess the substantive merits of a demand's refusal." *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 2013 WL 1777766, at *8 (S.D.N.Y. Apr. 25, 2013). Plaintiff's arguments as to the merits of the underlying stock option awards are irrelevant and the Court should ignore them. Further, as set forth in detail in Defendants' Motion, the Orexigen Board followed a careful and diligent process when it considered Plaintiff's demand. (*See* Defs.' Mot. (Dkt. 52-1) at 10-13.) The Amended Complaint's failure to allege any contrary facts is fatal.

**B. The Board had discretion to refuse the demand.**

Plaintiff recycles his argument that the Board had no power to refuse his demand because the underlying stock option awards were purportedly *ultra vires*. (Opp. at 7.) The Court has already rejected this argument. (Order at 4-5.) Indeed, none of the demand-*futility* cases relied upon by Plaintiff (*Halpert*, *Weiss*, *Coulter*, and *Sanders*) even addresses the issue of *wrongful-refusal*. (*See* Opp. at 6-7.) And *Allen v. El Paso Pipeline GP Co.*, involved a motion for class certification on claims for breach of a partnership agreement and nowhere addresses a board's discretion in responding to a shareholder demand. 90 A.3d 1097, 1111 (Del. Ch. 2014).

It is not surprising that Plaintiff has no authority to support his contention that the Board lacked discretion to refuse his demand. Such a rule would eviscerate the demand requirement and significantly shift responsibility for management of the corporation, including the decision to initiate litigation, from the board to its shareholders. But Delaware law is clear, the "board has an affirmative duty to evaluate the demand and to determine if the litigation demanded is in the best interest of the stockholders." *Rich v. Chong*, 66 A.3d 963, 976 (Del. Ch. 2013). A board is not relieved of this obligation simply because a demand asserts that wrongdoing occurred.

In fact, Delaware law permits a board to refuse a demand *even if* there was corporate wrongdoing:

> A board may in good faith refuse a shareholder demand to begin litigation even if there is substantial basis to conclude that the lawsuit would eventually be successful on the merits. It is within the bounds of business judgment to conclude that a lawsuit, even if legitimate, would be excessively costly to the corporation or harm its long-term strategic interests.

*In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007). Thus, even if a board rejects a demand that correctly identifies wrongful conduct, it does not "follow that the Board's *evaluation*, *investigation*, *and rejection of the Demand* must have been undertaken in bad faith." *Knopf v. Semel*, 2010 WL 965308, at *8 (N.D. Cal. Mar. 17, 2010) (holding board's decision not to pursue claims against officer who admitted wrongdoing was protected by business judgment rule).

Despite well-settled authority to the contrary, Plaintiff claims that "[t]he merits of the stock option grants . . . cannot be separated from the Board's refusal of the Demand." (Opp. at 8.) This is nonsensical. Under Delaware law, the entire wrongful-refusal analysis is focused on the board's conduct in response to the demand, *not* the underlying merits. *See Scattered*, 701 A.2d at 73. To meet his burden, Plaintiff must plead particularized facts showing that the Board's process in reviewing the demand was flawed, such as allegations regarding the amount of time investigating the demand or the techniques used. *See Copeland*, 2012 WL 4845636, at *8. He has again failed to do so.

## III. COUNT IV IS NOT A VALID BREACH OF CONTRACT CLAIM

### A. Count IV is a derivative claim and should be dismissed for the same reasons as Counts I, II and III.

Apparently recognizing his inability to plead wrongful-refusal, Plaintiff argues that his breach of contract claim is direct rather than derivative in nature. Plaintiff is wrong. Under the controlling case of *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), there is little doubt that Count IV is a derivative claim. Indeed, the gravamen of Plaintiff's claim is that Orexigen paid

allegedly improper and excessive compensation to certain executives and thus suffered harm. Further, the Company also will benefit from any recovery in this litigation. (*See* Defs.' Mot. At 15-16.) Despite Plaintiff's attempt to style it otherwise (his label is not controlling), Count IV is a prototypical derivative claim. *Tooley*, 845 A.2d at 1033, 1039.

Plaintiff fails the first prong of *Tooley* as he does not allege (as he must) harm to shareholders "independent of any alleged injury to the corporation." (Defs.' Mot. at 14-15.) Plaintiff instead articulates the straw man that shareholders and a company can be harmed by the same underlying conduct. (Opp. at 16-17.) Defendants do not dispute this may be the case *under certain circumstances*. The issue before the Court, however, is whether *this* Plaintiff has alleged in the Amended Complaint harm to the shareholders that is "independent of any alleged injury to the corporation." *See Tooley*, 845 A.2d at 1039. He has not.

Unable to point to any allegations in the Amended Complaint that show shareholders were independently harmed, Plaintiff implores Defendants to disprove it: "while Defendants insist that there is harm involving only the Company, they do not explain what that harm is, nor why the Board's failure to abide by a promise made to shareholders does not result in harm to the shareholders." (Opp. at 17-18.) But this is not Defendants' burden. Plaintiff's failure to plead harm independent of injury to Orexigen defeats his purportedly direct claim. *Protas v. Cavanagh*, 2012 WL 1580969, at *5 (Del. Ch. May 4, 2012).

Count IV also fails the second prong of *Tooley* as the Amended Complaint seeks only to recover damages "*in favor of the Company* . . . as a result of Individual Defendants' . . . violation of the Incentive Plan." (*See* Am. Compl. at 17-18). Plaintiff argues that "even if a remedy for the violation of the Plan might flow to both the shareholders and the Company, it simply means that *Tooley*'s first prong controls." (Opp. at 18.) But Plaintiff misapplies *Tooley*, under which *both* prongs must be considered. As to the second prong, Plaintiff does not plead *any*

recovery that would directly benefit Orexigen's stockholders. *See Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008). Nor can he. Indeed, Plaintiff's own counsel readily admitted as much in *Gressman v. Brown*, No. 9896-VCG (Del. Ch. Jul. 17, 2014), which involved a nearly identical attempt to assert a direct claim for breach of contract. At oral argument, Vice Chancellor Glasscock recognized that "[a]ny recovery, if there were a damages recovery, would run solely to the corporation," and probed the plaintiff to articulate a remedy that would benefit shareholders. (*See* Santamaria Dec. Ex. L (Dkt. 52-15) at 44-48.) Plaintiff's counsel, who represented the plaintiff there as well, admitted that "there really isn't any. [The remedy] does run to the company." (*Id*. at 45.)

Because the breach of contract claim is derivative, Count IV must be dismissed for the same reasons as Counts I, II, and III: Plaintiff lacks standing to bring derivative claims on behalf of Orexigen.

**B. Plaintiff fails to plead a viable breach of contract claim.**

**1. The Equity Plan is not a contract.**

Plaintiff's breach of contract claim should also be dismissed as it fails to allege the required elements for a breach of contract claim. (*See* Defs.' Mot. at 19-21.) Plaintiff does not dispute that neither the Director Defendants nor any Orexigen shareholder is a party to the Equity Plan, signed the Equity Plan, agreed to be personally bound by it, or is a third-party beneficiary of the Equity Plan. (*See* Opp. at 19-21.) Plaintiff all but ignores the cases cited by Defendants demonstrating the Equity Plan is not a contract, claiming that he only seeks equitable relief against individuals who are not parties to a contract. (*Id.* at n.6.) But that is not the law. *Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract.").

The weaknesses in Plaintiff's argument are belied by the cases he relies on to support his contention that the Equity Plan is a contract: *In re Honeywell Int'l Inc.*

*Derivative Litigation*, C.A. 8469-CS (Del. Ch. Dec. 16, 2013) (TRANSCRIPT), *Allen*, and *Sanders*. None of those cases hold that a shareholder may assert a breach of contract claim against a director for a violation of a company's equity plan.

Indeed, Plaintiff readily admits that *Honeywell* and *Sanders* are distinguishable as the plaintiffs in those cases "elected to bring derivative claims" for breach of fiduciary duty and did *not* assert direct claims for breach of contract. (Opp. at 14.) Yet Plaintiff desperately clings to *Sanders* to support his theory that stock awards purportedly made in violation of the terms of an equity plan give rise to a direct claim for breach of contract. (Opp. at 13.) *Sanders* stands for no such proposition. *Sanders* involved only derivative claims for breach of fiduciary duty and waste. It did not involve breach of contract claims—direct or derivative. 1999 WL 1044880 at *4. The *Sanders* court did not, as Plaintiff suggests, hold that a shareholder may sue a member of a board of directors for breach of an equity plan of which neither the shareholder nor the board member is a party.

Likewise, Plaintiff's reliance on *Allen* is misplaced. *Allen* involved claims for breach of a partnership agreement that eliminated all common law fiduciary duties and supplanted them with contractual commitments. 90 A.3d at 1100-01. The plaintiffs in *Allen* were limited partners who were parties to, and signed, the partnership agreement. *Id.* at 1110-11. The court's conclusion that the limited partners had standing to bring direct claims for breach of contract is not surprising. That determination, however, is irrelevant here as neither Plaintiff nor any Defendant are parties to, or signed, the Equity Plan.

**2. The contract claim is barred by the statute of limitations.**

Moreover, even if the Equity Plan could support such a claim, it would be time-barred. Plaintiff argues that the contract claim filed *on behalf of a class of Orexigen shareholders* relates back to derivative claims purportedly *brought on behalf of the Company* because it arises from the same conduct. (Opp. at 20.) *In re*

*Brocade Communs. Sys. Deriv. Litig.*, 615 F. Supp. 2d 1018 (N.D. Cal. 2009), on which Plaintiff relies, provides no support for such a counterintuitive proposition. In that case, a shareholder filed a derivative lawsuit purportedly on behalf of Brocade. After determining that it was in the best interest of the company to pursue some of those claims, the company took over the litigation from the plaintiff (who had initially filed the action on the company's behalf) and then sought to add claims that would otherwise be timed-barred. *Id.* at 1038. The court held the claims related back to the original derivative complaint because Brocade "ha[d] opted to take on th[e] litigation and ha[d] been realigned as the sole party-plaintiff." *Id.* That result makes perfect sense because "the real plaintiff in a derivative suit is the corporation," *Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 617 (Del. 2013), and "[the] shareholder [merely] 'stands in the shoes' of the corporation." *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 294 (Del. 1999). Here, by contrast, Plaintiff originally brought suit standing in the shoes of Orexigen, but now asserts the contract claim entirely *in his individual capacity*, not on behalf of Orexigen. Plaintiff cites no authority that would permit his otherwise time-barred claim to relate back for statute of limitations purposes to claims asserted on Orexigen's behalf. *See Moore v. Horel*, 2009 WL 2513920, at *6 (E.D. Cal. Aug. 17, 2009) (plaintiff bears the burden of establishing requirements for relation back). Because Plaintiff failed to assert his breach claim within Delaware's three-year limitations period, the claim is barred.

## IV. PLAINTIFF'S CLAIMS ARE MOOT

Plaintiff's argument that his claims are not moot assumes that the Board lacked the authority to amend the 2007 Equity Plan. (Opp. at 22-24.) Plaintiff ignores that the Equity Plan expressly authorizes the Board to interpret *and amend* the plan. (Am. Compl. Ex. C (Dkt. 48-3), Equity Plan at § 15.1.) Stockholder approval is necessary only in certain enumerated circumstances (that do not apply here) or "where required by law, regulation or stock exchange rule." *Id.* Plaintiff

identifies no such law, regulation or rule requiring shareholder approval of the 2013 Amendment. Plaintiff does not challenge the Board's authority to make the amendment retroactive. The 2013 Amendment, which applied retroactively to June 2011, cured any purported defect in the stock option grants and Plaintiff's claims are moot. *See, e.g., Kalageorgi v. Victor Kamkin, Inc.*, 750 A.2d 531, 539 (Del. Ch. 1999).

## V. PLAINTIFF FAILS TO STATE A CLAIM

Plaintiff argues that he states a claim for breach of fiduciary duty because he purportedly demonstrates wrongful refusal under Rule 23.1. (Opp. at 21.) He then relies on the breach of fiduciary claim to support the viability of the waste and unjust enrichment claims. (*Id.* at 21-22.) But Plaintiff *does not* plead that the Board wrongfully refused his demand, and accordingly these claims fail as well.

## VI. CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss Plaintiff's claims with prejudice.

Dated: June 23, 2015

COOLEY LLP
JOHN C. DWYER (136533)
JESSICA VALENZUELA SANTAMARIA (220934)

By: */s/Jessica Valenzuela Santamaria*
Jessica Valenzuela Santamaria (220934)

Attorneys for Defendants Michael A. Narachi, Heather D. Turner, Joseph P. Hagan and nominal defendant Orexigen Therapeutics, Inc.

Dated: June 23, 2015

DAVIS POLK & WARDWELL LLP
NEAL A. POTISCHMAN (254862)
ALYSE L. KATZ (274856)

By: */s/Neal A. Potischman*
Neal A. Potischman (254862)

Attorneys for Defendants Eckard Weber, Louis C. Bock, Brian H. Dovey, Patrick Mahaffy, Peter K. Honig, Wendy Dixon, Joseph S. Lacob, Michael F. Powell, and Daniel K. Turner III

117808931

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

CASE NO. 13CV2959 JAH MDD
REPLY ISO MTD AMENDED COMPLAINT