1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  YACOV TURGEMAN, derivatively on          )  Civil No. 13cv2959 JAH(MDD)
    behalf of OREXIGEN                        )
11  THERAPEUTICS, INC.,                       )  **ORDER GRANTING DEFENDANTS'**
                                              )  **MOTION TO DISMISS [DOC. #52]**
12                        Plaintiff,          )
                                              )
    v.                                        )
13                                            )
    MICHAEL NARACHI, JOSEPH P.                )
14  HAGAN, HEATHER D. TURNER,                 )
    ECKARD WEBER, LOUIS C. BOCK,              )
15  BRIAN H. DOVEY, PATRICK                   )
    MAHAFFY, PETER K. HONIG,                  )
16  WENDY DIXON, JOSEPH S. LACOB,             )
    MICHAEL F. POWELL, AND DANIEL             )
17  K. TURNER, III,                           )
                                              )
18                        Defendants.         )
                                              )
19  and                                       )
                                              )
20  OREXIGEN THERAPEUTICS, INC.,              )
                                              )
21                  Nominal Defendant.        )

22                         **INTRODUCTION**

23         Currently pending before the Court is the Motion to Dismiss Plaintiff's Verified

24  Shareholder First Amended Derivative and Class Action Complaint ("FAC")  filed by

25  Defendants Michael A. Narachi,  Heather D. Turner,  Joseph P. Hagan, Eckard Weber,

26  Louis C. Bock,  Brian H. Dovey, Patrick Mahaffy,  Peter K. Honig, Wendy Dixon, Joseph

27  S. Lacob,  Michael  F. Powell, Daniel K. Turner, III (collectively "Defendant-Board

28  Members") and nominal Defendant Orexigen Therapeutics, Inc. (collectively "Defendants").

After a careful consideration of the pleadings and relevant exhibits submitted, and for the reasons set forth below, this Court **GRANTS** Defendants' motion to dismiss.

<u>BACKGROUND</u>

### 1. <u>The Parties</u>

Plaintiff  Yacov Turgeman ("Plaintiff") is a citizen of Israel and has been a shareholder of Orexigen Therapeutics, Inc. ("Orexigen") since February 2011. (<u>See</u> Doc. # 48, pg. 3). Orexigen is a biopharmaceutical company headquartered in La Jolla, California and incorporated in Delaware. (<u>See</u>  Doc. # 48, pgs. 3–4). Orexigen is the only named Nominal Defendant. <u>Id</u>.  Michael A.  Narachi,  Heather D. Turner,  Joseph P. Hagan, Eckard Weber,  Louis C. Bock,  Brian H. Dovey,  Patrick Mahaffy,  Peter K.  Honig, Wendy Dixon,  Joseph S. Lacob, Michael F. Powell, and Daniel K. Turner III are current and former members of Orexigen's Board of Directors, herein referred to as Director Defendants. <u>Id</u>. The Director Defendants and the  Nominal Defendant Orexigen Therapeutics, Inc. are referred to herein as Defendants.

### 2. <u>Factual Background</u>

Plaintiff became aware of a series of stock option grants awarded to a Orexigen's President and Chief Executive Officer, Michael A. Narachi ("Narachi"); Chief Business Officer, Joseph P. Hagan ("Hagan"); and Senior Vice President and General Counsel Secretary, Heather D. Tuner ("Turner") in 2011.( <u>See</u> Doc. # 48, pg. 2). Plaintiff alleges these grants were in violation of Section 3.3 of the Orexigen shareholder-approved 2007 Equity Incentive Award Plan ("Plan"). <u>Id</u>.  During the 2011 fiscal year, the Board awarded Narachi 4,318,950 stock options; Hagan 1,509,000 stock options;  and Turner 1,650,396 stock options. (<u>See</u> Doc. # 48, pg. 7). Plaintiff alleges that the grants of stock  exceed the 1,500,000 share cap set forth within Section 3.3[1]. (<u>See</u> Doc. # 48, pgs. 7–8).

---

[1] Section 3.3 of the Plan states: Notwithstanding any provision in the Plan to the contrary, and subject to Article 11, the maximum  number of shares of Stock with respect to one or more Awards that may be granted to any one Participant during any fiscal year of the Company (measured from the date of any grant) shall be 1,500,000; provided, however, that the foregoing limitation shall not apply to Inducement Awards or prior to the Public Trading Date and, following the Public Trading Date, the foregoing limitation

a.   <u>Plaintiff's Demand on the Board</u>

On May 22, 2013, Plaintiff sent a demand letter to Orexigen's Board of Directors ("Board") stating that the Board had (1) exceeded its fiduciary duties in granting the excess stock options; (2) acted outside of the business judgment rule by not acting in the best interests of Orexigen and its shareholders; and (3) unjustly enriched Narachi, Hagan and Turner. (<u>See</u> Doc. # 48, pgs. 8–9). In order to rectify the alleged violations, Plaintiff requested the Board (1) rescind the excess awards granted to Narachi, Hagan, and Turner and seek any appropriate relief on behalf of Orexigen for any damages as a result; (2) investigate whether there had been additional violations of Section 3.3's share cap and take action; and (3) adopt and implement adequate internal controls to prevent any future violations of the Plan. (<u>See</u> Doc. # 48, pg. 24).

In response to Plaintiff's demand letter, the Board created a Demand Review Committee ("DRC"), which consisted of independent directors, (i.e. directors who had not received stock grant awards), and independent counsel. (<u>See</u> Doc. # 27-1, pg. 12; <u>see also</u> Doc. # 52-1, pg. 12). At the conclusion of the DRC's investigation, the Board determined that it was against Orexigen's and its shareholders' best interest to initiate litigation against Defendant Directors. (<u>See</u> Doc. # 52-1, pg. 13). On September 23, 2013, the Board amended Section 3.3 of the Plan to provide that the limit set forth in Section 3.3 applied only to qualified performance-based compensation and that any amount awarded in excess of the limit be deemed non performance-based compensation. The amendment[2] was made

shall not apply until the earliest of: (a) the first material modification of the Plan(including any increase in the number of shares of Stock reserved for issuance under the Plan in accordance with Section 3.1); (b) the issuance of all of the shares of Stock reserved for issuance under the Plan; (c) the expiration of the Plan; (d) the first meeting of stockholders at which members of the Board are to be elected that occurs after the close of the third calendar year following the calendar year in which occurred the first registration of an equity security of the Company under Section 12 of the Exchange Act; or (e) such other date required by Section 162(m) of the Code and the rules and regulations promulgated thereunder. (See Doc. # 48, pg. 38-39).

[2]The new Section 3.3 states, "Notwithstanding any provision in the Plan to the contrary, and subject to Article 12, the maximum number of shares of Stock with respect to one or more Awards that may be granted to any one Participant as Qualified

retroactive to June 10, 2011, the date on which the shares-in-question were awarded. (See Doc. # 52-1, pg. 13). The retroactive amendment, therefore, rendered Plaintiff's demand no longer viable.

On September 26, 2013, John C. Dwyer, Esq. of Cooley LLP, Defendants' counsel, sent an email to Plaintiff's counsel of the Board's decision and directed Plaintiff to the Form 8-K ("8-K") filed by Orexigen on September 23, 2013[3]. (See Doc. # 48, pg. 9). Plaintiff maintains the Board wrongfully denied his demand and subsequently initiated the instant suit.

### b. Procedural History

On December 9, 2013, Plaintiff filed a Verified Shareholder Derivative lawsuit on behalf of nominal Defendant Orexigen against Defendants. (See Doc. # 1). In the complaint, Plaintiff alleged (1) breach of fiduciary duty, (2) unjust enrichment, and (3) waste of corporate assets. (Id., pgs. 12–13). On July, 23, 2014, Defendants filed a motion to dismiss for failure to state a claim, mootness, and standing. (See Doc. # 27–1, pgs. 7–8). On, August 19, 2014, Plaintiff filed a response in opposition for the motion to dismiss. (See Doc. # 31).

On March 9, 2015, the Court granted the Defendants' motion to dismiss noting the complaint failed to allege facts rebutting the business judgment rule and failed to sufficiently plead facts supporting plaintiff's claim that his demand was wrongfully refused.(See Doc. # 47, pgs. 4–5).

---

Performance-Based Compensation during any fiscal year of the Company (measured from the date of any grant) shall be 1,500,000;...For the avoidance of doubt, (i) the Compensation Committee may grant Awards in excess of the foregoing limitation, but the portion of any Award granted in excess of such limitation shall not be treated as Qualified Performance-Based Compensation, and (ii) unless otherwise specified by the Compensation Committee, the portion of any Award that could otherwise qualify as Qualified Performance-Based Compensation (without regard to such limit) will be treated as being subject to such limit (up to the limit) in the order granted, and the portion of any Award granted in excess of such limit shall be treated as not being Qualified Performance-Based Compensation." (See Doc. # 27-6, pg. 6).

[3]The Form 8-K is the formal amendment filed by the Orexigen Board with the United States Securities and Exchange Commission, the form details the amendments and the effective dates. (See Doc. # 27-7, pg. 2).

On April 8, 2015, Plaintiff filed his Verified Shareholder First Amended Derivative and Class Action Complaint ("FAC"). The operative complaint alleges derivative claims under (1) breach of fiduciary duty (2) waste of corporate assets, (3)unjust enrichment, and a direct claim under (4) breach of contract. (See Doc # 48, pgs. 13–17).

On May 8, 2015, Defendants filed a motion to dismiss Plaintiff's FAC. (See Doc. # 52). Plaintiff filed a response to the Defendants' motion to dismiss on June 8, 2015, (See Doc. # 55). On June 23, 2015, the Defendants' filed a reply in support of its motion. (See Doc. # 56).

## JUDICIAL NOTICE

Under Rule 201(b) of the Federal Rules of Evidence, a court may take judicial notice of a fact not subject to reasonable dispute because (1) it is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b). When ruling on a motion to dismiss, proper subjects of judicial notice include legislative history reports, court documents already in the public record or filed with other courts, and publicly accessible websites. See Anderson v. Holder, 673 F.3d 1089, 1094, n.1 (9th Cir. 2012) (legislative history reports); Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002)(court documents in the public record or filed in other courts); Wible v. Aetna Life Ins. Co., 375 F. Supp. 2d 956, 965-66 (C.D. Cal. 2005) (public websites); Caldwell v. Caldwell, No. C 05-4166 PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006)(public websites). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

Plaintiff filed a request for judicial notice in support of its opposition to Defendant's motion to dismiss. (See Doc. # 55–1 – Doc. # 55–2).[4] Plaintiff requests the Court judicially notice Exhibit A and B, which are transcripts of two oral arguments from

---

[4] Plaintiff's requested exhibits are mentioned in Doc # 55–1, however they are physically attached to the deposition in 55–2.

two Delaware Court of Chancery hearings, (1) <u>La. Mun. Police Emps. Ret. Sys., et al.</u> <u>v. Bergstein, et al</u>, C.A. No. 7764-VCL (Del. Ch. Oct. 14, 2013), and (2) <u>In re</u> <u>Honeywell Int'l Inc. Derivative Litig</u>., C.A. 8469-CS (Del. Ch. Jan. 8, 2014). Defendants did not file an opposition to Plaintiff's request for judicial notice of the listed exhibits.

Defendants also filed a request for judicial notice in support of its motion to dismiss. (<u>See</u> Doc. # 52-2).[5] Defendants have requested twelve exhibits, Exhibit A through L, which are various copies of company SEC forms, stock prices, an email between the parties, and a transcript from a Delaware Court of Chancery hearing. (<u>See</u> Doc 52–2, pgs. 2–3). The Exhibits are: (A) Orexigen's Amended Form S-1 Securities and Exchange Commission ("SEC") dated December 19, 2006; (B) excerpts from Orexigen's SEC Form SC TO-1; (C) Orexigen's Form 8-K, filed with the SEC on September 23, 2013; (D) Orexigen's Form 8-K, filed with the SEC on June 11, 2014; (E) excerpts from Orexigen's Form 10-K, filed with the SEC on March 13, 2014; (F) table of Orexigen's historical stock prices; (G) Orexigen's Form 8-K, filed with the SEC on February 17, 2011; (H) an email from Defendants' counsel John C. Dwyer of Cooley LLP to Plaintiff's counsel Steven J. Purcell; (I) Orexigen's Form 4, filed with the SEC on June 14, 2011; (J) Orexigen's Form 8-K, filed with the SEC on July 26, 2011; (K) Orexigen's Form 8-K, filed with the SEC on September 11, 2014; (L) transcript of the Delaware Chancery Court's hearing in <u>Gressman v. Brown (Symantec)</u>, No. 9896-VCG (Del. Ch. Dec. 10, 2014).(<u>Id</u>). Plaintiff did not oppose the Defendants' request for judicial notice in their reply, and ask the Court to use Defendants' request for notice when considering Plaintiff's request.(<u>See</u> Doc. # 55-1, pg. 3).

The two exhibits Plaintiff seeks to have judicially noticed are publically accessible court filings. Defendants offer no opposition to the request. Defendants have requested judicial notice in regards to exhibits that are either publicly accessible documents via the

---

[5]The exhibits Defendant requested were submitted with its motion to dismiss Plaintiff's verified shareholder first amended derivative and class action complaint. (<u>See</u> Doc. # 52-2).

1  SEC, are regularly available by both parties, or are publically accessible court filings.

2  Plaintiff does not offer any opposition to Defendants' request in its reply motion.

3  Therefore, the Court **GRANTS** both parties' requests for judicial notice pursuant to

4  Federal Rule of Evidence 201(b).

5  <u>MOTION TO DISMISS THE FAC</u>

6       Defendants move to dismiss the FAC pursuant to Federal  Rules of Civil

7  Procedure 9(b), 12(b)(1), 12(b)(6), and 23.1 on the grounds that Plaintiff (1) lacks

8  standing to bring a derivative suit and direct suit, (2) fails to state a claim upon which

9  relief can be granted, (3) alleges claims that are moot and (4) fails to plead particular

10  facts in order to maintain his derivative suit.[6] In addition, Defendants contend that

11  Plaintiff's direct claim for breach of contract should be dismissed because (1) it is not a

12  direct claim under the <u>Tooley</u> test; (2) the Plan is not a contract because the Plan lacks

13  the consideration element; and (3) the new claim is barred by statute of limitations.(<u>See</u>

14  Doc # 52–1, at 8–9). The Defendants maintain that Plaintiff has not asserted a claim for

15  which relief may be granted  because his derivative claims lack facts of particularity and

16  his direct claim is not timely under the statute of limitations. (<u>Id</u>).

17       Plaintiff asserts in his FAC and subsequent pleadings that he has stated particular

18  facts for his derivative claims, the Plan does constitute a contact, and that his direct

19  breach of contract claim is timely pursuant to Federal Rules of Civil Procedure 15(d).

20  Furthermore, Plaintiff  asserts that he is entitled to injunctive relief for both his

21  derivative and direct claims.  Plaintiff is seeking a judgment declaring that (1) the stock

22  option grants were not authorized under the Plan, (2) the excess stock options granted to

23  Narachi, Hagan, and Turner be rescinded, (3) Certification of the class, naming Plaintiff

24  as the Class representative and counsel as Class counsel; (4) a judgment against the

25  Defendant Directors and in favor of Orexigen for the amount in damages sustained by

26  _____

27      [6] Defendants also maintain their previous arguments to dismiss on the grounds that Plaintiff's claims are moot and the complaint fails to state a claim for relief. Because this

28  Court finds Plaintiff lacks standing to bring suit, this Court does not address these additional grounds for dismissal. <u>See</u> Doc. # 37, pg. 11, <u>see also</u> Doc. # 47, pg. 3.

Orexigen as a result of the Defendants' breaches of fiduciary duties and violation of the Plan , including pre-judgment and post-judgment interest; (5) equitable and/or injunctive relief as necessary or permitted by law; (6) prohibiting Orexigen and the Board from making any further awards under the Plan until new internal controls or procedures have been adopted; (7) award attorney, experts, and accountant fees; and (8) grant Plaintiff such other and further relief as the Court may deem proper.  (See Doc. # 48, pgs. 18-19).

### 1.   Legal Standard: Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (internal citations omitted). "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Recitals of the elements of a cause of action and conclusory allegations are insufficient. Id.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 555, 570. In considering the sufficiency of a claim, the court must accept as true all of the factual allegations contained in the complaint. Id. at 555–56. However, the court is not required to accept as true legal conclusions cast in the form of factual allegations. Id. at 555.

If dismissal is granted under Rule 12(b)(6), leave to amend should be allowed unless the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir.2000). If amendment would be futile, however, a

1 dismissal may be ordered with prejudice. <u>Dumas v. Kipp</u>, 90 F.3d 386, 393 (9th
2 Cir.1996) (internal quotations omitted).

3       **2.**    <u>**Derivative Claims**</u>

4     First, the Court addresses Plaintiff's derivative claims for breach of fiduciary duty,
5 waste of corporate assets, and unjust enrichment. Then, the Court will discuss Plaintiff's
6 direct claims for breach of contract.

7         **a.**    <u>**Derivative Claims under Business Judgment Rule:**</u>

8             **i.**    <u>**Legal Standard**</u>

9     A shareholder derivative suit is a uniquely equitable remedy in which a
10 shareholder asserts on behalf of a corporation a claim belonging not to the shareholder,
11 but to the corporation. <u>Aronson v. Lewis</u>, 473 A.2d 805, 811 (Del.1984) (*overruled on*
12 *other grounds by* <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del.2000)). Pursuant to Federal Rule
13 of Civil Procedure 23.1, which governs derivative actions, a shareholder's complaint must
14 state with particularity "any effort by the plaintiff to obtain the desired action from the
15 directors" and "the reasons for not obtaining the action or not making the effort." FED.
16 R. CIV. P. 23.1.

17     Rule 23.1 imposes a higher standard of pleading than does Rule 8(a). The Ninth
18 Circuit recently held in a demand refusal case that "Rule 23.1 and applicable Delaware
19 law require a shareholder bringing a derivative lawsuit to plead with particularity that the
20 shareholder made a pre-suit demand on the corporation and that the corporation
21 wrongly refused to act." <u>Lucas v. Lewis</u>, 428 F. App'x 694, 695–96 (9th Cir. Apr.15,
22 2011) (emphasis added) (citing FED. R. CIV. P. 23.1(b)(A) & (B); <u>Grimes v. Donald</u>, 673
23 A.2d 1207, 1220 (Del.1996)).

24     In order to demonstrate standing to pursue a derivative claim, a plaintiff must
25 show that he has met the demand requirement. If a demand is made and rejected, the
26 board rejecting the demand is entitled to the presumption of the business judgment rule
27 unless the stockholder can allege facts with particularity creating a reasonable doubt that
28 the board is not entitled to the benefit of the presumption. See <u>Grimes</u>, 673 A.2d at

1220; <u>see also</u> <u>Levine v. Smith</u>, 591 A.2d 194, 212 (Del.1991), *overruled on other grounds by* <u>Brehm</u>, 746 A.2d 244 (the board's refusal of the demand to pursue the action is subject to judicial review according to the traditional business judgment rule); <u>Copeland v. Lane</u>, 2013 WL 1899741, at *8 (N.D. Cal. May 6, 2013).

Under the business judgment rule, a court will not substitute its judgment for that of the board, and the board's decision will be upheld unless it cannot be attributed to any rational business purpose. <u>See</u> <u>In re Walt Disney Co. Derivative Litig.</u>, 906 A.2d 27, 74 (Del.2006) (en banc); <u>Levine</u>, 591 A.2d at 207. A board of directors' decision will be respected by the courts unless the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose, or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available. <u>Brehm</u>, 746 A.2d at 264 n. 66. "A shareholder who makes a demand concedes the disinterestedness and independence of a majority of the board to respond to the demand and waives any claim that demand is excused." <u>See</u> <u>Furman v. Walton</u>, No. C 06–3532 SBA, 2007 WL 1455904, at *4 (N.D. Cal. May 16, 2007) (citing <u>Grimes</u>, 673 A.2d at 1219–20; <u>Rales v. Blasband</u>, 634 A.2d 927, 935 n. 12 (Del.1993)).

As in the instant complaint, where a shareholder's claim is predicated on the wrongful refusal of demand, the only issue for a trial court to determine is the application of the business judgment rule to the board's refusal of the shareholder's demand. <u>See</u> <u>Levine</u>, 591 A.2d at 212–13 (Del.1991). As such, the only relevant question is whether the directors acted in an informed manner and with due care, and in a good faith belief that their action was in the best interest of the corporation. <u>Id</u>. at 198.

### ii.    Demand Refusal

Defendants argue that Plaintiff failed to allege the particularized  facts in the FAC that would cast doubt on the investigative process, the Board, the DRC, a particular Board member, or a particular DRC member in response to the Demand. (<u>See</u> Doc. #

52, pg. 10–13).  In addition, Defendants maintain that under Delaware law, the wisdom of the Board's underlying decision is irrelevant as only the Board's independence and process are relevant. (See Doc. # 52-1, pg. 13). "[W]hen a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation. Absent an abuse of discretion. . . . the directors' decision not to pursue the derivative claim will be respected by the courts.". (See Doc. # 52-1, pg. 13)(citing  Spiegel v. Buntrock, 571 A.2d 767, 777 (Del. 1990)). Moreover, Defendants assert that "the focus of the wrongful refusal analysis is on the process undertaken by the Board to investigate the  alleged wrongdoing, not on the alleged wrongdoing  itself or the merits of the Board's decision."(See Doc. # 52-1, pg. 7).

In the  FAC, Plaintiff  alleges that the Board acted outside its authority by granting excessive shares as well as by amending Section 3.3 of the Plan. (See Doc. # 48, pgs. 10–12). Plaintiff also asserts that the Board deliberately denied the demand with the knowledge that the excess awards were in direct violation of the Plan. (See Doc. # 55, pg. 9). Finally, Plaintiff contends that he does not need to provide specific evidence of the allegations, only particularized facts as to the allegations. (Id. pgs. 9–10).

In response, Defendants offer an overall conclusion that the motion to dismiss should be granted because the Plaintiff's FAC has not cured the deficiencies from the first complaint and still lacks  particularized fact to support his claim. (See Doc. # 56, pg. 5).

The Court has ruled that it will not discuss the initial grants of the stock. (See Doc # 47, pg. 5). The Court will only consider  the steps taken during the investigation process of the demand in its analysis under the Business Judgment Rule. See Grimes, 673 A.2d at 1220. Though Plaintiff need not provide specific evidence for his claims, the facts must be particularized as to how the investigation process was not reasonable or in good faith. See Brehm, 746 A.2d at 264 n. 66.

In Copeland v. Lane, the court addressed a similar legal question and set forth a three prong test. There, the court determined that in order to avoid dismissal the

1  plaintiff must raise a reasonable doubt as to the (1) disinterest and independence of the

2  Board, (2) the good faith with which the Board acted in rejecting the Plaintiff's demand,

3  and (3) the informed manner and due care by which the Board rejected the demand.

4  2013 WL 1899741, at *8 (N.D. Cal., 2013).

5                               (1)    <u>Disinterested and Independent</u>

6          First, "[a] shareholder who makes a demand concedes the disinterestedness and

7  independence of a majority of the board to respond to the demand and waives any claim

8  that demand is excused." <u>See</u> <u>Furman v. Walton</u>, No. C 06–3532 SBA, 2007 WL

9  1455904, at *4 (N.D. Cal. May 16, 2007). As previously stated, Plaintiff conceded that

10  the Board was disinterested and could act when he sent his demand letter on May 22,

11  2013. In <u>Scattered Corp. v. Chicago Stock Exch., Inc.</u>, 701 A.2d 70, 73 (Del. 1997),

12  *overruled on other grounds*, <u>Brehm</u>, 746 A.2d 244, plaintiff-shareholders alleged

13  wrongful refusal of a pre-litigation demand. The demand was made because of alleged

14  corruption on the part of the board, including bribery, hiring ghost employees, and self

15  dealing. The defendant board created a committee in response to the plaintiff's demand,

16  which included unaffected board members and independent counsel. After the

17  investigation, demand was denied and the plaintiff-shareholder filed a derivative suit.

18  The chancellory and appellate court both agreed that the plaintiff did not provide

19  particularized facts proving reasonable doubt of the board's disinterest or independence.

20  The court found the demand was not wrongfully denied. <u>Id</u>.

21          Similar to <u>Scattered Corp</u>, Plaintiff does not present facts as to cast doubt on the

22  Board's post-demand conduct, the creation of the DRC, or the independent counsel.

23  Plaintiff argues that initial act of granting the excessive stock was unreasonable and in

24  bad faith, thus the subsequent events are also unreasonable and in bad faith. Plaintiff

25  purports that the then enacted amendment serves only to further the Board's interests.

26  However, merely looking at the post-demand conduct of an independent committee

27  reviewing the substance of the demand or making retroactive amendments does not raise

28  particularized facts that cast doubt on the disinterestedness or independence of the

Board.

In this case, Plaintiff has not submitted particularized facts to cast doubt on that presumption.

### (2)   Good Faith

The Court dismissed Plaintiff's initial complaint because the complaint lacked particularized facts demonstrating that the Board's investigation relating to the demand letter was not conducted reasonably or in good faith. Plaintiff maintains that the result of the DRC's investigation was not reasonable or in good faith because the DRC disregarded the Plan's plain and unambiguous language under Section 3.3.  Plaintiff argues the Board simply amended the language in order to have language consistent with the grant of excessive stock. Plaintiff alleges this is a particularized fact casting doubt on the investigation. (See Doc. # 48, pgs. 10–17). As Defendants have maintained, the FAC repeats the same conclusory facts presented in the initial complaint. Accordingly, the Court finds that Plaintiff  has failed to show any particularized facts demonstrating a lacking in reasonableness or good faith in the FAC.

### (3)   Informed Manner and Due Care

In order for the Court to find that the Board did not act in an informed manner or with due care, Plaintiff must show particular facts that demonstrate that the Board "reach[ed] their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available. Copeland, 2013 WL 1899741; at *7, citing Brehm, 746 A.2d at 264 n. 66. Plaintiff's assertions revolve around the initial act of the granting of the excessive stock. Defendants maintain Plaintiff's complaint is again lacking as to the required pleading of  particularized facts.

The DRC was comprised of uninterested Board members and  was aided by independent counsel. The relevant investigation took approximately four  months to complete. The demand letter was sent on May 22, 2013. (See Doc. #1 at 8).  The Board's final decision was solidified on September 26, 2013.  (Id).

Plaintiff has not alleged that the DRC was negligently created, or that the time

13cv2959

between the demand being made and the board's decision was insufficient. Plaintiff's has not provided the Court with any facts to show the Board's decision was reached by a negligent process. Overall, Plaintiff offers no facts demonstrating a lack of due care in rejecting his demand via the investigation process. Therefore, Plaintiff fails to cast reasonable doubt on the due care of the demand refusal.

(4)   <u>Lack of Discretionary Authority</u>

Next, Plaintiff contends that a shareholder may rebut the Business Judgment Rule by showing the board acted outside the scope of its discretionary authority. (<u>See</u> Doc. # 55, pg. 11). Plaintiff cites several cases including, <u>Allen v. El Paso Pipeline GP Co.,</u> L.L.C., 90 A.3d 1097, 1108 (Del. Ch. 2014) and <u>Sanders v. Wang</u>, No. 16640, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999), (<u>See</u> Doc. # 55, pgs. 11–12), asserting that in the event a board violates a provision in a contract or equity plan, the court may infer that the board violated the Business Judgement Rule.  Plaintiff argues that the Board could not deny his demand  because the Board's original actions were beyond their discretion. (<u>Id</u>.)

Defendants maintain that Plaintiff made a demand on the Board and as a matter of law conceded that the Board was disinterested, independent, and  had the authority to impartially investigate his Demand. (<u>See</u> Doc. # 56–1, pg. 7). Furthermore, Defendants contend that Plaintiff may not challenge the investigation as wrongful simply due to the Board's final decision. (<u>Id</u>.)

In <u>Sanders</u>, the plaintiff did not make a formal demand under Rule 23.  There, the plaintiff was able to overcome the demand  requirement establishing any demand was futile because enough of the board was self- interested.  Thus, the court's scope was not limited to the refusal of the demand.

In <u>Allen</u>, the court determined that  plaintiff's claims were primarily direct actions. Plaintiff's reliance upon <u>Allen</u> to support his contentions is misplaced.

Here the Court focuses on the particularized facts as to why the demand was denied and whether those facts demonstrate that the Board acted outside the scope of

13cv2959

1  their discretion. (See Doc. # 27, pgs. 4-5). Plaintiff appears to argue that the Board

2  could not deny his demand because they did not have discretionary authority to act

3  outside the plain and unambiguous language of Section 3.3 of the Plan.  Specifically,

4  Plaintiff argues that the Board did not have the authority to amend Section 3.3 and

5  clarify Section 162(m). Plaintiff also appears to equate a lack of discretionary authority

6  with an abuse of discretionary authority. (See Doc. # 48, pg. 7, see also, Doc # 55, pgs.

7  10–12). However, acting outside of discretionary power or abuse of discretion applies

8  "only in a situation where, because of some alleged self-interest, the board of directors is

9  disqualified from acting itself. Otherwise, but for the disqualifying self-interest factor, the

10  board could make its decision for itself..." See Spiegel v. Buntrock, 571 A.2d 767, 777

11  (Del. 1990), see also Abbey v. Computer & Commc'ns Tech. Corp., 457 A. 2d 368, 375

12  (Del. 1983).

13      Under Section 15.1

14              [W]ith the approval of the Board, at any time and from time to

15              time, the Committee may terminate, amend or modify the Plan;

16              provided, however, that (a) to the extent necessary and desirable

17              to comply with any applicable law, regulation, or stock exchange

18              rule, the Company shall obtain stockholder approval of any Plan

19              amendment in such a manner and to such a degree as required,

20              and (b) stockholder approval is required for any amendment to

21              the Plan that (i) increases the number of shares of Stock

22              available under the Plan (other than any adjustment as provided

23              by Article 11), (ii) permits the Committee to grant Options with

24              an exercise price that is below Fair Market Value on the date of

25              grant, or (iii) permits the Committee to extend the exercise

26              period for an Option beyond ten years from the date of grant.

27      (See Doc. # 48-3, pg. 23).

28  As the Court is only looking at post-demand conduct, acting outside of discretion

1   implies that the Plan did not provide a mechanism for the Board or the appointed DRC

2   to investigate the demand itself or come to a decision subsequent to the investigation.

3   However Section 15.1 of the Plan does provide the Board with the authority to interpret

4   and make necessary amendments to the Plan. (See Doc. # 48-3, pg. 23).  As such,

5   Section 15.1 designates specific  discretion to the Board.

6          However, Plaintiff asserts that because Section 3.3 contained plain and

7   unambiguous language as to the limitations of stock grants, the Board acted outside of

8   their authority when they modified the Sections 3.3 or 162(m) of the Plan without

9   shareholder approval. Plaintiff contends that this result shows an abuse of discretion.

10  (See Doc. # 55, pgs. 9–14). Plaintiff furthers his assertion by stating that Section 15.1

11  does not provide the Board with the ability to cure a "violation" after it has occurred.

12  (See Doc. # 55, pg. 28).

13         The amendments of Section 3.3 and the clarification of 168(m) do not require a

14  shareholder vote because they do not increase the number of shares of Stock available

15  under the Plan; they do not permit the Committee to grant options with a below Fair

16  Market Value; and they do not permit the Committee to extent the exercise period for

17  an option beyond ten years from the date of the grant.  Furthermore, even if the

18  amendments were to be included in the investigation process, Plaintiff fails to allege how

19  the amendments are outside the Board's discretion via Section 15.1. Section 15.1 does

20  not allow or prohibit the Board from amending the Plan to cure a violation. It allows the

21  Board to make amendments without shareholder approval in specific instances, and it

22  states when shareholder approval is required.[7]

23  _____

24         [7]Plaintiff also argues that it does not matter whether the Defendants' amended the
    Plan, they still breached a fiduciary duty to the shareholders and once a duty is breached
25  it cannot be undone. (Id. at 28–29).   In support, Plaintiff sites Steinhardt v.
    Howard-Anderson, 2012 WL 29340, at *11 (Del. Jan. 6, 2012), and Cantor Fitzgerald,
26  L.P. v. Cantor, 724 A.2d 571 (Del. July 12,1998). These cases are inapposite in the
    context of a Rule 23.1 action. In the Steinhardt case, the plaintiff was found to have
27  breached a fiduciary duty and despite his willingness to step down as proposed class
    representative, the court found that the breach could not be undone at that point.  The
28  breach of fiduciary duty in Steinhardt was not in question as it is in the instant complaint.
    In the Steinhardt case, the court found a clear fiduciary breach when representative

Overall , Plaintiff fails to show how Section 15.1 does not permit the Board to make amendments, nor does it show how the amendments are particular facts that demonstrate a gross negligent process. Plaintiff cannot argue that the Board had discretion to receive Plaintiff's demand but did not have the discretion to deny the demand. This contention is at odds with the policy of the demand requirement under Rule 23.1, in which it allows boards and their shareholders to use internal methods to resolve disputes.

### b.   Conclusion

The FAC fails to allege facts that raise a reasonable doubt about the disinterest, independence, good faith, due care, or discretionary authority of the investigation by the DRC. Thus, the Court finds that Plaintiff has not provided sufficient particularized facts to rebut the Business Judgment Rule and shown that the demand was wrongfully refused. Accordingly, Defendants' motions to dismiss the derivative claims for failure to state a claim is **GRANTED** with prejudice.

### 3.   Breach of Contract Claim

Plaintiff additionally asserts a direct action claim against the Board for violating Section 3.3 of the Plan. (See Doc. # 48, pg. 17).

The two–prong test set out in Tooley v. Donaldson, Lufkin & Jenrette, Inc., determines whether a shareholder's claim is derivative or direct. The Tooley test outlines that a plaintiff must state "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" 845 A.2d 1031, 1033 (Del. 2004). Further, "[t]o be a direct claim, the harm to the stockholder must be 'independent of any alleged injury to the corporation.'" Id. at 1039.

---

plaintiffs traded, for self dealing purposes, based on non-public information while in a fiduciary capacity.  Cantor Fitzgerald was not a shareholder derivative suit. The plaintiff in Cantor Fitzgerald sought a preliminary injunction to preclude three limited partners and a third party from furthering development and marketing of a product to compete with plaintiff's core product. The Court found equitable factors weighed in favor of Plaintiff upon considering the evidence.

1    Defendants argue that the claim is derivative and should be dismissed for the same
2  reasons as the derivative claims above. (See Doc. #56 at 5.)  Defendants state that even
3  if the claim is characterized as direct, Plaintiff's allegations would be barred by
4  Delaware's three-year statute of limitations. (Id.) In the alternative, Defendants argue
5  that the breach of contract claim fails as no contract exists. (Id.)
6    The Court agrees that the "gravamen of Plaintiff's claim is that Orexigen paid
7  allegedly improper and excessive compensation to certain executives and thus suffered
8  harm." (See Doc. 56 at 10).  This Court determines that Plaintiff's action, characterized
9  as a breach of contract direct action, fails to sufficiently allege facts that meet the Tooley
10 test.[8]
11    Accordingly, Defendant's motion to dismiss the Breach of Contract claim should
12 be **GRANTED** with leave to amend.
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 ///
21 //
22 //
23 //
24 //
25 //
26 //
27 
28    [8]The Court declines to address the three-year statute of imitations and the merits of the contract claim.

## CONCLUSION AND ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss Plaintiff's derivative claim [Doc. # 52] is **GRANTED** with prejudice.

Defendants' motion to dismiss Plaintiff's direct action breach of contract claim is **GRANTED** with leave to amend.

Plaintiff shall file an amended complaint on the breach of contract claim **no later than 21 days following the electronic filing of this Order**.

Dated:  March 31, 2017

_____

JOHN A. HOUSTON

United States District Judge

13cv2959